1  LAFAYETTE & KUMAGAI LLP
   GARY T. LAFAYETTE (SBN 88666)
2  REBECCA K. KIMURA (SBN 220240)
   1300 Clay Street, Suite 810
3  Oakland, California 94612
   Telephone:    (415) 357-4600
4  Facsimile:    (415) 357-4605

5

6  Attorneys for Defendant
   XEROX STATE AND LOCAL SOLUTIONS, INC.
7  AND CONDUENT STATE AND LOCAL SOLUTIONS, INC.

8
                    **UNITED STATES DISTRICT COURT**
9
          **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
10

11

12  SUMATRA KENDRICK, an individual;        Case No. 3:18-cv-00213
    MICHELLE KELLY, an individual; and on
    behalf of herself and those similarly situated,
13
                                            **DEFENDANTS XEROX STATE AND**
        Plaintiffs,                         **LOCAL SOLUTIONS, INC.'S AND**
14                                          **CONDUENT STATE AND LOCAL**
        v.                                  **SOLUTIONS, INC.'S NOTICE OF**
15                                          **REMOVAL OF CIVIL ACTION TO**
                                            **FEDERAL COURT**
16  BAY AREA TOLL AUTHORITY; GOLDEN
    GATE BRIDGE, HIGHWAY AND                **28 U.S.C. § 1441 and 28 U.S.C. § 1332(d)**
17  TRANSPORTATION DISTRICT; XEROX          **Class Action Fairness Act of 2005**
    STATE AND LOCAL SOLUTIONS, INC.;
18  CONDUENT STATE AND LOCAL                Action filed: November 21, 2017
    SOLUTIONS, INC.; and DOES 1 - 100,
19
        Defendants.
20

21

22

23

24

25

26

27

28

LAFAYETTE & KUMAGAI
LLP
ATTORNEYS AT LAW
101 MISSION STREET, SUITE 600

1  TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

2  CALIFORNIA, AND TO PLAINTIFFS SUMATRA KENDRICK AND MICHELLE KELLY,

3  AND TO PLAINTIFFS' ATTORNEYS OF RECORD:

4  PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Xerox

5  State and Local Solutions, Inc. and Conduent State and Local Solutions, Inc,[1] ("Conduent" or

6  "Removing Defendant") remove the above-captioned action from the Superior Court of the State of

7  California, in and for the County of San Francisco, to the United States District Court, Northern

8  District of California.  Removing Defendant submits that original jurisdiction exists under the Class

9  Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. § 1332(d), as shown herein.

10  **PROCEDURAL BACKGROUND AND TIMELINESS OF REMOVAL**

11  On November 21, 2017, Plaintiffs Sumatra Kendrick and Michelle Kelly filed a Class

12  Action Complaint in the Superior Court of the State of California, County of San Francisco, titled

13  *Sumatra Kendrick, an individual; Michelle Kelly, an individual; and on behalf of herself and those*

14  *similarly situated v. Bay Area Toll Authority, Golden Gate Bridge, Highway and Transportation*

15  *District, Xerox State and Local Solutions, Inc., Conduent State and Local Solutions, Inc.; and Does*

16  *1-100*, Case No. CGC-17-562613.

17  In the Original Class Action Complaint, Plaintiffs allege that Conduent and other

18  defendants violated California Streets and Highway Code § 31490, the Rosenthal Fair Debt

19  Collection Practices Act, California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et

20  seq., the California Consumer Legal Remedies Act, as well as alleging a breach of contract claim in

21  relation to toll collection conduct on the Golden Gate Bridge and other Bay area toll bridges and

22  the alleged disclosure of consumers' personally identifiable information in connection therewith.

23  Conduent was served with Plaintiffs' Summons, Complaint and related case documents on

24  December 12, 2018.  (True and correct copies of the Summons, Complaint and related case

25

26  [1] Plaintiff has named both "Xerox State and Local Solutions, Inc." and "Conduent State and Local Solutions, Inc." as defendants in this lawsuit.  However, there is only one entity—Conduent State

27  & Local Solutions, Inc.  The former entity, Xerox State & Local Solutions, Inc., changed its name to Conduent State & Local Solutions, Inc. in 2017.  (See Declaration of Kerwin Stokes ("Stokes

28  Decl."), ¶ 2, attached hereto as **Exhibit B.**)

documents served upon Conduent through Corporation Service Company are attached hereto as **Exhibit A.**)  No proofs of service have been filed by Plaintiff to date.  Exhibit A constitutes all the pleadings that have been filed in this action as of the date of the filing of this Notice of Removal.

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]"  28 U.S.C. § 1446(b)(1).

This Notice of Removal is timely because Conduent filed it, pursuant to 28 U.S.C. § 1446(b), within 30 days of its receipt of the initial pleading.

### JURISDICTIONAL BASIS: CLASS ACTION FAIRNESS ACT

*Basis of Original Jurisdiction*

This Court has original jurisdiction of this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)).  Section 1332(d) provides that a district court shall have original jurisdiction of a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000.  Section 1332(d) further provides that where the putative class members are citizens of the state in which the action is filed, at least one of the defendants must be a citizen of a different state.  *See Luther v. Countrywide Home Loans Servicing LP*, 553 F.3d 1031, 1033-1034 (9th Cir. 2008) ("The Class Action Fairness Act ... amended the requirements for diversity jurisdiction by granting district courts original jurisdiction over class actions exceeding $5,000,000 in controversy where at least one plaintiff is diverse from at least one defendant.  In other words, complete diversity is not required.")  Finally, Section 1332(d) provides that original jurisdiction exists if the "primary defendants" are not "States, State officials, or other government entities against whom the district court may be foreclosed from ordering relief."

As set forth below, pursuant to 28 U.S.C. § 1441(a), Conduent may remove this lawsuit to Federal Court under CAFA inasmuch as:  (1) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) this lawsuit is pled as a class action involving more than 100 putative class members, (3) members of the putative class are citizens of a state different from Removing Defendant, and (4) at least one primary defendant—

1  Conduent--is not state or government entity against whom the district court may be foreclosed from

2  ordering relief.

3       *Diversity*

4       Diversity exists under 28 U.S.C. § 1332(d)(2) where "any member of a class of plaintiffs is

5  a citizen of a State different from any defendant."

6       <u>Plaintiffs' Citizenship.</u>  Plaintiffs Sumatra Kendrick and Michelle Kelly are California

7  citizens. (Complaint, ¶¶ 2, 3.)

8       <u>Defendant Conduent's citizenship</u>.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be

9  deemed to be a citizen of any State by which it has been incorporated and of the State where it has

10  its principal place of business."  As noted, Xerox State & Local Solutions, Inc. changed its name to

11  Conduent State & Local Solutions, Inc.  Conduent is a New York corporation, (Complaint ¶ 6),

12  with its principal place of business in Dallas, Texas.  (Stokes Decl. at ¶¶ 3, 4.)

13       Diversity of citizenship exists under 28 U.S.C. § 1332(d) inasmuch as Plaintiffs Kendrick

14  and Kelly are citizens of California and Conduent is a citizen of either Texas or New York.

15       *Size of class*

16       Plaintiffs filed this case as a class action and proposed the following classes:  "(a) all

17  consumers who between May 1, 2011 and the present, had their [personally identifiable

18  information] provided to any person who was not authorized to receive the [personally identifiable

19  information] pursuant to California Streets and Highways Code §31490; (b) all consumers who

20  between May 1, 2011 and the present had their [personally identifiable information] provide (sic) to

21  a person who was not authorized to receive the [personally identifiable information] in violation of

22  the Fastrak application and/or privacy policy (collectively, the 'Class Members')."  (Complaint

23  ¶ 58.) The proposed classes as alleged in the Complaint would consist of "hundreds of thousands (if

24  not millions) of Class Members," and exceed the minimum requirement of 100 putative class

25  members. (Complaint ¶ 59.)

26       *Amount in controversy*

27       The alleged amount in controversy in this putative class action exceeds, in the aggregate,

28

---

$5,000,000, exclusive of interest and costs.  Plaintiffs allege that for each of the hundreds of thousands of putative class members, they are entitled to "statutory damages in the amount of no less than $2,500 or $4,000 (as applicable)" as well as "actual damages, restitution, and all other appropriate legal and equitable relief."  (Complaint, Prayer for Relief pp. 33-34.) Plaintiffs also seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Code of Civil Procedure § 1021.5, Civil Coe §§1788.17 and 1788.30(c), Streets and Highways Code § 31490 and 15 U.S.C. § 1681n(a), (Complaint, Prayer for Relief pp. 34), which further add to the amount in controversy in this case. *See Campbell v. Vitran Exp., Inc*., 471 Fed. Appx. 646, 649 (9th Cir. 2012) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998) ("25% recovery is the 'benchmark' level for reasonable attorney's fees in class action cases.")

### *A primary defendant is not a state entity*

CAFA removal is not available if "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."  28 U.S.C. § 1332(d)(5).  A primary defendant is "anyone 'who has a substantial exposure to a significant portion of the proposed class in the action.'"  *Chalian v. CVS Pharmacy, Inc*., No. CV1608979ABAGRX, 2017 WL 1377589, at *3 (C.D. Cal. Apr. 11, 2017) (holding that "Because CVS is domiciled in Rhode Island and RX Services is domiciled in New York, the primary defendants are not California citizens and the home-state exception does not apply."); s*ee also SANCHEZ v. AVIVA LIFE AND ANNUITY COMPANY, et al*., No. CV S-09-1454 FCD/DAD, 2009 WL 10694222, at *4 (E.D. Cal. July 16, 2009) (explaining that a "primary defendant" is a defendant who is directly liable to the plaintiff).  Further, to preclude CAFA removal under Section 1332(d)(5), all primary defendants must be state or government entities.  *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006) (explaining that Section 1332(d)(5) "is not meant to create a loophole whereby plaintiffs can avoid CAFA jurisdiction by naming a state as a primary defendant").

1    Conduent is a named defendant from whom Plaintiffs seek direct relief.  Conduent is

2    therefore a primary defendant.  Further, as a private corporation, Conduent is not a state or

3    government entity from whom the district court is foreclosed from granting relief.  (Complaint ¶ 6.)

4    **CLASS ACTION FAIRNESS ACT'S JURISDICTIONAL EXCEPTIONS**

5    *Interests of justice exception*

6    Pursuant to 28 U.S.C. § 1332(d)(3), "a district court may, in the interests of justice and

7    looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2)

8    over a class action in which greater than one-third but less than two-thirds of the members of all

9    proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in

10   which the action was originally filed … ."  Plaintiffs bear the burden of establishing that the

11   jurisdictional exceptions under CAFA apply in this case.  *See Serrano v. 180 Connect, Inc.*, 478

12   F.3d 1018, 1023 (9th Cir. 2007) ("[W]e conclude that although the removing party bears the initial

13   burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been

14   established under that provision, the objecting party bears the burden of proof as to the applicability

15   of any express statutory exception … .")

16   With respect to the citizenship of the putative class members, Plaintiffs have presented no

17   geographic limitation on their class definitions.  Both of their class definitions include "all

18   consumers" without limitation for residence. Section 1332(d)(3) also requires that all primary

19   defendants be citizens of the State in which the action was filed.  *See Sanchez v. Aviva Life &*

20   *Annuity Co.*, 2009 U.S. Dist. LEXIS 79712, at **13-14 (E.D. Cal. July 16, 2009) (because the

21   statute refers to "primary defendants" in the plural, these provisions require ***all*** entities who are

22   "primary defendants" to be from the state where the action was filed.)  As Conduent is a primary

23   defendant and a citizen of New York and Texas (*see* 28 U.S.C. § 1332(d)(10)), the citizenship

24   requirement of the § 1332(d)(3) exception is not met.

25   *Local controversy and home-state exceptions*

26   Pursuant to 28 U.S.C. § 1332(d)(4):

27   A district court shall decline to exercise jurisdiction under paragraph (2)—

28

(A)(i)   over a class action in which—

    (I)     greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II)    at least 1 defendant is a defendant—

        (aa)    from whom significant relief is sought by members of the plaintiff class;

        (bb)    whose alleged conduct forms a significant basis for claims asserted by the proposed plaintiff class; and

        (cc)    who is a citizen of the State in which the action was originally filed; and

    (III)    principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii)    during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B)    two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

The "local controversy exception" found in Section 1332(d)(4)(A) does not apply to this case because during the three years preceding the filing of Plaintiffs Class Action Complaint, Conduent has faced similar class-action allegations as the claims Plaintiffs allege here.

As the CAFA legislative history explains:

> if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address. As such, it is a test for assessing whether a controversy is localized. The Committee wishes to stress that another purpose of this criterion is to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception.... The inquiry is whether similar factual

allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

S.Rep. No. 109–14, at 40–41.

In fact, in 2016, Conduent removed to this Court a class-action alleging substantively similar claims that was originally filed on September 7, 2016.  (*See Kelly v. Bay Area Toll Authority, et al*., No. 3:16-cv-06837-RS, attached hereto as **Exhibit C**.) As in this case, the Plaintiff in that case, who is also one of the named plaintiffs in this case, alleged claims that Conduent improperly disclosed consumers' personally identifiable information in connection with toll-collection activity and sought to certify a class consisting "of all consumers who, between May of 2011 and the present . . . were assessed and/or paid a penalty amount, and/or who had their personally identifiable information provided to any person or entity not expressly permitted by Code."  As in this case, the causes of action in *Kelly* included claims for disclosure of personally identifiable information under California's Unfair Competition Law and California's Consumer Legal Remedies Act.  Substantively, the alleged harm and bases for relief in *Kelly* was the same as Plaintiffs assert here—that Conduent injured them by improperly handling their personally identifiable information in connection with Golden Gate Bridge toll collections.  The class definition in *Kelly* includes by definition every potential class member in this case.

In addition, Conduent has been named in multiple class actions in San Francisco Superior Court in the three years preceding this lawsuit that allege violations related to toll collections on Golden Gate Bridge.  *See Freeland, et al. v.  Bay Area Toll Authority, et al*., No. CGC-16-550947, *Moore, et al. v. Bay Area Toll Authority, et al*., No. CGC-15-549048, *Saliani, et al. v. Bay Area Toll Authority, et al.*, No. CGC-14-540384.

The home-state exception in Section 1332(d)(4)(B) does not apply because Conduent, as a primary defendant, is not a California citizen.

## **VENUE**

Plaintiffs filed this lawsuit in the Superior Court of the State of California, in and for the County of San Francisco.  Pursuant to 28 U.S.C. §§ 84, 1441 and 1446(a), venue lies in the district

and division in which this lawsuit is pending; that is, the United States District Court, Northern District of California.  Assignment to the San Francisco Division is appropriate under Civil Local Rule 3-2(d) because this action arose in the County of San Francisco.

## JOINDER

Plaintiffs named additional defendants, Bay Area Toll Authority, and Golden Gate Bridge, Highway and Transportation District, that need be joined in this removal.  Pursuant to 28 U.S.C. § 1453, all defendants do not need to consent or join in removal under CAFA.

## STATE COURT AND RELATED DOCUMENTS

In accordance with 28 U.S.C. § 1446(a), Conduent attaches this Notice the following documents, which are all the process, pleadings, and orders served upon Conduent and/or filed in the Superior Court of the State of California, County of San Francisco, prior to the Notice of Removal:

a) Summons, Civil Case Cover Sheet, and Complaint – Exhibit A;

## SERVICE OF NOTICE OF REMOVAL

Conduent will simultaneously serve this Notice of Removal on Plaintiffs and other Defendants not joining in this removal and will promptly file it with the clerk of the Superior Court of the State of California, County of San Francisco.

WHEREFORE, Defendant Conduent removes the above action now pending in the Superior Court of the State of California for the County of San Francisco to this Court.

DATED:  January 10, 2018          LAFAYETTE & KUMAGAI LLP


             */s/ Rebecca K. Kimura*
             REBECCA K. KIMURA
             Attorneys for Defendants Attorneys for Defendants
             Xerox State and Local Solutions, Inc. and Conduent
             State and Local Solutions, Inc.

# EXHIBIT "A"



**null / ALL**
**Transmittal Number: 17512332**
**Date Processed: 12/13/2017**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Dionne C. Rainey<br>Conduent<br>2828 North Haskell Avenue<br>Building 1, Floor 10<br>Dallas, TX 75204 |
| **Electronic copy provided to:** | DeWana Peterson<br>Heather Adamson<br>Susan Majkszak |

| | |
|---|---|
| **Entity:** | Conduent State & Local Solutions, Inc.<br>Entity ID Number 0535071 |
| **Entity Served:** | Conduent State and Local Solutions, Inc. |
| **Title of Action:** | Sumatra Kendrick vs. Bay Area toll Authority |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | San Francisco County Superior Court, California |
| **Case/Reference No:** | CGC-17-562613 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 12/12/2017 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Sender Information:** | Blake J. Lindemann<br>310-300-0267 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BAY AREA TOLL AUTHORITY, a California public corporation; GOLDEN GATE BRIDGE, HIGHWAY AND TRANSPORTATION DISTRICT, a California Public Corporation; XEROX STATE AND LOCAL SOLUTIONS, INC.; CONDUENT STATE AND LOCAL SOLUTIONS, INC.; and DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SUMATRA KENDRICK, an individual; MICHELLE KELLY, an individual; and on behalf of herself and those similarly situated,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
The Superior Court Of California, County of San Francisco, Unlimited Jurisdiction
400 McAllister St., San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso)*
CGC-17-562613

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Blake J. Lindemann; 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210; (310) 279-5269

DATE: **NOV 2 1 2017**  CLERK OF THE COURT  Clerk, by **DE LA VEGA-NAVARRO, Rossaly** Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Conduent State and Local Solutions, Inc.
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* Form Unknown
4. ☒ by personal delivery on *(date):* 12/12/17

[SEAL]

SUMMONS

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Page 1 of 1

1  LINDEMANN LAW FIRM, APC
   BLAKE J. LINDEMANN, SBN 255747
2  433 N. Camden Drive, 4th Floor
   Beverly Hills, CA 90210
3  Telephone: (310) 279-5269
   Facsimile: (310) 300-0267
4  E-Mail:   blake@lawbl.com

5  Attorneys For Plaintiffs
   SUMATRA KENDRICK, MICHELLE KELLY
6  AND ALL THOSE SIMILARLY SITUATED

7



8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10                        UNLIMITED JURISDICTION

11

12
                                    |  CASE NO.    CGC-17-562613
13  SUMATRA KENDRICK, an individual; |
    MICHELLE KELLY, an individual; and on |
14  behalf of herself and those similarly situated, |  Assigned for All Purposes To Complex Litigation
15                                    |
16              v.                    |  CLASS ACTION COMPLAINT
17                                    |
18  BAY AREA TOLL AUTHORITY, a California |
    public corporation; GOLDEN GATE BRIDGE, |
19  HIGHWAY AND TRANSPORTATION     |  JURY TRIAL DEMANDED
    DISTRICT, a California Public Corporation; |
20  XEROX STATE AND LOCAL SOLUTIONS, |
    INC.; CONDUENT STATE AND LOCAL |
21  SOLUTIONS, INC.; and DOES 1-100, |
22                                    |
            Defendants.               |
23

24

25

26

27

28

ORIGINAL CLASS ACTION COMPLAINT                                        1

                                                    FILED BY FAX

1        Plaintiffs Sumatra Kendrick and Michelle Kelly ("Plaintiffs"), on behalf of themselves, and all

2  others similarly situated, and the general public, submit their class action complaint against the above-

3  captioned defendants (the "Complaint") as follows:

4  **NATURE OF THE CASE**

5      1.    This class action seeks redress for defendants' violation of Plaintiffs' and class

6  members' right to privacy and protection of personally identifiable information ("PII") including

7  under *California Streets and Highways Code* § 31490.   The defendants transmitted the Class' PII in

8  direct violation of § 31490 to the Department of Motor Vehicles, the Franchise Tax Board, and a host

9  of other unauthorized third persons that entitles Plaintiff to damages and injunctive relief.

10 **THE PARTIES**

11     2.    Plaintiff Sumatra Kendrick is an individual residing in the State of California. While

12 driving through the Golden Gate Bridge tolls that the Defendants operate, Sumatra Kendrick followed

13 signage commands that indicated, "do not slow down, keep going." The signage did not adequately

14 inform the driver of the pending toll crossing. Kendrick was not a Fastrak subscriber. Ms. Kendrick

15 received no notice of toll violation from the Defendants, nor an opportunity to contest through any

16 administrative hearing, the tolls she had allegedly incurred. Kendrick was also informed by certain of

17 the Defendants that she was never sent a notice of toll evasion violation by the Defendants. The first

18 Kendrick heard of any claims by the Defendants, was when she went to renew her registration with

19 the California Department of Motor Vehicles ("DMV"). The DMV advised Kendrick of two purported

20 toll violations totaling $170.00 that had been imposed as a lien against her driver's registration by

21 tolling authorities. Ms. Kendrick paid the $170.00 to renew her registration.

22     3.    Plaintiff Michelle Kelly is an individual residing in the State of California. While

23 driving through the Golden Gate Bridge tolls that the Defendants operate, Michelle Kelly was assessed

24 155 toll violations by the defendants from October of 2015 to June of 2016, totaling approximately

25 $9,000 in penalties. The penalties that Defendants assessed against Kelly constitute a multiple of over

26 10x of the tolls assessed by the Defendants. From October of 2015 to June of 2016, Kelly's PII – her

27 license plate image, was photographed and transferred approximately twice a month by the Defendants

28 to the DMV, rental car agencies, and other third party entities, including without limitation, the

ORIGINAL CLASS ACTION COMPLAINT

1   Franchise Tax Board as alleged later in this Complaint.  When Kelly did not pay the tolls because she
2   was financially unable to, the Defendants filed a separate request with the DMV to place a hold on
3   Kelly's registration.

4       4.   Defendant, the Bay Area Toll Authority ("BATA"), is a government agency
5   responsible for operating and managing toll collection on the Golden Gate Bridge (including the
6   Fastrak Program), sending invoices, and assessing and processing toll evasion violations and penalties.
7   BATA is an "issuing agent" within the meaning of California Vehicle Code §§ 40250, *et seq.*  BATA,
8   at all times alleged herein, conducted its principal business within the State of California, located in
9   the City and County of San Francisco.

10       5.   Defendant the Golden Gate Bridge, Highway and Transportation District (the
11   "District" or "GGB") is also a government agency responsible for operating and managing toll
12   collection on the GCB (including the Fastrak Program), sending invoices, and assessing and
13   processing toll evasion violation and penalties.  The District was and is at all times herein, conducted
14   business in California, with its located headquarters in the City and County of San Francisco.  The
15   District is an "issuing agency" within the meaning of California Vehicle Code §§ 40250, *et seq.*

16       6.   Defendant Xerox State and Local Solutions, Inc. ("Xerox") formerly ACS State and
17   Local Solutions, Inc. is a private corporation headquartered in New York, and authorized to conduct
18   business in California.  On April 2, 2012, ACS State and Local Solutions, Inc. filed a certificate of
19   amendment to its Articles of Incorporation, changing its name to Xerox State & Local Solutions, Inc.
20   Since 2002, Xerox had operated and maintained the Fastrak Program.  In January of 2013, BATA and
21   the District contracted with Xerox pursuant to Government Code section 40252 to administer the Fast
22   Trak program through June 30, 2019.  Conduent State and Local Solutions, Inc. ("Conduent") may be
23   operating the Toll Bridges at this time.  Xerox/Conduent provide and administer the Fastrak and Pay-
24   By-Plate programs and manage the assessment, notification, and collection of fines and penalties
25   pertaining to toll invoices and toll evasion violations on the GCB.  Accordingly, pursuant to
26   Government Code Section 40253, Xerox and Conduent are each a "processing agency" within the
27   meaning California Vehicle Code 40250 *et. seq.* Xerox has accordingly been delegated a public
28   function by BATA and the District.  Xerox and Conduent are also thereby entwined with BATA and

ORIGINAL CLASS ACTION COMPLAINT

3

1  the District's government policies, and BATA and the District are entwined in the management and

2  control of Xerox/Conduent. Finally, Xerox and Conduent are a knowing and willful participant in a

3  joint action, along with the BATA and the District, in the various acts and omissions set forth in this

4  injury, which caused injury to Plaintiffs and the Class Members.

5        7.     Plaintiffs are ignorant of the true identities and capacities of fictitiously named

6  defendants designated as Does 1-100, but will amend this complaint or any subsequent pleading when

7  their identities and capacities have been ascertained according to proof. On information and belief,

8  each and every Doe defendant is in some manner responsible for the acts and conduct of the other

9  defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred

10  by Plaintiffs. Each reference in this complaint to "defendant," "defendants," or a specifically named

11  defendant, refers also to all of the named defendants and those unknown parties sued under fictitious

12  names.

13        8.     Plaintiffs are informed and believes and thereon alleges that, at all times relevant

14  hereto, all of the defendants together were members of a single unincorporated association, with each

15  member exercising control over the operations of the association. Plaintiffs are informed and believes

16  and thereon alleges that, at all times relevant hereto, each of the defendants was the agent, associate,

17  employee and or representative of each of the remaining defendants, and in doing the things hereinafter

18  alleged, was acting within the authorized course and scope of this agency, association and employment

19  with the full knowledge and consent of the remaining defendants. Plaintiffs are further informed and

20  believes and thereon alleges that each and all of the acts herein alleged as to each defendant was

21  authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved

22  said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent

23  in a writing subscribed by the principal.

24        9.     Plaintiffs are informed and believes and thereon alleges that each of the defendants

25  herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in

26  this complaint. The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiffs

27  of her constitutionally protected rights to property, and of her rights under other laws as set forth

28

ORIGINAL CLASS ACTION COMPLAINT

4

1  herein. Each of the defendants herein committed an act in furtherance of the agreement. Injury was
2  caused to the Plaintiffs by the defendants as a consequence.

3  **JURISDICTION AND VENUE**

4      10.    The Court has personal jurisdiction over Defendants because they are residents and/or
5  doing business in California.

6      11.    The GGB Toll Plaza, at which Defendants have installed equipment to determine if
7  vehicle owners have a Fastrak transponder or should be issued a toll invoice, is located in San
8  Francisco. The FasTrak Customer Service office is located in San Francisco. Vehicle owners who
9  wish to contest their toll invoices, toll evasion violations or associated penalties are instructed to do
10  so at the FastTrak Customer Service office in San Francisco.

11      12.    The Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. §1367 does not apply
12  to this class action based on the following three independent exceptions: (1) the State Actor exception,
13  (2) the Local Controversy exception, and the (3) Home State exception. More than 75% of the putative
14  class members are citizens of the State of California for the purposes of CAFA and the exceptions to
15  CAFA. At least two of the Defendants are California entities for the purpose of CAFA and the
16  exceptions to CAFA. Plaintiffs are each California residents and citizens for the purpose of CAFA,
17  and the exceptions to CAFA.

18      13.    Venue is proper in this Court in accordance with California Code of Civil Procedure
19  § 395(a), because Defendants reside in, contracted to perform obligation in, and/or do business in
20  San Francisco County. Furthermore, the injuries, damages, and/or harm upon which this action is
21  based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating
22  from the State of California and the City and County of San Francisco.

23  **PRESENTMENT**

24      14. Plaintiffs have complied with all administrative and substantive requirements for filing suit
25  against public entities, including GGB and BATA, under Government Code §§910, *et seq*. Plaintiffs
26  filed a claim with GGB and BATA prior to filing this lawsuit. Plaintiff presented their claims to GGB
27  and BATA more than 45 days prior to filing this First Amended Class Action Complaint
28

ORIGINAL CLASS ACTION COMPLAINT

5

1  15. Plaintiff Kelly filed a claim on her behalf, and on behalf of all others similarly situated,

2  with the applicable government Defendants on or about May 25, 2017 by sending them a letter via

3  registered and certified mail, return receipt requested. Defendants denied the claims pursuant to

4  California Government Code §911.6.

5  16.  Notwithstanding their presentment of claims out of an abundance of caution, Plaintiffs are

6  under no obligation to submit a government claim in reference to any of their requests for injunctive

7  relief.

8  **FACTUAL BACKGROUND**

9  17. Toll roads in the United States have been in use for more than 200 years, and payment of

10  the toll historically could not be missed by travelers: you were required to physically stop your vehicle

11  at a very obvious toll plaza and throw your money in a bucket or hand it to an agent.  California was

12  no different.

13  18. BATA was created by the California Legislature in 1997 to administer the autotolls on the

14  San Francisco Bay Area's seven state-owned toll bridges – Antioch, Benicia-Martinez, Carquinez,

15  Dumbarton, Richmond-San Rafael, San Francisco – Oakland, and San Mateo – Hayward, Bay Area

16  Bridge, Golden Gate Bridge (collectively, the "Toll Bridges").  The Toll Bridges were built pursuant

17  to state laws that, due to shortages in funding to build new highways and roads, permitted privately-

18  owned companies, county government agencies, transportation districts, and other entities to sell non-

19  recourse bonds to private investors to raise money to build and maintain Toll Bridges. The Toll Bridges

20  are legally owned by the State of California but are operated and maintained by BATA pursuant to a

21  franchise issued by the state.

22  19. The Toll Bridges and their operators relied on Vehicle Code ("Vehicle Code") §§40250,

23  *et. seq.* which made toll violations civil in nature and their collection and administration subject to

24  civil procedures, so that they could be handled by the private and local entities that operate the Toll

25  Bridges. These statutes, however, lack key procedural and substantive constitutional protections and

26  have been subject to widespread abuse by Defendants with regard to their administration of penalties

27  for toll violations.  The dissemination of PII illegally is meant to avoid the need to actually give

28

ORIGINAL CLASS ACTION COMPLAINT

6

1    commuters due process by obtaining a judgment, and is instead an unfair profit center exacting a

2    windfall through penalties coerced from unsuspecting drivers.

3                              **HOW THE TOLL BRIDGES WORK**

4        20. California Vehicle Code §23301, is applicable to all vehicle crossings and Toll Bridges in

5    California. Section 23301 provides that "each vehicle that enters into or upon a vehicular crossing

6    immediately becomes liable for those tolls and other charges as may from time to time be prescribed

7    by the California Transportation Commission."

8        21. Vehicle Code §40250(b) makes the registered owner of the vehicle involved in the

9    violation jointly and severally liable with the driver of such vehicle.

10       22. The tolling agencies in California accept payment for tolls by either offering an electronic

11   toll collection system (*e.g.*, FasTrak) and/or implementing a pay-by-license-plate method of payment,

12   or both.

13       23. "FasTrak" is an electronic toll collection system, where people establish a FasTrak account

14   with a tolling agency and then receive a transponder, which they then place on their vehicle. When

15   traveling through the toll zone, the transponder is read by an overhead antenna on the road, and the

16   posted toll amount is then automatically deducted from the customer's account. While people are

17   allowed to use their FasTrak transponders throughout the state, they are encouraged to obtain a

18   transponder from the agency that operates the road, lane, or bridge that they will use the most.

19       24. Vehicle Code §23302(e) defines a pay-by-plate payment as "an issuing agency's use of on-

20   road vehicle license plate identification recognition technology to accept payment of tolls in

21   accordance with policies adopted by the issuing agency."

22       25. Vehicle Code §23301.8 regulates pay-by-plate programs as follows:

23
24           Where an issuing agency permits pay-by-plate toll payment as described in

25           subdivision (e) of Section 23302, it shall communicate, as practicable, the

26           pay-by-plate toll amount in the same manner as it communicates other toll

27           payment methods. The issuing agency shall provide publicly available

28           information on how pay-by-plate toll payment works, including the toll

             amount, process for payment, and period of time a vehicle has to resolve the

ORIGINAL CLASS ACTION COMPLAINT

payment before an issuing agency may process the trip as a violation under Section 40255. Communication of this information may include the Department of Transportation's approved signage, posting of information on the issuing agency's Internet Web site, media advertising, public meeting or disclosure as required by the issuing agency's policies, or other methods of communication. Except where the issuing agency has an agreement with a vehicle owner that specifies in advance any administrative fees that will be imposed on the owner for pay-by-plate toll payment, administrative costs shall be incorporated into the pay-by-plate toll amount, and no additional administrative costs shall be added above the posted pay-by-plate toll amount.

26. Vehicle Code §23301.8 requires BATA to communicate to the public both the toll payment and how the pay-by-plate toll payment program works. Additionally, any additional administrative costs must be paid by the BATA and cannot be added to the pay-by-plate toll amount.

27. The BATA outsourced the Toll Bridges administrative functions to Defendant Xerox (the "Private Defendant" or "Xerox"). Defendant Xerox provided the Toll Bridges with customer service and toll compliance services.

## STATE ACTION

28. The BATA and the District are "state actors" who have gone to great lengths to hold themselves out as such by:

    i. Not disclosing their identity as private contractors in communications with the public, but instead acting as if they are, and representing themselves as, government agencies through the Toll Bridges website, its office, and all its customer service materials;

    ii. Sending out "Notice of Toll Evasion" violations to Class Members appearing to be from the BATA;

ORIGINAL CLASS ACTION COMPLAINT

iii. Threatening to place liens on Class Members' vehicle registrations in the Notice letters;

iv. Threatening to impose civil judgments and other collection efforts on Class Members if they do not pay the fines set forth in the Notice letters;

v. Entering into contracts with Xerox and willingly agreeing to become "processing agenc[ies]" as that term is used and defined in Vehicle Code §§ 40252 and 40253;

vi. Entering into contracts with Xerox and becoming willing participants in a joint venture with a state actor – *i.e.*, BATA; and

vii. Processing, reviewing, and collecting toll evasion violation penalties, resulting from their exercise of the coercive power of the State of California.

29. The BATA and DISTRICT Defendants' willing operation of the toll collections, and their processing of the Notices of Toll Evasion and Notices of Delinquent Toll Evasion along with Xerox, leaves them entwined with governmental policy.

30. The BATA and DISTRICT Defendants' willing participation in a joint venture with state actors as "processing agenc[ies]" under the Vehicle Code, Xerox is obligated to comply with Vehicle Code §40250, *et. seq.* and the California Constitution.

31. The BATA and DISTRICT were entwined with, and directly managed, Xerox's activities that are challenged in this Complaint.

32. Through these activities, collecting penalties authorized by state statute, and threatening vehicle registration holds by the DMV, the private entities are commanding the power of the state.

### XEROX OPERATES THE TOLL BRIDGES

33. From October of 2010 to the present, Defendant Xerox and/or Conduent were responsible for providing the following functions to BATA and the DISTRICT and in fact operated the Toll Bridges for BATA and GGB:

ORIGINAL CLASS ACTION COMPLAINT

9

(a) Customer service/call center operation (staff to hand enrollment, respond to calls, complaints, resolve violations, payment processing);

(b) Account maintenance (update accounts, research new accounts to resolve unpaid violations, suspend accounts, reinstate or revoke accounts, prepare and mail customer notices, investigate accounts);

(c) Inventory (transponders and supplies related to transponders);

(d) Mail room;

(e) Payment processing;

(f) Reports (aging, FasTrak revenue and activity reports, financial reporting);

(g) Special projects;

(h) Toll enforcement processing including actually conducting and/or overseeing any initial internal administrative review proceeding conducted concerning a toll violation by the TCA, actually conducting any administrative review (the second tier of the three tier review process) image review services, maintenance of electronic data exchange with the DMV, electronically produce file to mail, process violation inquiries, process affidavits of non-liability, place registration holds, resolve customer violation issues, perform judgment recovery services;

(i) SOP's configuration Control & Documentation (library catalog, training manuals, system software changes tracking, update software source code, test, maintain and schedule software changes as required, test configuration platform, develop and maintains disaster recovery plan, document security audits);

(j) System support (provide complete system administrative and support service for the operation of the customer service system, violation, imaging, reporting, webs services and other FasTrak related software system – including generating account statements, processing auto debiting, posting all tolls, penalties, and charges and credits, maintain compliance with interoperability transfer, archive account and image data, ensure the daily transfer of violations for the image processing systems and more);

(k) Program Management (provide overall program management for each item in the contract between the parties). ((a) through (k), are collectively referred to as the "Functions.")

ORIGINAL CLASS ACTION COMPLAINT

34. From October of 2010 to present date, Xerox participated with the District and BATA in determining the amount of the penalties assessed, collected, and charged against Plaintiff and the Class Members.

35. From October of 2010 to present date, Xerox actually provided PII of Plaintiffs and the Class Members to Other Unauthorized Parties.

## DEFENDANTS' ADMINISTRATIVE PROCESS IS FATALLY FLAWED AND UNCONSTITUTIONAL AND THUS PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ANY ADMINISTRATIVE PROCEDURES

36. No administrative exhaustion is required because relief is unavailable and inadequate, among other reasons.

37. Under the guise of Vehicle Code §40250, BATA and the DISTRICT also assess millions of dollars in civil penalties against commuters that are excessive, without proper notice and without a fair hearing.

38. Under Vehicle Code §§40250, *et seq.*, the DISTRICT may assess civil penalties for "toll evasion" violations for a variety of reasons, including inadvertent mistakes, such as if the commuter's card has expired, if the credit card was declined, or the transponder was not properly placed on the windshield.

39. Under Vehicle Code §40254(e), "[t]he processing agent shall use its best efforts to obtain accurate information concerning the identity and address of the registered owner for the purpose of forwarding a notice of toll evasion violation pursuant to subdivision (a)."

40. Despite the clear intent of the Legislature to use all means necessary to provide notice to commuters, the DISTRICT and the BATA fail and/or refuse to send any notices by e-mail or telephone after months of no contact with the commuter. Meanwhile, the commuter racks up thousands of dollars in civil penalties and unwittingly waives due process rights by failing to timely submit an affidavit to contest the violations. Plaintiffs are informed and believe the failure of DISTRICT and BATA to use

ORIGINAL CLASS ACTION COMPLAINT

11

"best efforts" is, and has been, a willful and deliberate scheme to generate greater penalty assessments and judgments against commuters.

41. Under Vehicle Code §40254, the DISTRICT has between 21 to 90 days to serve notices of the toll violations. However, within this time, many commuters have already passed through the Toll Bridges and incurred enormous civil penalties without any notice of the toll violations. For example, even if notice is sent within one week after the violation, the commuter could potentially be assessed several thousands of dollars in one week. This 21 to 90 day notice window encourages BATA to delay sending notices in a conscious effort to increase penalties and generate a financial return.

42. The Toll Bridges' system of toll collection and enforcement lacks key procedural and substantive constitutional protections and violates consumer protection laws.

43. The abuse of BATA and GGB has been well chronicled in the news. John Goodwin of BATA has claimed he is only interested in tolls, but this belies his dogged attempt at collecting hundreds of millions, if not billions in penalties. *See e.g.* http://www.ktvu.com/news/4612222-story (2 INVESTIGATES).

44. Goodwin states in that same video: "in order to keep costs down, we rely so much on automated systems. Some times things like this will happen."

45. If Class Members cannot pay the outrageous tolls, BATA and GGB having shockingly recommended the individual file a bankruptcy.

46. BATA and GGB have even been fined by the Transit Authorities $330,000 for bad customers service, which just scratched the surface of what 7 On Your Side, uncovered. http://abc7news.com/technology/7-on-your-side-fastrak-customers-unfairly-hit-with-penalties/515536/ (February 12, 2015). As stated in the story "the fact that a private corporation, Xerox, can put a hold on the DMV –my registration – seems wrong." (*Id.*)

47. Fastrak has a deplorable 1.5 star ranking on YELP https://www.yelp.com/biz/fastrak-san-francisco-2, and 100% negative reviews on ripoffreport.com/ Better Business Bureau.

48. Yelp features hundreds of negative review from normal consumers outraged by the manner the Toll Bridges are operated. Specifically, many persons receive "notices of toll violations" even

ORIGINAL CLASS ACTION COMPLAINT

though the license plate image captured does not even match with the number on file with the toll authorities.

49. The signage warning Class Members (as hereinafter defined) that they are travelling on the Toll Bridges is wholly inadequate and inconspicuous. Signage locations and language on the Toll Bridges do not provide adequate advance notice to Class Members of the Toll Bridges, nor any notice whatsoever of the amount of tolls to be assessed to Class Members for entering the Toll Bridges.

50. Once a Class Member enters the Toll Bridge, even inadvertently, a toll is electronically assessed, and there is no reasonable means by which a Class Member can mitigate or avoid the toll, exit the Toll Road, or contest the assessment. Specifically, the District and BATA prey on unsuspecting travelers who traverse the Golden Gate Bridge in their rental cars.

51. Further, when passing through the unmanned cashless areas, there is no indication by Defendants (or their agents) that a toll and/or penalty has been assessed against the Class Member, or that there has been an infraction.

52. Defendants' unmanned cashless systems are designed to eliminate their costs of manning Toll Bridges and shift the burden and penalty to the unwitting Class Members. Moreover, Defendants' systems are designed to reap an unjust windfall to Defendants and their private investors through collection of massive penalties.

53. Plaintiffs and the class members unaffiliated with rental car companies (and other third parties) were charged $6.00 per toll (between September 28, 2008 and April 6, 2014), $7.00 per toll (between April 7, 2014 to June 30, 2015), and $7.25 per toll (between July 1, 2015 to June 30, 2016). However, the Defendants also conspire with car rental companies to charge tolls at rates less than $1.00 below the above rates, but pass on amounts far in excess of the listed rates above to consumers – while Defendants and the car rental companies come to an arrangement on the profits. On March 1, 2017, the San Francisco City Attorney filed a Complaint For Injunctive Relief and civil penalties for violations of the Business and Professions Code Section 17200 and 17500 against Hertz Corporation and other based on their business practices in collecting funds far in excess of the actual cost of the

ORIGINAL CLASS ACTION COMPLAINT

13

tolls paid to the Defendants on the Golden Gate Bridge. *People of the State of California v. The Hertz Corporation et. al*, CGC-17-557336 (Sup. Ct. San Francisco March 1, 2017).

54. In addition to paying a toll, once a class member passes through the toll booth, he or she is automatically assessed a $25 penalty in addition to the toll. The Defendants claim that they have the option of waiving that automatic "penalty" if a person signs up for Fastrak (and does not already belong to Fastrak using the toll roads across the state). For each subsequent violation, the penalty assessed is automatically $70. Additional fees are applied to class members, including $3.00, per registration hold with the DMV. Thus, for each violation, the "penalties" assessed against Plaintiffs' constitute a multiplier of over 10 times the amount of the toll ($73 penalty to a $7.00 toll). FAC, ¶ 3. In the aggregate, Plaintiffs were penalized by a multiple of 10.65x ($9,000 in penalties to $845 in tolls).

55. For many class members driving car rentals, they pay $7.25, plus $24.75 for Platepass, even though they are not in violation of the law by using Platepass. Thus, these class members pay a penalty multiple of 4x, even though they are in full compliance with the law.

56. Defendants' Golden Gate Bridge Toll Provides Inadequate Signage And Is An Unavoidable Trap From March 27, 2013 through today, the signage on the Golden Gate Bridge southbound commands, "keep moving," and "do not stop." The speed limit is 25 miles per hour. Citizens have no other reasonable means to the city, but to pass through the GGB toll, and many don't even know they have been photographed. It is simply too late once the bridge is upon a commuter. Multiple violations are racked up before the Defendants get around to sending the notice. By the time notice is mailed, it is too late to utilize the administrative process, as was the case for Kelly who did not receive the notice in time to contest the penalties.

## CLASS ACTION ALLEGATIONS

57. Plaintiffs bring this action on behalf of themselves, the general public, and all others similarly situated, pursuant to C.C.P. § 382.

58. (a) all consumers who between May 1, 2011 and the present, had their PII provided to any person who was not authorized to receive the PII pursuant to California Streets and Highways Code

ORIGINAL CLASS ACTION COMPLAINT

14

§31490; (b) all consumers who between May 1, 2011 and the present had their PII provide to a person who was not authorized to receive the PII in violation of the Fastrak application and/or privacy policy(collectively, the "Class Members").

59. This action is properly brought as a class action for the following reasons:

(a)     The proposed class is so numerous that the joinder of all Class Members is impracticable. While Plaintiff do not know the exact number and identity of all Class Members, Plaintiff are informed and believe that there are hundreds of thousands (if not millions) of Class Members. The precise number of Class Members can be ascertained through discovery, which will include Defendants' business records;

(b)     The disposition of Plaintiff' and the Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)     The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

(d)     There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

(1)     Whether Defendants transmitted or sold personally identifiable information as a practice, policy, or pattern including, but not limited to, as part and parcel of their collection activity;

(2)     Whether Defendants violated California's Unfair Competition Law, Business & Professions Code §§17200, *et seq.* ("UCL");

(3)     Whether Defendants violated California's Consumer Legal Remedies Act, Civil Code §§1750, *et seq.* ("CLRA");

(4)     Whether Defendants have received funds from Plaintiff and Class Members that they unjustly received;

ORIGINAL CLASS ACTION COMPLAINT

15

(5)     Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

(6)     Whether Plaintiff and Class Members are entitled to an award of punitive damages, attorneys' fees, and expenses against Defendants; and

(7)     Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to equitable relief, and if so, the nature of such relief.

(e)     Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)     Plaintiffs will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed Class Members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel;

(g)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(1)     Given the size of Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(2)     This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, and economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

(3)     Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct; and

(4)     Plaintiff know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

ORIGINAL CLASS ACTION COMPLAINT

60. Plaintiff seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

61. Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF CALIFORNIA STREETS AND
### HIGHWAYS CODE §31490
### (By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)

62. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

63. California Streets and Highways Code §31490 provides that: (a) Except as otherwise provided in this section, a transportation agency may not sell or otherwise provide to any other person or entity personally identifiable information of any person who subscribes to an electronic toll or electronic transit fare collection system or who uses a toll bridge, toll lane, or toll highway that employs an electronic toll collection system.

64. The Plaintiffs and the Class Members are either "subscribers" or "users" of Defendants Toll Bridges pursuant to California Streets and Highways Code §31490(a).

65. California Streets and Highways Code §31490(h) provides that: This section, with respect to an electronic toll collection system, does not prohibit a transportation agency from sharing data with another transportation agency solely to comply with interoperability specifications and standards adopted pursuant to Section 37565 regarding electronic toll collection devices and technologies. A thirdparty vendor may not use personally identifiable information obtained under this subdivision for a purpose other than described in this subdivision.

66. California Streets and Highways Code §31490(l) provides: For purposes of this section, "transportation agency" means the Department of Transportation, the Bay Area Toll Authority, any entity operating a toll bridge, toll lane, or toll highway within the state, any entity administering an

ORIGINAL CLASS ACTION COMPLAINT

1    electronic transit fare collection system and any transit operator participating in that system, or any

2    entity under contract with any of the above entities.

3        67. California Streets and Highways Code §31490(o) provides that: For purposes of this

4    section, "personally identifiable information" means any information that identifies or describes a

5    person including, but not limited to, travel pattern data, address, telephone number, email address,

6    license plate number, photograph, bank account information or credit card number.

7        68. California Streets and Highways Code §31490(p) provides that: For purposes of this

8    section, "interoperability" means the sharing of data, including personally identifiable information,

9    across multiple transportation agencies for the sole purpose of creating an integrated transit fare

10   payment system, integrated toll payment system, or both.

11

12       69. Defendants operate an "electronic toll collection system" within the meaning of

13   California Streets and Highways Code §31490(m).

14       70. Defendants BATA, GGB, Xerox, and Conduent provided Plaintiffs' and Class

15   Members' PII, within the meaning of California Streets and Highways Code §31490(o), to the

16   following Unauthorized Parties: Law Enforcement Agencies, including the DMV, the FTB, the San

17   Francisco Police Department and other city, state, county, and federal Law Enforcement Agencies

18   located in the State of California; Banking Institutions, including, without limitation, Wells Fargo

19   Bank, N.A., JP Morgan Chase Bank, Bank American, N.A.; Car Rental Agencies, including without

20   limitation Ace Rent-A-Car, Advantage, Alamo, Avis, Budget, Dollar, Economy, Enterprise, Europcar,

21   Rent-a-car, Firefly, Fox; out-of-state collection agencies, credit bureaus (including Experian,

22   Transunion, and Equifax) and other unauthorized third persons, marketing company, and promotional

23   opportunities and entities to be ascertained through discovery (Other Unauthorized Parties).

24       71. *Ad nauseum*, the BATA provided to TCA, BRiC, 3M, Cofiroute, OCTA, LA Metro

25   Express, South Bay Expressway, SANDAG, the PII of Plaintiff and the Class Members (i.e., their

26   plate images) for non-interoperability purposes.

27       72. *Ad nauseum*, the GGB provided to TCA, BRiC, 3M, Cofiroute, OCTA, LA Metro

28

ORIGINAL CLASS ACTION COMPLAINT

Express, South Bay Expressway, SANDAG, the PII of Plaintiff and the Class Members (i.e., their plate images) for non-interoperability purposes.

73. *Ad nauseum*, the Xerox provided to TCA, BRiC, 3M, Cofiroute, OCTA, LA Metro Express, South Bay Expressway, SANDAG, the PII of Plaintiff and the Class Members (i.e., their plate images) for non-interoperability purposes.

74. *Ad nauseum*, Conduent provided to TCA, BRiC, 3M, Cofiroute, OCTA, LA Metro Express, South Bay Expressway, SANDAG, the PII of Plaintiff and the Class Members (i.e., their plate images) for non-interoperability purposes.

75. Such PII of Plaintiff and Class Members included, without limitation, information that identified or described Plaintiffs and Class Members as Toll Road toll violators, data of their travel patterns on the Toll Roads, and images of license plates of vehicles they owned or were driving.

76. California Streets and Highways Code §31490(i) is not a defense or excuse of liability pursuant to §31490(a) or (h) because §31490(i) refers to, incorporates, and implicates subsection (d) which contemplates a different functionality of §31490.

77. By providing the Unauthorized Parties with the PII of Plaintiff and the Class Members, Defendants' purpose was to track Plaintiffs' and Class Members' comings and goings, and to interfere with Plaintiff's and Class Members' rights to use their vehicles.

78. Defendants did not receive a search warrant from any law enforcement agency under California Streets and Highways Code §31490 prior to making any of the above-referenced transmissions of PII.

79. Defendants did not have authorization under the transponder agreements with commuters to make any of the above transmissions of PII.

80. GGB, BATA, and XEROX completed separate forms with the DMV prior to transmitting PII for different purposes – albeit both were illegal. GGB, BATA, and XEROX would first file requests (in certain circumstances only) to provide plate images to the DMV to obtain information about commuters, even though the named Defendants already had the information of commuters based on their completed transponder agreements, the availability of public information

ORIGINAL CLASS ACTION COMPLAINT

and databases that indicate information for registration of car owners, private investigation, the right to subpoena under California Streets and Highways Code, the right of publication, and other means to obtain information.

81. Based on DMV procedures and practices, the DMV did not maintain a database of the images of Class Members GGB, BATA, and XEROX would then provide plate images subsequently thereto to the DMV to place a hold on commuters' registration, which was an entirely independent request and function from providing plate images to obtain information about commuters. In other words, the Defendants did not need to make subsequent transmission of image files and PII to obtain the address of a commuter.

82. Based on the fact that GGB, BATA, XEROX, and CONDUENT provided PII of the Plaintiffs and Class Members to the Unauthorized Persons in violation of California Streets and Highways Code§31490(a), pursuant to §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees, reasonable costs from GGB, BATA, and XEROX, and for Plaintiff and those Class Members who had their information provided three or more times, $4,000 for each individual violation, attorney's fees, and reasonable costs from GGB, BATA, XEROX, and CONDUENT. California Streets and Highways Code §31490(p)(2).

**DEFENDANTS ARE LIABLE BECAUSE THE PURPOSE BY WHICH PII WAS PROVIDED TO UNAUTHORIZED PARTIES WAS NOT FOR "INTEROPERABILITY PURPOSES"**

83. When Plaintiff and each of the Class Members drove on the Toll Bridges, each of them was a "user" of the Toll Roads pursuant to §31490(a).

84. Each of the named Defendants is independently a "transportation agency" pursuant to California Streets and Highways Code §31490(l).

85. GGB, BATA, XEROX, and CONDUENT are each independently, "entities" operating a toll bridge, toll lane or toll highway within the state of California based on their contractual and actual roles in the operations of the joint enterprise.

ORIGINAL CLASS ACTION COMPLAINT

86. Each of the Toll Bridges (as previously defined) is a "Toll Highway" and/or "Toll Lane" under §31490(n).

87. Defendants provided to the Unauthorized Parties PII for purposes that were not, and could not have been, for "interoperability purposes" in that none of the transmittals were for the "sole purpose of creating an integrated transit fare payment system, integrated toll payment system, or both." In fact, none of Defendants' providing PII to Unauthorized Parties alleged hereinabove had anything to do with creating any system, much less an "integrated transit fare payment system, integrated toll payment system, or both," but were instead meant to place holds on commuters' vehicle registrations as an illicit collection device. \

88. As defined in §31490(m), for purposes of this section: "[E]lectronic toll collection system" is a system where a transponder, camera-based vehicle identification system, or other electronic medium is used to deduct payment of a toll from a subscriber's account or to establish an obligation to pay a toll, and "electronic transit fare collection system" means a system for issuing an electronic transit pass that enables a transit passenger subscriber to use the transit systems of one or more participating transit operators without having to pay individual fares, where fares are instead deducted from the subscriber's account as loaded onto the electronic transit pass. The transmissions described above were not provided pursuant to a collection system of interoperability, but were instead disseminated to unlawfully implement impermissible collection devices, place holds through the DMV, interfere with property rights, and to track commuters' comings and goings. See Streets and Highways Code §27565.

89. Thus, regardless of whether any of the Unauthorized Parties are themselves "transportation agencies," the named Defendants are liable for violations of California Streets and Highways Code §31490(a), (h), and (l) because their provisions of Plaintiffs' and Class Members' PII were not for "interoperability purposes."

90. Based on the fact that GGB, BATA, and XEROX provided PII of the Plaintiffs and Class Members to the Unauthorized Persons in violation of California Streets and Highways Code §31490(a), pursuant to §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each

ORIGINAL CLASS ACTION COMPLAINT

21

individual violation, attorney's fees, reasonable costs from GGB, BATA, and XEROX, and for Plaintiffs and those Class Members who had their information provided three or more times, $4,000 for each individual violation, attorney's fees, and reasonable costs from GGB, BATA, and XEROX. California Streets and Highways Code §31490(p)(2).

## DEFENDANTS ARE ALTERNATIVELY LIABLE BECAUSE THE UNAUTHORIZED PARTIES WERE NOT PERMITTED RECIPIENTS OF PLAINTIFFS' AND CLASS MEMBERS' PII REGARDLESS OF THE PURPOSE

91. Plaintiffs are informed and believes, and on that basis alleges, that neither GGB, BATA, and XEROX, was under contract with any of the Unauthorized Third Parties, within the meaning and purpose of California Streets and Highways Code §31490(l), at the time they provided Plaintiffs' and Class Members' PII to the Unauthorized Persons, with the exception of contracts by and between Xerox and BATA/GGB.

92. Specifically, Plaintiffs are informed and believes, and based thereon alleges that neither GGB, BATA, and XEROX executed any contract with the DMV at all.

93. The DMV is not a "transportation agency." Specifically, the GGB and BATA were not "under contract" with the DMV for the purposes of California Streets and Highways Code §31490(l). The DMV has not been a signatory to any writing with BATA and GGB concerning BATA and/or GGB providing PII under the unlawful transmissions described above. The DMV has no continuing contractual obligation with any party such that it would be said to be "under contract."

94. Xerox is not under contract with the DMV.

95. The DMV is a law enforcement agency within the meaning of the California Streets and Highways Code and thus, cannot be a "transportation agency" thereunder.

96. None of the Law Enforcement Agencies are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

97. The FTB is not "under contract" with GGB, BATA, and XEROX under California Streets and Highways Code§31490(l).

98. None of the Banking Institutions are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

ORIGINAL CLASS ACTION COMPLAINT

1      99. None of the Other Unauthorized Parties are "under contract" with GGB, BATA, and

2 XEROX pursuant to California Streets and Highways Code §31490(l).

3      100. None of the Credit Bureaus are "under contract" with GGB, BATA, and XEROX.

4      101. None of the Car Rental Agencies are "under contract" with GGB, BATA, and XEROX

5 pursuant to California Streets and Highways Code §31490(l).

6      102. Thus, none of the Unauthorized Parties was a "transportation agency" within the

7 meaning of California Streets and Highways Code §31490(l).

8      103. Consequently, Defendants' provision of PII to the Unauthorized Parties was in violation

9 of California Streets and Highways Code §31490 for this independent reason, irrespective of

10 whether providing the PII was provided for interoperability purposes.

11      **DEFENDANTS ARE INDEPENDENTLY LIABLE BECAUSE THEY PROVIDED PII TO**

12      **LAW ENFORCEMENT AGENCIES WITHOUT A SEARCH WARRANT**

13      104. California Streets and Highways Code §31490(e)(1) provides: A transportation agency

14 may make personally identifiable information of a person available to a law enforcement agency

15 only pursuant to a search warrant. Absent a provision in the search warrant to the contrary, the law

16 enforcement agency shall immediately, but in any event within no more than five days, notify the

17 person that his or her records have been obtained and shall provide the person with a copy of the

18 search warrant and the identity of the law enforcement agency or peace officer to whom the records

19 were provided.

20      105. Each of the DMV and San Francisco Police Department, and other Law Enforcement

21 Agencies in the State of California, is a law enforcement agency within the meaning of California

22 Streets and Highways Code §31490(e)(1).

23      106. Plaintiffs are informed and believe, and on that basis allege, that none of the Defendants

24 obtained a search warrant and otherwise complied with California Streets and Highways Code

25 §31490(e)(1) when providing Plaintiffs' and Class Members' PII to the DMV, the San Francisco

26 Police Department, and other Law Enforcement Agencies.

27

28

ORIGINAL CLASS ACTION COMPLAINT

107. Consequently, Defendants' provision to the DMV, other Law Enforcement Agencies, and San Francisco Police Department of Plaintiffs' and Class Members' PII was in violation of California Streets and Highways Code §31490.

108. Plaintiffs are informed and believe, and thereon allege, that Defendants have violated, and conspired to violate, California Streets and Highways Code §31490 by unlawfully transmitting Plaintiffs' and the Class Members' PII, within the meaning of California Streets and Highways Code §31490(o), to other agencies and individuals including, but not limited to, the Unauthorized Parties. Further, Defendants ratified, authorized, directed, and approved that the DMV place a hold on Plaintiffs' and Class Members' vehicles and that the DMV transfer Plaintiffs' and Class Members' PII to other Law Enforcement Agencies, and that the San Francisco Police Department do the same, thereby intentionally and illicitly circumventing the law.

109. Specifically, on at least two occasions per week, Defendants have transmitted and continue to transmit to Unauthorized Parties a list of all users and subscribers, that contains PII of each user and subscriber, whose registration should be placed on hold.

**DEFENDANTS ARE INDEPENDENTLY AND ADDITIONALLY LIABLE BASED ON THEIR NON-COMPLIANT PRIVACY POLICIES IN VIOLATION OF CALIFORNIA STREETS AND HIGHWAYS CODE §31490(B) AND (P)**

110. California Streets and Highways Code §31490(b) provides that: (b) A transportation agency that employs an electronic toll collection system shall establish a privacy policy regarding the collection and use of personally identifiable information and provide to subscribers of that system a copy of the privacy policy in a manner that is conspicuous and meaningful, such as by providing a copy to the subscriber with the transponder or other device used as an electronic toll collection mechanism, or, if the system does not use a mechanism, with the application materials. A transportation agency shall conspicuously post its privacy policy on its Internet Web site. For purposes of this subdivision, "conspicuously post" has the same meaning as that term is defined in

ORIGINAL CLASS ACTION COMPLAINT

24

1    paragraphs (1) to (4), inclusive, of subdivision (b) of Section 22577 of the Business and Professions

2    Code. The policy shall include, but need not be limited to, a description of the following:

3    (1) The types of personally identifiable information that is collected by the agency.

4    (2) The categories of third-party persons or entities with whom the agency may share personally

5    identifiable information.

6    (3) The process by which a transportation agency notifies subscribers of material changes to its

7    privacy policy.

8.    (4) The effective date of the privacy policy.

9    (5) The process by which a subscriber may review and request changes to any of his or her

10    personally identifiable information.

11        111.     Each of the named Defendants are transportation agencies that employ an electronic

12    toll collection system under Street & Highway Code Section 31490.

13        112.     The TCA's "Toll Roads Privacy Policy," set forth in a back-page footer of BATA's

14    website at https://www.bayareafastrak.org/en/support/privacy.shtml, fails to comply with California

15    Streets and Highways Code §31490(b)(1). The policy fails to completely and accurately identify the

16    who BATA, GGB, and XEROX will be sharing personally identifiable information with as required

17    by §31490(b)(1).

18        113.     The Defendants' privacy policy provides: "BATA may share PII with GGBHTD,

19    ACTC, and VTA for the purpose of managing FasTrak® and other electronic toll collection

20    operations (i.e. License Plate Accounts, One-Time Payment Accounts and Invoices). BATA may

21    also share PII with other toll agencies within the State of California for the purpose of managing

22    FasTrak® operations. If you participate in the SFO Parking Program to pay parking fees, BATA will

23    share your FasTrak® toll tag number with SFO for the purpose of operating the SFO Parking

24    Program. In addition, BATA may share PII with SFO as necessary to resolve customer disputes."

25        114.     Further, the Policy provides: "[i]n addition, BATA hires third-party service providers

26    for the purpose of operating the FasTrak® and other electronic toll collection programs referenced

27    above, such as managing Accounts, collecting revenues due, and providing remote walk-in locations

28    at which FasTrak®, License Plate Account, One-time Payment Account, and Invoices customers can

ORIGINAL CLASS ACTION COMPLAINT

1   pay tolls in cash. The CSC Contractor, Xerox, which may need to share PII with subcontractors to

2   enable credit card processing and mailing services, is one such service provider. These contractors

3   are provided only with the PII they need to deliver the services. BATA requires the service providers

4   to maintain the confidentiality of the information and to use it only as necessary to carry out their

5   duties under the FasTrak® and other electronic toll collection programs mentioned in this Privacy

6   Policy."

7       115.    The Policy violates §31490(b)(1) because BATA, GGB and Xerox actually provide

8   PII to a host of other unauthorized persons:  Car Rental Agencies, Law Enforcement Agencies

9   without a search warrant (including the DMV), the Credit Bureaus, Banking Institutions, the FTB

10  and the Other Unauthorized Persons.

11      116.    Further, BATA, GGB and XEROX have violated California Streets and Highways

12  Code §31490(b) because even though BATA, GGB and XEROX "shall" establish a privacy policy

13  regarding the "collection and use" of PII, BATA, GGB and XEROX failed to do so. Specifically, the

14  privacy policy fails to state that PII (the license plate images of Class Members and other PII of

15  Class Members), as previously alleged, is provided by BATA, GGB and XEROX to a multitude of

16  persons and entities to place holds on Class Members' registration, to collect debts, to monitor

17  movements, and for other purposes.  The privacy policy does not reference that BATA, GGB and

18  XEROX will use the PII to place holds on Plaintiff and Class Members' vehicles.

19      117.    Based on the fact that BATA, GGB and XEROX failed to comply with §31490(b) in

20  regards to the requirements of the privacy policy (which each party had authority and control over

21  drafting, implementing, and publishing) before BATA, GGB and XEROX provided Class Members'

22  PII to any third person, the BATA, GGB and XEROX have "otherwise provided information in

23  violation of this section" pursuant to California Streets and Highways Code §31490(p). Thus,

24  Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees,

25  reasonable costs from BATA, GGB and XEROX, and for Plaintiff and those Class Members who

26  had their information provided three or more times, $4,000 for each individual violation, attorney's

27  fees, and reasonable costs from BATA, GGB and XEROX.

28

ORIGINAL CLASS ACTION COMPLAINT

118.   In addition, TCA's policy makes false statements of material fact (by representation and by omission) which are independently and additionally violative of California Streets and Highways Code §31490, as it is rife with false statements which Defendants knew were false when made, and knew Plaintiffs and Class Members would justifiably rely on them to their detriment, which they did, as follows: "We have seen a spike since we went to all-electronic tolling," said Andrew Fremier of the Bay Area Toll Authority. He acknowledges violations shot up after the Golden Gate Bridge eliminated toll takers in 2013. A 7 On Your Side investigation revealed a staggering increase. In 2014, nearly a quarter million drivers had to pay penalties for toll evasion on the bridge. That's five times more violations than in 2012 when drivers could still pay a toll taker. http://abc7news.com/technology/7-on-your-side-fastrak-customers-unfairly-hit-with-penalties/515536/

119.   Besides these entities, PII will not be disclosed to any other third party without express customer consent, except as required to comply with laws or legal processes served on BATA. In fact, the  privacy policy does not identify anything about the "personally identifiable information" that is collected.  As alleged above, the TCA actually captures the plate  image of Class Member vehicles that pass through the Toll Roads. Specifically, in contravention to the manner in which TCA collects and disseminates PII, TCA falsely discloses as follows: Further, the TCA has violated California Streets and Highways Code §31490(b) because even though the TCA "shall" establish a privacy policy regarding the "collection and use" of PII, the TCA failed to do so. Specifically, TCA's privacy policy fails to state that PII (the license plate images of Class Members and other PII of Class Members), as previously alleged, is provided by the TCA to a multitude of persons and entities to place holds on Class Members' registration, to collect debts, to monitor movements, and for other purposes.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT,**
**CALIFORNIA CIVIL CODE §§1788, ET SEQ.**

(By Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants)

ORIGINAL CLASS ACTION COMPLAINT

1  120. Plaintiffs and the Class Members hereby refer to and incorporate by reference each and

2 every allegation contained in the preceding paragraphs.

3  121. Defendants are respective "debt collectors" within the meaning of California Civil

4 Code §1788.2. The tolls, penalties and other debts asserted by the Defendants constitute "consumer

5 debts" pursuant to said section.

6  122. Defendants have violated, and are violating, the Rosenthal Fair Debt Collection

7 Practices Act, California Civil Code §1788, *et seq.*, in that they are making (i) false representations of

8 the true nature of the business or services being rendered by the debt collector (Civil Code

9 §1788.13(i)); and (ii) false representations that the consumer debt may be increased by the addition of

10 attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees

11 or charges may not legally be added to the existing obligation (Civil Code §1788.13(e)). 280.

12 Additionally, California Civil Code §1788.17 requires every debt collector to comply with the

13 provisions of §§1692b to 1692j, inclusive, and that the same shall be subject to the remedies in §1692k,

14 of Title 15 of the United States Code. To wit:

15  (a) Section 1692d prohibits a debt collector from engaging in any conduct the natural

16 consequences of which is to harass, oppress or abuse any person in connection with the collection of

17 a debt.

18  (b) Section 1692e(8) prohibits a debt collector from communicating or threatening to

19 communicate to any person credit information which is known or which should be known to be false,

20 including the failure to communicate that a disputed debt is disputed.

21  (c) Section 1692e(10) prohibits a debt collector from the use of any false representation or

22 deceptive means to collect or attempt to collect any debt or to obtain information concerning a

23 consumer.

24  (d) Section 1692e(11) prohibits a debt collector from failing to disclose (a) in the initial written

25 communication with the consumer and, in addition, if the initial communication with the consumer is

26 oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that

27 any information obtained will be used for that purpose, and (b) in subsequent communications that the

28 communication is from a debt collector.

ORIGINAL CLASS ACTION COMPLAINT

28

1    (e) Section 1692g requires additional written notices be provided by debt collectors and

2    provides circumstances under which a debt collector must cease collection of debts when disputed.

3        123. Defendants have violated, and continue to violate, the foregoing provisions of the

4    Rosenthal Fair Debt Collection Practices Act by using false representations and deceptive means to

5    collect a debt – that is, sending PI to a host of unauthorized third persons to interfere with Class

6    Members' use of their property and to impose holds and liens against Class Members' vehicles. As a

7    consequence, the Plaintiffs and Class Members herein are entitled to appropriate equitable relief,

8    including an order enjoining Defendants from the unlawful practices described herein, as well as

9    recovery of attorneys' fees and costs of litigation (including but not limited to pursuant to California

10   Civil Code §§1788.17 and 1788.30(c)), restitution of property, actual damages, statutory damages,

11   punitive damages (as may otherwise be permitted by law) and any other relief the court deems proper.

12

13                                **THIRD CAUSE OF ACTION**

         **VIOLATION OF THE UNFAIR COMPETITION LAW,**

14                **BUS. & PROF. CODE §§17200, ET SEQ.**

               **(Against Xerox & DOES 1-100 )**

15

16       124. Plaintiff hereby refer to and incorporate by reference each and every allegation contained

17   in the preceding paragraphs of this Complaint.

18       125. Defendant Xerox have engaged in a pattern and practice of acts of unfair competition in

19   violation of the California's UCL, including the practices alleged herein.

20       126. By violating the Plaintiff and other Class Members' federal and state constitutional due

21   process rights and prohibitions against excessive fines, and engaging in the collection activity recited

22   above, Defendant Xerox have committed and continue to commit and engage in "unlawful, unfair or

23   fraudulent business acts or practices" as defined in Bus. & Prof. Code §§17200, *et seq.*

24       127. Business & Professions Code §17200 provides: As used in this chapter, unfair competition

25   shall mean and include any unlawful or fraudulent business act or practice and unfair, deceptive, untrue

26   or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of

27   Part 3 of Division 7 of the Business and Professions Code.

28

ORIGINAL CLASS ACTION COMPLAINT

128. Business & Professions Code §17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such unfair competition, and Bus. & Prof. Code §17203 provides that a court may grant injunctive and equitable relief to such persons.

129. The unlawful conduct of Defendant Xerox, alleged herein, are acts of unfair competition under Bus. & Prof. Code §§17200, *et seq.*, for which Defendant Xerox is liable and for which this Court should issue equitable and injunctive relief, including restitution, pursuant to Bus. & Prof. Code §17203.

130. Through its conduct, Defendant Xerox has engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendant Xerox's use of such unfair business practices constitute unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

131. Defendant Xerox's conduct as alleged herein is unlawful, unfair, and fraudulent.

132. Defendant Xerox's conduct as alleged herein is "unlawful" in that, among other things, it violates he duties they owe to Plaintiff and the Class Members.

133. Defendant Xerox's conduct as alleged herein is also "unfair" because, among other things, i was designed to deprive Plaintiff and the Class Members of their constitutionally protected rights and their property for less than adequate consideration and to unjustly punish and penalize Plaintiff and the Class.

134. Defendant Xerox's scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead. Defendant Xerox had actual knowledge of the egregious penalties being charged by BATA, GGB and XERXO, the means by which its sought to conceal and apply them, the coercive judgments and liens they were placing on Plaintiff and Class Members' assets, and the illicit and reckless plans they possessed and concealed from Plaintiff and the Class Members to obtain and misuse their personal and private information. Defendant Xerox has continued to take steps to perpetuate these deceitful practices against the Plaintiff and the Class Members and other members of the public at large.

ORIGINAL CLASS ACTION COMPLAINT

30

135. Unless enjoined, Defendant Xerox will continue to harm the Plaintiff, the other Class Members and the general public. Plaintiff and the Class Members have suffered injuries in fact and lost money as a result of Defendants' conduct, as more specifically alleged above.

136. As a result of Defendant Xerox's unfair business practices, it has reaped unfair benefits and illegal profits at the expense of the Plaintiff and the Class Members. Defendant Xerox should be made to disgorge its ill-gotten gains and restore such monies to Plaintiff and the Class Members. Defendant Xerox's unfair business practices furthermore entitle Plaintiff and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendant Xerox cease its complained-of practices and account for, disgorge, and restore to Plaintiff and the Class Members the compensation unlawfully obtained from them.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CIVIL CODE §§1750, *ET SEQ.*
### (Against Xerox, Conduent, and DOES 1-100)

137. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

138. Defendant Xerox is a "person" as defined by Civil Code §1761(c). Plaintiffs and the Class Members are consumers within the meaning of Civil Code §1761(d).

139. The CRA applies to Defendant Xerox's conduct because it extends to transactions that are intended to result in the sale or lease of goods or services to consumers, or do result in such sales or leases. The use of the Toll Bridges constitutes such sale or lease of goods or services.

140. Defendant Xerox had a duty to truthfully disclose how they truly intended to operate Toll Bridges and their related charges and payments, use and disclose personally identifiable information of Plaintiff and the Class Members, and disclose the omitted facts regarding such use and disclosure. Defendant Xerox had exclusive knowledge of material facts not known to Plaintiff and the Class

ORIGINAL CLASS ACTION COMPLAINT

31

Members. Specifically, Defendant Xerox operate Toll Bridges and related charges and payments in a manner that defrauds the Plaintiff and the Class Members, unjustly enriches Defendants, and uses and discloses personally identifiable information of Plaintiff and the Class Members contrary to law and for improper purposes. Defendant Xerox, however, actively concealed material facts and did not provide Plaintiff or the Class Members proper notice of their actual intentions for use and disclosure of Plaintiff or Class Members' personally identifiable information.

141. The facts, which Defendant Xerox misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiff and the Class Members' decisions about whether to use the Toll Bridges (when such use was known) and pay bills rendered by or for Defendant Xerox. Defendant Xerox are liable under the CLRA for these material misrepresentations and omissions.

142. In violation of Civil Code §1770(a)(16), Defendant Xerox represented that the subject of a Toll Bridges transaction was supplied in accordance with a previous representation when it was not. Defendant Xerox have failed to disclose material facts to Plaintiff and the Class Members by billing them for services that were not in fact provided, by billing them at rates higher than were disclosed or allowed by law, and/or through billing errors.

143. Additionally, by their conduct described in this Complaint, Defendant Xerox have violated Civil Code §1770(a)(5), (7), (9), (13), (14), (17), and (19).

144. Defendant Xerox had a duty to disclose the omitted facts because it had exclusive knowledge of material facts not known to Plaintiff and the Class Members (that they were billing for services that they did not in fact provide and/or that they were billing at rates higher than disclosed or permitted by law), because they actively concealed material facts, and because they did not provide Plaintiff and the Class Members proper notice of the Toll Bridges, toll charges, penalties, the processes by which charges and penalties could be assessed and contested, and because they otherwise suppressed true material facts.

145. Under Civil Code §1780, Plaintiff and the Class Members seek appropriate equitable relief, including an order enjoining Defendant Xerox from the unlawful practices described herein, as

ORIGINAL CLASS ACTION COMPLAINT

32

well as recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages, and any other relief the Court deems proper.

146. Additionally, any of the Plaintiff or Class Members that are senior citizens or disabled persons, as defined in Civil Code §§1780(b)(1) and 1781(f) and (g), may seek and be awarded up to an additional $5,000 for physical, emotional, or economic damage.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACTS

### (Against All Defendants, and DOES 1-100)

147. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

148. The Fastrak license agreement between Kelly and those subscribers similarly situated, provides that "Personally identifiable information provided by you and any data developed as a byproduct of your use of the electronic toll collection program will not be made available to third parties except as described in our Privacy Policy." Kelly entered into the Fastrak agreement with Defendants to drive on the Toll Bridges.

149. Defendants have breached the Fastrak agreement by making PII of Kelly and those similarly situated to the Unauthorized Identified Parties, and the Unauthorized Unidentified Parties, all of whom were not identified in the privacy policy as being recipients of PII.

150. Plaintiffs are entitled to damages in an amount according to proof, injunctive relief, and all other remedies based on Defendants having provided PII to third parties that were not identified in the Privacy Policy.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each Class Member, pray for judgment against Defendants as follows:

ORIGINAL CLASS ACTION COMPLAINT

33

A.      That this action and the proposed class be certified and maintained as a class action, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

B.      For actual damages, restitution, and all other appropriate legal and equitable relief;

C.      For declaratory relief;

D.      For pre-judgment and post-judgment interest;

E.      For civil penalties, as requested herein;

F.      For punitive and exemplary damages, as requested herein;

G.      For attorneys' fees and costs pursuant, *inter alia*, to 42 U.S.C. §1988, Code of Civil Procedure §1021.5, Civil Code §§1788.17 and 1788.30(c), Streets and Highways Code §31490, and 15 U.S.C. §1681n(a);

H.      For appropriate injunctive relief;

I.      For statutory damages in the amount of no less than $2,500 or $4,000 (as applicable) per provision of each of Plaintiffs' and Class Members' PII to each of the Unauthorized Parties, for privacy policy violations as to the Class, and more as allowed, pursuant to California Streets and Highways Code §31490; and

J.      For such other and further relief as this Court may deem just and proper.

[Balance of Page Left Blank – Signature Page To Follow]

ORIGINAL CLASS ACTION COMPLAINT

34

Dated:   November 21, 2017

Respectfully submitted,

**LINDEMANN LAW FIRM, APC**

By: _____

BLAKE J. LINDEMANN (SBN 255747)
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile:  (310) 300-0267
E-mail:     blake@lawbl.com

-and-

DAREN M. SCHLECTER, SBN 259537
LAW OFFICE OF DAREN M. SCHLECTER,
APC
1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone: (310)-553-5747

Attorneys For Plaintiffs
SUMATRA KENDRICK, MICHELLE KELLY
AND ALL THOSE SIMILARLY SITUATED

ORIGINAL CLASS ACTION COMPLAINT

35

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members hereby demand a trial by jury on all causes of action so triable.

Dated:   November 21, 2017

Respectfully submitted,

**LINDEMANN LAW FIRM, APC**

By:

BLAKE J. LINDEMANN (SBN 255747)
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile:  (310) 300-0267
E-mail:      blake@lawbl.com

-and-

DAREN M. SCHLECTER, SBN 259537
LAW OFFICE OF DAREN M. SCHLECTER, APC
1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone: (310)-553-5747

Attorneys For Plaintiffs
SUMATRA KENDRICK, MICHELLE KELLY
AND ALL THOSE SIMILARLY SITUATED

ORIGINAL CLASS ACTION COMPLAINT

36

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Lindemann Law Firm, APC
Blake J. Lindemann (SBN 255747)
433 N. Camden Dr., 4th Fl.
Beverly Hills, CA 90210

TELEPHONE NO.: 310-279-5269          FAX NO.: 310-300-0267
blake@lawbl.com
ATTORNEY FOR *(Name):*

ENDORSED
FILED
Superior Court of California
County of San Francisco

NOV 2 1 2017

CLERK OF THE COURT
BY: ROSSALY DELAVEGA
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Unlimites Jurisdiction

CASE NAME:
Kendrick v. Bay Area Toll Authority, Golden Gate Bridge, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC-17-562613 |
| | | JUDGE:  DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

   **Auto Tort**
   [ ] Auto (22)
   [ ] Uninsured motorist (46)

   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   [ ] Asbestos (04)
   [ ] Product liability (24)
   [ ] Medical malpractice (45)
   [ ] Other PI/PD/WD (23)

   **Non-PI/PD/WD (Other) Tort**
   [ ] Business tort/unfair business practice (07)
   [ ] Civil rights (08)
   [ ] Defamation (13)
   [ ] Fraud (16)
   [ ] Intellectual property (19)
   [ ] Professional negligence (25)
   [ ] Other non-PI/PD/WD tort (35)

   **Employment**
   [ ] Wrongful termination (36)
   [ ] Other employment (15)

   **Contract**
   [✓] Breach of contract/warranty (06)
   [ ] Rule 3.740 collections (09)
   [ ] Other collections (09)
   [ ] Insurance coverage (18)
   [ ] Other contract (37)

   **Real Property**
   [ ] Eminent domain/Inverse condemnation (14)
   [ ] Wrongful eviction (33)
   [ ] Other real property (26)

   **Unlawful Detainer**
   [ ] Commercial (31)
   [ ] Residential (32)
   [ ] Drugs (38)

   **Judicial Review**
   [ ] Asset forfeiture (05)
   [ ] Petition re: arbitration award (11)
   [ ] Writ of mandate (02)
   [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   [ ] Antitrust/Trade regulation (03)
   [ ] Construction defect (10)
   [ ] Mass tort (40)
   [ ] Securities litigation (28)
   [ ] Environmental/Toxic tort (30)
   [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

   **Enforcement of Judgment**
   [ ] Enforcement of judgment (20)

   **Miscellaneous Civil Complaint**
   [ ] RICO (27)
   [ ] Other complaint *(not specified above)* (42)

   **Miscellaneous Civil Petition**
   [ ] Partnership and corporate governance (21)
   [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* 5
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11/20/17
Blake J. Lindemann
_____          ► _____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

FILED BY FAX

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: Kendrick v. Bay Area Toll Authority, Golden Gate Bridge, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court. |
|---|

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? X YES    CLASS ACTION? ✓ YES   LIMITED CASE?  YES   TIME ESTIMATED FOR TRIAL  5 _____   HOURS/✓ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.3.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office
11. Mandatory Filing Location (Hub Case)

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Auto Tort** Auto (22) | ☐  A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐  A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** Asbestos (04) | ☐  A6070  Asbestos Property Damage | 2. |
|  | ☐  A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐  A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐  A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
|  | ☐  A7240  Other Professional Health Care Malpractice | 1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐  A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
|  | ☐  A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
|  | ☐  A7270  Intentional Infliction of Emotional Distress | 1., 3. |
|  | ☐  A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 1 of 4

| SHORT TITLE: Kendrick v. Bay Area Toll Authority, Golden Gate Bridge, et al. | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | | |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☑ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6, 11 |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5, 11 |
| | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Kendrick v. Bay Area Toll Authority, Golden Gate Bridge, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: Kendrick v. Bay Area Toll Authority, Golden Gate Bridge, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1**, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. <br><br> ☑ 1. ☑ 2. ☐ 3. ☐ 4. ☑ 5. ☐ 6. ☐ 7.  ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: <br> P.O. Box 9000 <br> Presidio Station <br> San Francisco, CA 94129 |
|---|---|

| CITY: San Francisco | STATE: CA | ZIP CODE: 94129 | |
|---|---|---|---|

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the _____ courthouse in the _____District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.3, subd.(a).

Dated: 11/20/17 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/15).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

CASE NUMBER: CGC-17-562613  SUMATRA KENDRICK VS. BAY AREA TOLL AUTHORITY A (

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | | |
|---|---|---|
| **DATE:** | **APR-25-2018** | |
| **TIME:** | **10:30AM** | |
| **PLACE:** | **Department 610** | |
| | **400 McAllister Street** | |
| | **San Francisco, CA  94102-3680** | |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order  **without an appearance**  at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.



**Superior Court of California, County of San Francisco**
# Alternative Dispute Resolution
# Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
415-551-3876

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management.

Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

**Cost:** There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF COMPLETED STIPULATIONS TO BASF.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and address)* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR *(Name)*: | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO <br> 400 McAllister Street <br> San Francisco, CA 94102-4514 | |
|---|---|
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: <br><br> DEPARTMENT 610 |
|---|---|

**1)**  **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐   **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐   **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐   **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐   **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐   **Other ADR process (describe)** _____

**2)**  **The parties agree that the ADR Process shall be completed by (date):** _____

**3)**  **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

| | |
|---|---|
| _____ <br> Name of Party Stipulating | _____ <br> Name of Party Stipulating |
| _____ <br> Name of Party or Attorney Executing Stipulation | _____ <br> Name of Party or Attorney Executing Stipulation |
| _____ <br> Signature of Party or Attorney | _____ <br> Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐ *Additional signature(s) attached*

ADR-2  04/14                **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |

TELEPHONE NO.:              FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE**    ☐ **LIMITED CASE** (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE is scheduled as follows:**

Date:          Time:          Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
      (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.   b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

        ☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
     The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
     a.   ☐   The trial has been set for *(date):*
     b.   ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

     c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
     The party or parties estimate that the trial will take *(check one):*
     a.   ☐   days *(specify number):*
     b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
     The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
     a.   Attorney:
     b.   Firm:
     c.   Address:
     d.   Telephone number:
     e.   Fax number:
     f.   E-mail address:
     g.   Party represented:
     ☐   Additional representation is described in Attachment 8.

9.   **Preference**
     ☐   This case is entitled to preference *(specify code section):*

10.   **Alternative Dispute Resolution (ADR)**
     a.   Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
     b.   ☐   All parties have agreed to a form of ADR. ADR will be completed by *(date):*
     c.   ☐   The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply)*:
- (1) ☐ Mediation
- (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
- (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
- (4) ☐ Binding judicial arbitration
- (5) ☐ Binding private arbitration
- (6) ☐ Neutral case evaluation
- (7) ☐ Other *(specify):*

e.   ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f.   ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g.   ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**
a.   ☐ Insurance carrier, if any, for party filing this statement *(name):*

b.   Reservation of rights:   ☐ Yes   ☐ No

c.   ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy   ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**
a.   ☐ There are companion, underlying, or related cases.
   (1) Name of case:
   (2) Name of court:
   (3) Case number:
   (4) Status:
   ☐ Additional cases are described in Attachment 14a.

b.   ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

**15. Bifurcation**
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

18. **Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

19. **Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

20. **Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

21. Total number of pages attached *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____     ▶ _____
(TYPE OR PRINT NAME)                     (SIGNATURE OF PARTY OR ATTORNEY)

_____     ▶ _____
(TYPE OR PRINT NAME)                     (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**CASE MANAGEMENT STATEMENT**

## Experienced mediators are available in the following areas

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Family-Certified Specialists
Fee Disputes
Financial
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
LGBT Issues
Malpractice: Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## TESTIMONIALS

"This was the third attempt to mediate this case, and the BASF mediator was far and away the best mediator. I dare say that we would not have settled today but for his efforts."

*George Yuhas, Esq.*
*Orrick, Herrington & Sutcliffe LLP*

"We had an excellent experience and, after 8 1/2 hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."

*Robert Charles Friese, Esq.*
*Shartsis Friese LLP*

"When the other side made their offer, I thought there was no way we would reach an agreement – we were too far apart, but the mediator brought us together. He saved me a lot of time and aggravation by facilitating a settlement. Thanks!"

*Leslie Caplan*
*Global Warming Campaign Manager*
*Bluewater Network*

"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"

*Mark Abelson, Esq.*
*Campagnoli, Abelson & Campagnoli*

"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."

*Denise A. Leadbetter, Esq.*
*Zacks, Utrecht & Leadbetter*



Voted one of the top ADR Providers in The Recorder's Best of the Bay Area

# MEDIATION SERVICES



PROCEDURES, PODCASTS, FORMS, MEDIATOR BIOGRAPHIES AND PHOTOGRAPHS:
**www.sfbar.org/mediation**

adr@sfbar.org or
415-982-1600



THE BAR ASSOCIATION OF
**SAN FRANCISCO**

**QUALITY                    EXPERIENCE                    TRUST**

### WHAT IS BASF'S MEDIATION SERVICE?

The Bar Association of San Francisco's Mediation Services is a private mediation service which will assist you with almost any type of dispute, from simple contract disputes to complex commercial matters.

### WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our extensive experience requirements. By going through BASF you receive the services of these highly qualified mediators at a great value.

### HOW DO I LEARN MORE ABOUT THE MEDIATORS?

BASF's website at www.sfbar.org/mediation provides bios, photos and hourly rates of mediators. You can search by name or by area of law needed for your case. BASF staff is always available to assist you with selection or to answer questions.

### HOW MUCH DOES THE SERVICE COST?

A $295 per party administrative fee is paid to BASF at the time the Consent to Mediate form is filed. This fee covers the first hour of mediator preparation time and the first two hours of session time. Time beyond that is paid at the mediator's normal hourly rate.

### HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF staff to assist with the selection.

### WHY SHOULD I GO THROUGH BASF? CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

BASF mediators have agreed to provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the free hours unless you notify us. Once you have filed with us, you will talk directly to the mediator to ask questions and to set a convenient mediation date and time.

### HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. BASF mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

### WHO CAN USE THE SERVICE?

BASF mediation can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during a court action.

### OUR CASE IS FILED IN COURT, HOW DO WE USE BASF'S MEDIATION SERVICES?

When you file the San Francisco Superior Court's Stipulation to ADR form, check the box indicating "Mediation Services of BASF." Then complete BASF's Consent to Mediate form found on our website and file it with us. (If the matter was filed in a different county, please check with that court for the appropriate process.)

### WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed all the paperwork, BASF can normally have you in touch with the mediator within a day or two. If there is a deadline, BASF staff will give the matter top priority.

### WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in 30+ areas of law. If you don't see the area you need on our website or in this brochure, contact us; it is very likely we can match your need with one of our panelists.

### MORE INFORMATION

Visit our website (www.sfbar.org/mediation) where you can search by name or by area of law. For personal assistance, please call 415-982-1600.

**WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600**





## What is ESP?

The Bar Association of San Francisco's **Early Settlement Program** (ESP) is available as one of San Francisco Superior Court's Alternative Dispute Resolution (ADR) programs (Local Rule 4.3).

ESP is a **highly successful** ADR program that handles cases in areas of law such as business, personal injury, employment, labor, civil rights, discrimination, insurance, malpractice, landlord/tenant, and many others.

ESP is **unique** in that the panelists, in helping you move toward settlement, can provide you confidential feedback about their evaluation of your case, including opinions as to potential case value.

For more information as well as the complete Policies & Procedures, go to: **www.sfbar.org/esp**



## Who are the Panelists?

## Costs

## Contact

## Steps:

The forms you need can be found at **www.sfbar.org/esp**, or email adr@sfbar.org or call 415-782-8905 for a packet to be sent to you.

❶ Please complete the ESP Agreement and return it to BASF via email at adr@sfbar.org or by fax to 415-989-0381. You don't have to get the other parties to sign, just send yours.

❷ When all parties have signed the ESP Agreement, you will be sent the Notice of ESP, along with an invoice.

❸ There is a $295 administrative fee per party, with a cap of $590 for multiple parties represented by the same attorney. You can pay by check, money order or credit card.

❹ Send your administrative fee by fax, email or mail to: BASF / ESP, 301 Battery Street, Third Floor, San Francisco, California 94111.

❺ When BASF receives the fees from all parties, your matter will be assigned to a panelist (or panel of 2), who you will work with to set the date, time and location for your conference.

❻ If you must reschedule your ESP conference date, work with the other side and your panelist(s) to set the new date. BASF does not need to be notified.

❼ Before your conference, provide a copy of your description of the dispute to all parties and panelists. BASF does not need a copy.

❽ If the matter is settled in your ESP conference, congratulations!

❾ If the matter is not settled in your ESP conference, your initial court date remains the same.

# EXHIBIT "B"

1  LAFAYETTE & KUMAGAI LLP
   GARY T. LAFAYETTE (State Bar No. 088666)
2  REBECCA K. KIMURA (SBN 220240)
   1300 Clay Street, Suite 810
3  Oakland, California 94612
   Telephone:    (415) 357-4600
4  Facsimile:    (415) 357-4605

5  Attorneys for Defendant
   UENT STATE & LOCAL SOLUTIONS, INC. f/k/a
6  XEROX STATE & LOCAL SOLUTIONS, INC.

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11 SUMATRA KENDRICK, an individual;          Case No.
   MICHELLE KELLY, an individual; and on
12 behalf of herself and those similarly situated,   **DECLARATION OF KERWIN STOKES**

13        Plaintiffs,
                                                 Action Filed:  November 21, 2017
14        v.

15 BAY AREA TOLL AUTHORITY; GOLDEN
   GATE BRIDGE, HIGHWAY AND
16 TRANSPORTATION DISTRICT; XEROX
   STATE & LOCAL SOLUTIONS, INC.;
17 CONDUENT STATE & LOCAL
   SOLUTIONS, INC.; and DOES 1 - 100,
18
         Defendants.
19

20

21

22 I, Kerwin Stokes, declare:

23        1.      I am the Regional Vice President, Western Region, for Bay Area FasTrak® for

24 Conduent State & Local Solutions, Inc. ("Conduent"), formerly known as Xerox State & Local

25 Solutions, Inc.  I have been in this position since March, 2015.  I make this declaration of my own

26 personal knowledge.  If called as a witness to testify regarding matters stated in this declaration, I

27 could and would competently testify thereto under oath.

28        2.      Xerox State & Local Solutions, Inc. was a subsidiary of Xerox Business Services,

LAFAYETTE & KUMAGAI LLP
ATTORNEYS AT LAW
1300 CLAY STREET, SUITE 810
OAKLAND, CALIFORNIA 94612
(415) 357-4600

                                                                          1

LLC, which, in turn, was a subsidiary of Xerox Corporation.  On January 1, 2017, Xerox Corporation split into two, independent companies, Xerox Corporation and Conduent, Inc.  Xerox State & Local Solutions, Inc. then changed its name to Conduent State & Local Solutions, Inc.

3.     Xerox State & Local Solutions, Inc. was a New York corporation.  Conduent State & Local Solutions, Inc. remains a New York corporation.

4.     Conduent State & Local Solutions, Inc. maintains its principal place of business in Dallas, Texas, the same as it did when it was known as Xerox State & Local Solutions, Inc.

5.     Conduent State & Local Solutions, Inc. provides diversified business process services to companies and governments with leading capabilities in digital processing, automation, and analytics to help clients deliver quality services.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on January 10, 2018, at San Francisco, California.

*J. Kerwin Stokes*

KERWIN STOKES

# EXHIBIT "C"

1   **LINDEMANN LAW FIRM, APC**
    BLAKE J. LINDEMANN, SBN 255747
2   PO SATIA WAGHALTER, SBN 236612
    433 N. Camden Drive, 4th Floor
3   Beverly Hills, CA 90210
    Telephone: (310) 279-5269
4   Facsimile:  (310) 300-0267
    E-Mail:     blake@lawbl.com
5

6   [Additional Attorney Information On Signature Page]

7   Attorneys For Plaintiff
    MICHELLE KELLY AND THE INTERIM CLASS
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13

14  MICHELLE KELLY, an individual, on behalf        Case No.    3:16-cv-06837-RS
    of herself and those similarly situated,
15
                                                    **PLAINTIFF MICHELLE KELLY'S FIRST**
16              Plaintiffs,                          **AMENDED CLASS ACTION COMPLAINT**

17                                                   **CLASS ACTION**
18          v.

19
    BAY AREA TOLL AUTHORITY; GOLDEN
20  GATE BRIDGE, HIGHWAY AND                         DEMAND FOR JURY TRIAL
    TRANSPORTATION DISTRICT; XEROX
21  STATE AND LOCAL SOLUTIONS, INC., and
    DOES 1-100,
22
23              Defendants.

24

25

26

27

28

CASE NO. 16-cv-06837-RS
FIRST AMENDED CLASS ACTION COMPLAINT                                                      1

Plaintiff Michelle Kelly ("Plaintiff" of "Kelly"), on behalf of herself and all others similarly situated, submits her first amended complaint against the above-captioned defendants (the "Complaint") as follows:

## NATURE OF THE CASE

1.      This class action seeks redress for defendants' violation of Plaintiff and class members' right to privacy and protection of personally identifiable information ("PII") including under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.; California Streets and Highways Code § 31490; and Article I, Section 1 of the California Constitution.   The defendants transmitted the Class' PII to in direct violation of § 31490 to the Department of Motor Vehicles, the Franchise Tax Board, law enforcement agencies, and a host of other unauthorized third persons that entitles Plaintiff to damages and injunctive relief.

2.      This action also seeks damages and declaratory and injunctive relief for violations by the defendants of the Excessive Fines and Due Process Clauses of the United States Constitution and the analogous provisions of the California Constitution arising from the defendants' assessment, enforcement and collection of tolls and disproportionately excessive civil penalties for alleged toll road payment violations by a class of persons that commuted (or were alleged to have commuted) on the Toll Bridges (as hereinafter defined) from July of 2012 to the present date.

## THE PARTIES

3.      Plaintiff Michelle Kelly is an individual residing in the State of California. While driving through the Golden Gate toll bridge and the Carquinez toll bridge that the Defendants operate, Michelle Kelly was assessed 155 toll violations by the defendants from October of 2015 to June of 2016, totaling approximately $9,000 in penalties and $845.00 in tolls.  Plaintiff Kelly did not receive notice of toll violations in time to contest the toll and avoid penalties.  The penalties that Defendants assessed against Kelly constitute a multiple of over 10x of the tolls assessed by the Defendants.  From October of 2015 to June of 2016, Kelly's PII – her license plate image -  was photographed by the Defendants and provided approximately twice per month by the Defendants to the DMV, rental car agencies, and other third party entities, including without limitation, the Franchise Tax Board as alleged later in this Complaint.  When Kelly did not pay the tolls because

she was financially unable to, the Defendants filed a separate request with the DMV to place a hold on Kelly's registration.

4.      Defendant, the Bay Area Toll Authority ("BATA"), is a government agency responsible for operating and managing toll collection on the Golden Gate Bridge (including the Fastrak Program), sending invoices, and assessing and processing toll evasion violations and penalties.  BATA is an "issuing agent" within the meaning of California Vehicle Code §§ 40250, *et seq*.  BATA, at all times alleged herein, conducted its principal business within the State of California, located in the City and County of San Francisco.

5.      Defendant the Golden Gate Bridge, Highway and Transportation District (the "District" or "GGB") is also a government agency responsible for operating and managing toll collection on the GCB (including the Fastrak Program), sending invoices, and assessing and processing toll evasion violation and penalties.  The District was and is at all times herein, conducted business in California, with its located headquarters in the City and County of San Francisco.  The District is an "issuing agency" within the meaning of California Vehicle Code §§ 40250, et seq.

6.      Defendant Xerox State and Local Solutions, Inc. ("Xerox") formerly ACS State and Local Solutions, Inc. is a private corporation headquartered in New York, and authorized to conduct business in California.  On April 2, 2012, ACS State and Local Solutions, Inc. filed a certificate of amendment to its Articles of Incorporation, changing its name to Xerox State & Local Solutions, Inc. Since 2002, Xerox had operated and maintained the Fastrak Program.  In January of 2013, BATA and the District contracted with Xerox pursuant to Government Code section 40252 to administer the Fast Trak program through June 30, 2019.  Xerox provides and administers the Fastrak and Pay-By-Plate programs and manages the assessment, notification, and collection of fines and penalties pertaining to toll invoices and toll evasion violations on the GCB.  Accordingly, pursuant to Government Code Section 40253, Xerox is a "processing agency" within the meaning California Vehicle Code 40250 et. seq. Xerox has accordingly been delegated a public function by BATA and the District.  Xerox is also thereby entwined with BATA and the District's government policies, and BATA and the District are entwined in the management and control of Xerox.  Finally, Xerox is a knowing and willful participant in a joint action, along with the BATA and the District, in the

1   various acts and omissions set forth in this injury, which caused injury to Plaintiff and the Class

2   Members.

3       7.      Plaintiff is ignorant of the true identities and capacities of fictitiously named

4   defendants designated as Does 1-100, but will amend this complaint or any subsequent pleading

5   when their identities and capacities have been ascertained according to proof.  On information and

6   belief, each and every Doe defendant is in some manner responsible for the acts and conduct of the

7   other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm

8   incurred by Plaintiff.  Each reference in this complaint to "defendant," "defendants," or a

9   specifically named defendant, refers also to all of the named defendants and those unknown parties

10  sued under fictitious names.

11      8.      Plaintiff is informed and believes and thereon alleges, that at all times relevant hereto,

12  all of the defendants together were members of a single unincorporated association, with each

13  member exercising control over the operations of the association.  Plaintiff is informed and believes

14  and thereon alleges that, at all times relevant hereto, each of the defendants was the agent, associate,

15  employee and or representative of each of the remaining defendants, and in doing the things

16  hereinafter alleged, was acting within the authorized course and scope of this agency, association

17  and employment with the full knowledge and consent of the remaining defendants.  Plaintiff is

18  further informed and believes and thereon alleges that each and all of the acts herein alleged as to

19  each defendant was authorized and directed by the remaining defendants, who ratified, adopted,

20  condoned and approved said acts with full knowledge of the consequences thereof, and

21  memorialized the authority of the agent in a writing subscribed by the principal.

22      9.      Plaintiff is informed and believes and thereon alleges, that each of the defendants

23  herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described

24  in this complaint.  The desired effect of the conspiracy was to defraud and otherwise deprive

25  Plaintiff of her constitutionally protected rights to property, and of her rights under other laws as set

26  forth herein.  Each of the defendants herein committed an act in furtherance of the agreement.  Injury

27  was caused to the Plaintiff by the defendants as a consequence.

28                          **JURISDICTION AND VENUE**

CASE NO. 16-cv-06837-RS
FIRST AMENDED CLASS ACTION COMPLAINT                                          4

10.     The Court has personal jurisdiction over Defendants because they are residents and/or doing business in the State of California.

11.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331, 1332(d)(2), 1343, 1441(a) and 1446. Supplemental jurisdiction exists over the state law claims herein under 28 U.S.C. §1367. Venue is proper in the Central District pursuant to 28 U.S.C. §§1391(b)-(c) and 1441(a).

12.     The GGB Toll Plaza, at which Defendants have installed equipment to determine if vehicle owners have a Fastrak transponder or should be issued a toll invoice, is located in San Francisco.  The FasTrak Customer Service office is located in San Francisco.  Vehicle owners who wish to contest their toll invoices, toll evasion violations or associated penalties are instructed to do so at the FastTrak Customer Service office in San Francisco.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendants are subject to personal jurisdiction in this District.

## PRESENTMENT

14.     Plaintiff has complied with all administrative and substantive requirements for filing suit against public entities, including GGB and BATA, under Government Code §§910, et seq. Plaintiff filed a claim with GGB and BATA prior to filing this lawsuit. Plaintiff presented her claims to GGB and BATA more than 45 days prior to filing this First Amended Class Action Complaint

15.     Plaintiff Kelly filed a claim on her behalf, and on behalf of all others similarly situated, with the applicable government Defendants on or about July 18, 2016 by sending them a letter via registered and certified mail, return receipt requested. Defendants denied the claims pursuant to California Government Code §911.6.  On November 10, 2016, Plaintiff filed an amendment to her original claim.  Kelly's presented claim substantially complied with stating a claim and put BATA and GGB on notice of her injuries.

16.     Notwithstanding her presentment of claims out of an abundance of caution, Plaintiff is under no obligation to submit a government claim in reference to any of her requests for injunctive relief.

17.     Notwithstanding her presentment out of an abundance of caution, Plaintiff is under no obligation to submit a government claim in reference to the claims under the United States Constitution against Defendants based on Constitutional privacy violations, excessive penalties, whether the Defendants' process is lacking in due process and other related claims to the foregoing.

18.     Notwithstanding her presentment out of abundance of caution, the accrual period for the claims is one year prior to submission of the government claims because the harms to all Plaintiff at issue represent economic or other injuries that are not physical injuries to their persons.

## **FACTUAL BACKGROUND**
## **BACKGROUND OF THE TOLL BRIDGES**

19.     Toll roads in the United States have been in use for more than 200 years, and payment of the toll historically could not be missed by travelers: you were required to physically stop your vehicle at a very obvious toll plaza and throw your money in a bucket or hand it to an agent.  California was no different.

20.     BATA was created by the California Legislature in 1997 to administer the autotolls on the San Francisco Bay Area's seven state-owned toll bridges – Antioch, Benicia-Martinez, Carquinez, Dumbarton, Richmond-San Rafael, San Francisco – Oakland, and San Mateo - Hawyward (collectively, the "Toll Bridges").  The Toll Bridges were built pursuant to state laws that, due to shortages in funding to build new highways and roads, permitted privately-owned companies, county government agencies, transportation districts, and other entities to sell non-recourse bonds to private investors to raise money to build and maintain Toll Bridges. The Toll Bridges are legally owned by the State of California but are operated and maintained by BATA pursuant to a franchise issued by the state.

21.     The Toll Bridges and their operators relied on Vehicle Code ("Vehicle Code") §§40250, *et. seq.* which made toll violations civil in nature and their collection and administration subject to civil procedures, so that they could be handled by the private and local entities that operate the Toll Bridges. These statutes, however, lack key procedural and substantive constitutional protections and have been subject to widespread abuse by Defendants with regard to their

administration of penalties for toll violations.  The dissemination of PII illegally is meant to avoid the need to actually give commuters due process by obtaining a judgment, and is instead an unfair profit center exacting a windfall through penalties coerced from unsuspecting drivers.

### HOW THE TOLL BRIDGES WORK

22.  California Vehicle Code §23301, is applicable to all vehicle crossings and Toll Bridges in California. Section 23301 provides that "each vehicle that enters into or upon a vehicular crossing immediately becomes liable for those tolls and other charges as may from time to time be prescribed by the California Transportation Commission."

23.  Vehicle Code §40250(b) makes the registered owner of the vehicle involved in the violation jointly and severally liable with the driver of such vehicle.

24.  The tolling agencies in California accept payment for tolls by either offering an electronic toll collection system (e.g., FasTrak) and/or implementing a pay-by-license-plate method of payment, or both.

25.  "FasTrak" is an electronic toll collection system, where people establish a FasTrak account with a tolling agency and then receive a transponder, which they then place on their vehicle. When traveling through the toll zone, the transponder is read by an overhead antenna on the road, and the posted toll amount is then automatically deducted from the customer's account. While people are allowed to use their FasTrak transponders throughout the state, they are encouraged to obtain a transponder from the agency that operates the road, lane, or bridge that they will use the most.

26.  Vehicle Code §23302(e) defines a pay-by-plate payment as "an issuing agency's use of on-road vehicle license plate identification recognition technology to accept payment of tolls in accordance with policies adopted by the issuing agency."

27.  Vehicle Code §23301.8 regulates pay-by-plate programs as follows:

> Where an issuing agency permits pay-by-plate toll payment as described
> in subdivision (e) of Section 23302, it shall communicate, as practicable,
> the pay-by-plate toll amount in the same manner as it communicates other

toll payment methods. The issuing agency shall provide publicly available information on how pay-by-plate toll payment works, including the toll amount, process for payment, and period of time a vehicle has to resolve the payment before an issuing agency may process the trip as a violation under Section 40255. Communication of this information may include the Department of Transportation's approved signage, posting of information on the issuing agency's Internet Web site, media advertising, public meeting or disclosure as required by the issuing agency's policies, or other methods of communication. Except where the issuing agency has an agreement with a vehicle owner that specifies in advance any administrative fees that will be imposed on the owner for pay-by-plate toll payment, administrative costs shall be incorporated into the pay-by-plate toll amount, and no additional administrative costs shall be added above the posted pay-by-plate toll amount.

28.     Vehicle Code §23301.8 requires BATA to communicate to the public both the toll payment and how the pay-by-plate toll payment program works. Additionally, any additional administrative costs must be paid by the BATA and cannot be added to the pay-by-plate toll amount.

29.     The BATA outsourced the Toll Bridges administrative functions to Defendant Xerox (the "Private Defendant" or "Xerox"). Defendant Xerox provided the Toll Bridges with customer service and toll compliance services.

**STATE ACTION**

30.     The BATA and GGB are "state actors" who have gone to great lengths to hold themselves out as such by:

(a)     Not disclosing their identity as private contractors in communications with the public, but instead acting as if they are, and representing themselves as, government agencies through the Toll Bridges website, its office, and all its customer service materials;

(b)     Sending out "Notice of Toll Evasion" violations to Class Members appearing to be from the BATA;

(c)     Threatening to place liens on Class Members' vehicle registrations in the Notice letters;

(d)     Threatening to impose civil judgments and other collection efforts on Class Members if they do not pay the fines set forth in the Notice letters;

(e)     Entering into contracts with Xerox and willingly agreeing to become "processing agenc[ies]" as that term is used and defined in Vehicle Code §§ 40252 and 40253;

(f)     Entering into contracts with Xerox and becoming willing participants in a joint venture with a state actor – i.e., BATA; and

(g)     Processing, reviewing, and collecting toll evasion violation penalties, resulting from their exercise of the coercive power of the State of California.

31.     The BATA and DISTRICT Defendants' willing operation of the toll collections, and their processing of the Notices of Toll Evasion and Notices of Delinquent Toll Evasion along with Xerox, leaves them entwined with governmental policy.

32.     The BATA and DISTRICT Defendants' willing participation in a joint venture with state actors as "processing agenc[ies]" under the Vehicle Code, Xerox is obligated to comply with Vehicle Code §40250, et. seq. and the California Constitution.

33.     The BATA and DISTRICT were entwined with, and directly managed, Xerox's activities that are challenged in this Complaint.

34.     Through these activities, collecting penalties authorized by state statute, and threatening vehicle registration holds by the DMV, the private entities are commanding the power of the state.

**XEROX OPERATES THE TOLL BRIDGES**

35.     From October of 2010 to the present, Defendant Xerox was responsible for providing the following functions to BATA and the DISTRICT and in fact operated the Toll Bridges for BATA and GGB:

(1)     Customer service/call center operation (staff to hand enrollment, respond to calls, complaints, resolve violations, payment processing);

(2)      Account maintenance (update accounts, research new accounts to resolve unpaid violations, suspend accounts, reinstate or revoke accounts, prepare and mail customer notices, investigate accounts);

(3)      Inventory (transponders and supplies related to transponders);

(4)      Mail room;

(5)      Payment processing;

(6)      Reports (aging, FasTrak revenue and activity reports, financial reporting);

(7)      Special projects;

(8)      Toll enforcement processing including actually conducting and/or overseeing any initial internal administrative review proceeding conducted concerning a toll violation by the GGB and BATA, actually conducting any administrative review (the second tier of the three tier review process) image review services, maintenance of electronic data exchange with the DMV, electronically produce file to mail, process violation inquiries, process affidavits of non-liability, place registration holds, resolve customer violation issues, perform judgment recovery services;

(9)      SOP's configuration Control & Documentation (library catalog, training manuals, system software changes tracking, update software source code, test, maintain and schedule software changes as required, test configuration platform, develop and maintains disaster recovery plan, document security audits);

(10)     System support (provide complete system administrative and support service for the operation of the customer service system, violation, imaging, reporting, webs services and other FasTrak related software system – including generating account statements, processing auto debiting, posting all tolls, penalties, and charges and credits, maintain compliance with interoperability transfer, archive account and image data, ensure the daily transfer of violations for the image processing systems and more);

(11)     Program Management (provide overall program management for each item in the contract between the parties). ((a) through (k), are collectively referred to as the "Functions.")

36.     From July of 2012 to the present date, Xerox participated with the District and BATA in determining the amount of the penalties assessed, collected, and charged against Plaintiff and the Class Members.

37.     From July of 2012 to the present date, Xerox actually provided PII of Class Members to Other Unauthorized Parties.

**DEFENDANTS' ADMINISTRATIVE PROCESS IS FATALLY FLAWED AND UNCONSTITUTIONAL AND THUS PLAINTIFF IS NOT REQUIRED TO EXHAUST ANY ADMINISTRATIVE PROCEDURES**

38.     In the first instance, the doctrine of exhaustion does not apply to constitutional claims under 42 U.S.C. §1983, and Plaintiff's Counts I-V need not be exhausted because Plaintiff is seeking redress under §1983.

39.     Exhaustion is also excused as to Plaintiff's Counts I-V because exhaustion would be futile, idle or useless. Plaintiffs' pursuit of the administrative process would be "futile" because nothing in the administrative proceeding would decide whether Defendants should be enjoined from issuing unconstitutional penalties, which they seek in this action, or whether they should be entitled to restitution damages for tolls they may have already paid, or whether penalties were excessive. See, e.g., California Constitution, article III, §3.5.10 132.[1]  Exhaustion is excused based on futility when no findings of fact will be made by the "administrative review" process. The entire review process does not involve a fact-finding mission, and singularly addresses whether somebody traveled on the Toll Bridges. If they did and did not pay, for whatever reason, there is no consideration as to factual questions concerning the penalties.

---

[1] "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; (b) To declare a statute unconstitutional; (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

40.     Exceptional circumstances also excuse exhaustion because alleged violators were precluded them from exhausting this administrative scheme, because they were unaware not only of its existence, but that they were implicated as toll violators, until after they were foreclosed from invoking its provisions.

41.     The administrative scheme itself, conditioned on payment in advance of penalties Plaintiff could not afford, were they to have been aware of them in the first place, is preclusive. It is, thus, not only evincing of Constitutional due process violations, it presents exceptional circumstances to relieve the Plaintiff of any requisite of administrative exhaustion.

42.     The entire administrative scheme set forth in the California Vehicle Code is unconstitutional, as its delegation to BATA and GGB (and to processing agencies) of the appointment of adjudicative persons that constitute inferior officers, and their undertaking of judicial functions, violate the separation of powers doctrines and appointments clauses of article III, section 3, and article VI, section 1, of the California Constitution, and article II, section 2 of the United States Constitution.

43.     Finally, Plaintiff was not required to exhaust the administrative process in the California Vehicle Code because Defendants' administrative procedures are the very source of the asserted injury. Plaintiff challenges the constitutionality of the tolls and penalties as being excessive and assessed by the Defendants in violation of due process on their face, and as applied, pursuant to Counts I-IV of this Complaint. Thus, the Defendants' administrative procedures are the very source of their injury, and Plaintiff cannot attack the excessive penalties, and whether they were given notice they were entering a toll road before a toll was being imposed, which are wrapped into the notices of toll violations.

44.     The administrative process provides an inadequate venue, excusing Plaintiff's requirement to exhaust Defendants' review process before asserting Counts I-IV in this lawsuit. The administrative process does not afford Plaintiff and absent Class Members the fair procedural rights, including rights to be heard.

45.     The review process is inadequate to require Plaintiff to exhaust before asserting Counts I-IV because an alleged violator has only "15 days to initiate an investigation from mailing."

Here, Kelly, and others similarly situated, did not receive the notice of violation before the 15 days had expired for them to request an investigation. But even if the 15 days had not expired Kelly could not invoke the second tier, because she did not have funds to invoke the second-tier review, and in the alternative, requiring her to do so is unconstitutional.

46.     GGB and BATA's remedy is also "inadequate" as to Kelly because the second tier contradictorily promises a hearing, but then indicates that the review may be conducted by "mail." Moreover, the review process is inadequate, because a "commissioner" may preside over the matter at the third tier and may only evaluate the rulings under the California Vehicle Code de novo, and without consideration as to whether any "factual" findings are clearly erroneous. Also the review process is inadequate because it is not conducted with "fairness and impartiality" as required by the California Vehicle Code. Instead, in practice, no investigation takes place and the processing agency serves as prosecutor, arbiter, and executioner. The processing agency for the GGB/BATA (Xerox) also fails to hire a person who is not compensated based on penalties to conduct the second tier of the review.

47.     The remedies Plaintiff seeks pursuant to Counts I-V are unavailable in the administrative process, excusing Plaintiff's requirement to exhaust the Defendants' review process before asserting Counts I-V in this lawsuit. Plaintiff can only challenge whether there was a system error, and not the constitutionality of the actual amount of the penalties incurred under the "review" system. This is signified in many ways from the required contours of the investigation (tier one), the minimal documents to create a "prima facie" case (tier two), and that review can only be conducted de novo (tier three) and not based on "questions of fact" considering whether the extent by which the penalties are assessed is disproportionate to the toll assessed. The remedy is also unavailable because the administrative proceedings do not permit the Plaintiffs to challenge that they did not get adequate notice of the cashless, man-less system when the toll road were rolled out.

48.     Counts V through X were not required to be exhausted by administrative proceedings because these causes involve wrongful transmission of PII, and not the assessment of a toll under the California Vehicle Code or the OCTA Ordinance.

**CIVIL PENALTIES ARE ASSESSED WITHOUT FAIR HEARINGS**

49.     Under the guise of Vehicle Code §40250, BATA and the DISTRICT also assess millions of dollars in civil penalties against commuters that are excessive, without proper notice and without a fair hearing.

50.     Under Vehicle Code §§40250, et seq., BATA and the DISTRICT may assess civil penalties for "toll evasion" violations for a variety of reasons, including inadvertent mistakes, such as if the commuter's card has expired, if the credit card was declined, or the transponder was not properly placed on the windshield.

51.     Under Vehicle Code §40254(e), "[t]he processing agent shall use its best efforts to obtain accurate information concerning the identity and address of the registered owner for the purpose of forwarding a notice of toll evasion violation pursuant to subdivision (a)." Despite the clear intent of the Legislature to use all means necessary to provide notice to commuters, the DISTRICT and the BATA fail and/or refuse to send any notices by e-mail or telephone after months of no contact with the commuter.  Meanwhile, the commuter racks up thousands of dollars in civil penalties and unwittingly waives due process rights by failing to timely submit an affidavit to contest the violations. Plaintiff is informed and believe the failure of DISTRICT and BATA to use "best efforts" is, and has been, a willful and deliberate scheme to generate greater penalty assessments and judgments against commuters.

52.     Under Vehicle Code §40254, the DISTRICT has between 21 to 90 days to serve notices of the toll violations.  However, within this time, many commuters have already passed through the Toll Bridges and incurred enormous civil penalties without any notice of the toll violations. For example, even if notice is sent within one week after the violation, the commuter could potentially be assessed several thousands of dollars in one week.  This 21 to 90 day notice window encourages BATA to delay sending notices in a conscious effort to increase penalties and generate a financial return.

53.     The notices are also deliberately vague and ambiguous as to what law the commuter violated, further denying due process.

THE ASSESSMENT OF TOLLS AND PENALTIES AGAINST

CLASS MEMBERS LACKS DUE PROCESS AND

PROVIDES NO NOTICE OF INFRACTION

54.     The Toll Bridges' system of toll collection and enforcement lacks key procedural and substantive constitutional protections and violates consumer protection laws.

55.     The abuse of BATA and GGB has been well chronicled in the news.  John Goodwin of BATA has claimed he is only interested in tolls, but this belies his dogged attempt at collecting hundreds of millions, if not billions in penalties.  http://www.ktvu.com/news/4612222-story (2 INVESTIGATES; difficult to clear name after Fastrak errors).

56.     The Toll Bridges lack key procedural and substantive constitutional protections, and violate consumer protection laws.

57.     Goodwin states in that same video: "in order to keep costs down, we rely so much on automated systems.  Some times things like this will happen."

58.     If Class Members cannot pay the outrageous tolls, BATA and GGB propose that Class Members file bankruptcy proceedings.

59.     BATA and GGB have even been fined by the Transit Authorities $330,000 for bad customers service, which just scratched the surface of what "7 On Your Side", uncovered. http://abc7news.com/technology/7-on-your-side-fastrak-customers-unfairly-hit-with-penalties/515536/ (February 12, 2015).  As stated in the story "the fact that a private corporation, Xerox, can put a hold on the DMV –my registration – seems wrong."  (Id.)

60.      "We have seen a spike since we went to all-electronic tolling," said Andrew Fremier of the Bay Area Toll Authority. He acknowledges violations shot up after the Golden Gate Bridge eliminated toll takers in 2013. A 7 On Your Side investigation revealed a staggering increase.  In 2014, nearly a quarter million drivers had to pay penalties for toll evasion on the bridge. That's five times more violations than in 2012 when drivers could still pay a toll taker. http://abc7news.com/technology/7-on-your-side-fastrak-customers-unfairly-hit-with-penalties/515536/

61.    Fastrak has a deplorable 1.5 star ranking on YELP https://www.yelp.com/biz/fastrak-san-francisco-2, and 100% negative reviews on ripoffreport.com and the Better Business Bureau.

62.    Yelp features hundreds of negative review from normal consumers outraged by the manner the Toll Bridges are operated.  Specifically, many persons receive "notices of toll violations" even though the license plate image captured by the photographic equipment does not even match the number on file with the toll authorities.

63.    The signage warning Class Members (as hereinafter defined) that they are travelling on the Toll Bridges is wholly inadequate and inconspicuous. Signage locations and language on the Toll Bridges do not provide adequate advance notice to Class Members of the Toll Bridges, nor any notice whatsoever of the amount of tolls to be assessed to Class Members for entering the Toll Bridges.  This is particularly deceptive to those traveling afar through SFO.

64.    Once a Class Member enters the Toll Bridge, even inadvertently, a toll is electronically assessed, and there is no reasonable means by which a Class Member can mitigate or avoid the toll, exit the Toll Road, or contest the assessment.  Specifically, the District and BATA prey on unsuspecting travelers who traverse the Golden Gate Bridge in their rental cars from SFO.

65.    Further, when passing through the unmanned cashless areas, there is no indication by Defendants (or their agents) that a toll and/or penalty has been assessed against the Class Member, or that there has been an infraction.

66.    California Vehicle Code sections 40250 et seq. must be judicially invalidated and the defendants must pay for having knowingly deprived consumers of their fundamental rights for an extended period of time.

67.    Absent the relief sought hereby, defendants will continue to harm and discriminate against consumers, without compunction, through the guise of improperly assessed tolls and excessive fines.

68.    These utterly disputed purported notices and violations, and attendant charges, serve as a basis for Plaintiff's claims against the defendants described herein, evidencing the assessment of penalties aggregating a multiple of almost 17x of the tolls incurred!  At all times alleged in this complaint, upon information and belief, it is believed that the defendants assessed tolls against other

Class Members, in certain circumstances exceeding 50x, and other times far in excess of 10x, as they did with Plaintiff.

69.     In fact, Plaintiff is informed and believes, and on that basis alleges, that, as a pattern and practice, defendants intentionally time the transmission of notices of purported violations and penalties to Plaintiff's and the Class Members until after a time Class Members can avail themselves of any meaningful administrative review.

70.     At all times relevant hereto, the initial penalty assessed for payment of a $2.00 toll assessed on the Toll Bridges more than forty-eight (48) hours after purportedly incurred was $57.50, and penalties increase therefrom.  For example, for one alleged toll alone, in the amount of $2.00, Plaintiff was charged penalties of $100.00.  Moreover, these charges were made subject to a vehicle registration lien against Plaintiff's automobile, even though no allegation or averment was made, much less evidence proffered, that she was in fact the driver on the Toll Bridges for which the purported toll was assessed.

71.     At all times relevant hereto, the defendants, with respect to the Toll Bridges, applied the "FasTrak" system of electronic toll collection.

72.     For commuters to use the FasTrak, they have to establish an account with the DISTRICT or the BATA, either by providing a credit or debit card for automatic charges, or by setting up a pre-paid account.  Commuters must also mount a pocket-sized, agency-issued, battery-operated transponder on their windshields.  The transponder identifies the customer's account.  Pursuant to an agreement between the DISTRICT and the BATA, a commuter who signs up with the DISTRICT for the 91 Express Lanes can use the same transponder for the BATA tolls and vice versa.

73.     Pursuant to Vehicle Code section 40258, civil penalty assessments on the tolls are limited to $100 for the first offense, $250 for the second offense within the same year, and $500 for each subsequent offense within the same year.

74.     Defendants' unmanned cashless systems are designed to eliminate their costs of manning Toll Bridges and shift the burden and penalty to the unwitting Class Members. Moreover,

Defendants' systems are designed to reap an unjust windfall to Defendants and their private investors through collection of massive penalties.

## THE AUTOMATED ENFORCEMENT SYSTEM
## LEADS TO ADDITIONAL PENALTIES

75.     Even though many Class Members are unaware that they may have incurred a toll, they are tasked under the law to proactively contact Defendants, to make payment.

76.     Phone calls to Defendants to inquire in good faith as to alleged toll violations frequently go unanswered and unreturned.

77.     If a Class Member does not know of the alleged violation and cannot locate the BATA website in five days from the alleged violation, and pay the toll in full, Defendants: (a) assess excessive penalties disproportionate to the amount of the original toll; (b) obtain ex parte judgments against the commuter for the total toll plus unconscionable and/or excessive penalties; and/or (c) place liens on vehicle registration renewals with the DMV if those excessive penalties are not paid within 30 days.

78.     The mass confusion and outrage caused by the defendants and the laws they had a hand in, are virtually unprecedented, and have been chronicled publicly.  Defendants and the unconstitutional laws complained of herein deprive not just ordinary citizens, but attempt to target the elderly, indigent and those lacking an advanced education (particularly in computer literacy), of their most fundamental rights to due process and protections against excessive fines.

79.     Plaintiff specifically was cited for tolls and penalties she was not even aware of until it was too late to administratively contest them.  In fact, by the time Plaintiff discovered that her vehicle had been driven on defendants' Toll Bridges in the first place, and that tolls were being assessed against her, the tolls, together with draconian penalties thereon she could not afford to pay, had been levied against her as a de facto judgment.

80.     Defendants' operation of the Toll Bridges has become an unconscionable profit center, unfairly rewarding them and their private investors at an oppressive cost to consumers, generating, directly and indirectly, billions of dollars in returns.  Defendants' executive staff realize

substantial salaries and other benefits while consumers' vehicle registrations can be put on hold – or

worse – over as little as a $2.00 toll fee.

## CLASS ACTION ALLEGATIONS

81.     Plaintiff bring this action on behalf of themselves and all others similarly situated,

pursuant to Federal Rule of Civil Procedure Rule 23.

82.     The proposed class consists of the following two sub-classes (a) all consumers who,

between May 1, 2011 and the present, were assessed and/or paid a penalty amount, or were charged

with a toll evasion violation in connection with the Toll Roads' One-Time Toll program by the

Defendants; and (b) all consumers who between May 1, 2011 and the present, had their PII provided

to any person who was not authorized to receive the PII pursuant to California Streets and Highways

Code §31490, privacy rights under the United States Constitution/California Constitution, in

violation of the Defendants' privacy policy and/or transponder agreements and/or the Rosenthal Act

(collectively, the "Class Members").

83.     This action is properly brought as a class action for the following reasons:

(a)     The proposed class is so numerous that the joinder of all Class Members is

impracticable. While Plaintiff does not know the exact number and identity of all Class Members,

Plaintiff is informed and believes that there are hundreds of thousands (if not millions) of Class

Members. The precise number of Class Members can be ascertained through discovery, which will

include Defendants' business records;

(b)     The disposition of Plaintiff and the Class Members' claims in a class action

will provide substantial benefits to both the parties and the Court;

(c)     The proposed class is ascertainable and there is a well-defined community of

interest in the questions of law or fact alleged herein since the rights of each proposed class member

were infringed or violated in the same fashion;

(d)     There are questions of law and fact common to the proposed class which

predominate over any questions that may affect particular Class Members. Such common questions

of law and fact include, but are not limited to:

(1)      Whether the tolls and Toll Road penalties, as assessed by Defendants, constitute an unconstitutional penalty;

(2)      Whether the tolls and Toll Road penalties, as assessed by Defendants, constitute "excessive fines" under the United States and California Constitutions;

(3)      Whether Defendants transmitted or sold personally identifiable information as a practice, policy, or pattern including, but not limited to, as part and parcel of their collection activity;

(4)      Whether Defendants violated California's Unfair Competition Law, Business & Professions Code §§17200, et seq. ("UCL");

(5)      Whether Defendants violated California's Consumer Legal Remedies Act, Civil Code §§1750, et seq. ("CLRA");

(6)      Whether Defendants have received funds from Plaintiff and Class Members that they unjustly received;

(7)      Whether Plaintiff and Class Members have been harmed and the proper measure of relief;

(8)      Whether Plaintiff and Class Members are entitled to an award of punitive damages, attorneys' fees, and expenses against Defendants; and

(9)      Whether, as a result of Defendants' misconduct, Plaintiff are entitled to equitable relief, and if so, the nature of such relief.

(e)      Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)      Plaintiff will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed Class Members, and Plaintiff have retained attorneys experienced in consumer class actions and complex litigation as counsel;

(g)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(1)     Given the size of Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(2)     This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, and economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

(3)     Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct; and

(4)     Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

84.     Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

85.     Plaintiff seeks damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

## CAUSES OF ACTION
## COUNT I
## VIOLATION OF THE 8TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION
## (EXCESSIVE FINES)
## (By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants)

86.     Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

87.     In light of the minor nature of the alleged toll violations and their financial effect on Class Members, the aforementioned penalties are punitive in nature (in multiples as high as 20 times or 2,000% of the underlying tolls), and are grossly excessive and disproportionate to the amount of

the tolls assessed against the Plaintiff. These penalties are also disproportionate to any legitimate public purpose, and are assessed by Defendants merely to generate profit, without any particularized consideration of drivers' or vehicle owners' financial circumstances.

88.     The dollar amount and enforcement of these penalties constitute a violation of the prohibition in the Eighth Amendment to the U.S. Constitution of excessive fines, as incorporated in the Fourteenth Amendment. The Plaintiff was assessed a penalty by BATA/GGB more than 10 times the amount of the toll violation incurred.  Each penalty, independently and collectively that were imposed by BATA/GGB, constitute an excessive fine.

89.     The Vehicle Code permitting penalties to be charged by TCA of up to 20 times the toll either expressly or implicitly, constitutes an excessive fine, and is thus, unconstitutional. As applied, the TCA routinely charged putative Class Members (including the named representative) penalties in excess of 10 times the amount of the toll, or 1,000%.

90.     In assessing these penalties, Defendants failed to engage in any inquiry into the financial conditions of Plaintiff and Class Members. Instead, Defendants established a draconian, automated scheme to drive up their own revenue without regard to the undue hardships imposed upon certain Toll Roads' drivers.

91.     Additionally, in a multitude of instances, Plaintiff did not receive notice of any alleged toll violations until after all administrative remedies were foreclosed.

92.     As a direct result of said constitutional violations on the part of Defendants, Plaintiff and the Class Members have been damaged and are entitled to damages, including restitution of the amounts of any penalties and collection fees paid to Defendants.

93.     Plaintiff and the Class Members will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and policies to enforce them are allowed to continue. Plaintiff and the Class Members seek injunctive relief, both preliminary and permanent, to stop Defendants' unlawful conduct described above.

94.     There is a real and actual controversy between the parties and a dispute for the trier of fact as to whether the penalties described above violate the Eighth and Fourteenth Amendment's prohibition of excessive fines. Plaintiff maintain that the penalties violate the excessive fines clause

of the Eighth and Fourteenth Amendments. This imposition of, and continued effort to collect, such penalties constitute a legal injury, which is concrete and particularized. It is likely that these injuries will be fairly addressed by a favorable Court ruling. Plaintiff and the Class Members therefore seek declaratory relief declaring that the toll and penalty scheme are unconstitutional and that they did not and do not owe and need not pay said tolls, penalties, and attendant collection costs.

95.     By engaging in the herein-mentioned acts and omissions, Defendants interfered by threat, intimidation, and coercion, and attempted to interfere by threat, intimidation, and coercion, with the exercise and enjoyment by Plaintiff and each of the Class Members of their rights secured by the Constitution or laws of the United States, and of their rights secured by the Constitution or laws of the State of California, entitling them to damages under, inter alia, California Civil Code §52.1(b). These coercive acts include, without limitation, the imposition of arbitrary, inadequate deadlines and grossly disproportionate penalties, as well as the threatened or actual placement of liens on motorists' DMV vehicle registrations.

96.     Plaintiff is informed and believes and thereon alleges that the acts of the Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Plaintiff's rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## COUNT II
### VIOLATION OF ARTICLE I, §17 OF THE CALIFORNIA CONSTITUTION (EXCESSIVE FINES)
### (By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants)

97.     Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

98.     This claim for relief is brought under the California Constitution and under California Civil Code ("Civil Code") §52.1(b).

99.     The dollar amount and enforcement of these penalties constitutes violations of the prohibition in Article 1, §17 of the California Constitution against the imposition of excessive fines.

100.     The Vehicle Code permitting penalties to be charged by GGB and BATA of up to 20 times the toll either expressly or implicitly, constitute excessive fines, and are thus, unconstitutional. As applied, BATA and GGB routinely charged putative Class Members (including the named class representative) penalties in excess of 10 times the amount of the toll, or 1,000%.

101.     As a direct result of said constitutional violations on the part of Defendants, Plaintiff and the Class Members have been damaged and are entitled to damages, including restitution of the amounts of any penalties and collection fees paid to Defendants or assessed by Defendants.

102.     Plaintiff and the Class Members will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and policies to enforce them are allowed to continue. Plaintiff and the Class Members seek injunctive relief, both preliminary and permanent, to stop Defendants' unlawful conduct described above.

103.     There is a real and actual controversy between the parties as to whether the toll penalties described above violate the prohibition in Article 1, §17 of the California Constitution against the imposition of excessive fines. This imposition of, and continued effort to collect, penalties constitute a legal injury which is concrete and particularized. It is likely that these injuries will be fairly addressed by a favorable Court ruling. Plaintiffs and the Class Members therefore seek declaratory relief declaring that the toll and penalty scheme are unconstitutional and that they did not and do not owe and need not pay the tolls, penalties, and attendant collection fees.

104.     Plaintiff is informed and believes and thereon alleges that the acts of the Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Plaintiff's rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## COUNT III
## 42 U.S.C. § 1983 FOR VIOLATION OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION (DUE PROCESS)
### (By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants)

105.     Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

106.     There is inadequate (if any) notice of the entry to the Toll Bridges or the incurring of tolls and penalties thereon.

107.     The civil penalty scheme of California Vehicle Code §§40250, et seq., on its face and as applied by Defendants against Plaintiff and the Class Members, violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution for the following reasons, among others set forth in this Complaint: (a) Defendants failed to provide adequate notice to Plaintiff and Class Members of the manner in which toll charges must be paid and the consequences of non-payment; (b) Defendants failed to inform Plaintiff and Class Members promptly and reliably about alleged toll violations in time for them to avoid large penalties; (c) Defendants failed to provide Plaintiff and the Class Members with an adequate amount of time to be heard on the amount of the civil penalty assessments; (d) Defendants prevented Plaintiff and Class Members from challenging tolls and penalties by the use of inadequate time periods in which to make such challenges; (e) Defendants failed to adequately inform Plaintiff and Class Members of the electronic means by which they must pay their tolls and failed to take into account the needs of persons without easy access to computers; (f) Defendants allowed for ex parte judgments to be entered against Plaintiff and Class Members without giving them notice and based on the other due process violations listed above; (g) California Vehicle Code §40267 states that, in any case in which unpaid penalties exceed $400 (essentially, any round trip's unpaid fines and penalties), the processing agency may file with the court proof of the fact that the penalties exceed $400 and that such filing shall have the same effect as a civil judgment, which is subject to execution. This entry of judgment occurs without any hearing on the issue of penalties incurred. The entry of judgment is final and may not be contested.

108.     Defendants' enforcement system, as authorized and set forth in California Vehicle Code §§40250, et seq., results in widespread due process violations against motorists alleged to have failed to pay their tolls. These violations and the injuries suffered by the Plaintiff and Class Members can be avoided or substantially limited by modifying Defendants' systems without undue cost or inconvenience to Defendants.

109.     Section 1 of Fourteenth Amendment to the U.S. Constitution prohibits any government actor from depriving any person of life, liberty, or property, without due process of law.

CASE NO. 16-cv-06837-RS
FIRST AMENDED CLASS ACTION COMPLAINT

25

Defendants' enforcement system, as alleged above, has deprived Plaintiff and the Class Members of property without due process.

110.    As a direct result of such due process violations, Plaintiff and the Class Members have been damaged. Plaintiff and the Class Members are entitled to the recovery of damages, and appropriate injunctive and declaratory relief, as alleged above.

111.    The deprivations of the procedural due process rights of Plaintiff and the Class Members as described above were a proximate result of the policies, procedures, and customs maintained by Defendants. As a direct and legal result of the acts and omissions of Defendants, Plaintiff and the Class Members have suffered damages, and are entitled to restitution, in an amount to be proven at trial.

112.    By engaging in the herein-mentioned acts and omissions, Defendants interfered by threat, intimidation, and coercion, and attempted to interfere by threat, intimidation, and coercion, with the exercise and enjoyment by Plaintiff and each of the Class Members of their rights secured by the Constitution or laws of the United States, and of their rights secured by the Constitution or laws of the State of California, entitling them to damages under, inter alia, Civil Code §52.1(b). These coercive acts include, without limitation, the imposition of arbitrary, inadequate deadlines and grossly disproportionate penalties, as well as the threatened or actual placement of liens on motorists' DMV vehicle registrations. Plaintiff and the Class Members will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned penalties and unconstitutional enforcement scheme are allowed to continue. Plaintiff and the Class Members seek injunctive relief, both preliminary and permanent, to stop Defendants' unlawful conduct described above.

113.    Plaintiff is informed and believes and thereon alleges that the acts of the Defendants were willful, malicious, intentional, reckless and/or were done in willful and conscious disregard of Plaintiffs' rights, justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial. Pursuant, inter alia, to 42 U.S.C. §1988, Plaintiff and the Class Members further seek their costs and attorneys' fees incurred as a result of this lawsuit.

**COUNT IV**

**VIOLATION OF ARTICLE I, §7 OF THE CALIFORNIA CONSTITUTION (DUE PROCESS)**

**(By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants)**

114.    Plaintiff hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

115.    Article 1, §7(a) of the California Constitution provides that a person may not be deprived of life, liberty, or property without due process of law. Defendants' excessive penalties scheme and their enforcement, as above alleged, have deprived Plaintiff and the Class Members of property without due process.

116.    Plaintiff and the Class Members will suffer immediate and irreparable injury for which there is no adequate remedy at law if the aforementioned policies, procedures, practices, and/or customs of Defendants are allowed to continue. Henceforth, Plaintiff and the Class Members seek injunctive relief, both preliminary and permanent, to enjoin Defendants' unlawful policies, procedures, practices and/or customs described above.

117.    In addition, there is a real dispute between the parties as to whether Vehicle Code §§40250, et seq. and Defendants' practices violate Article I, §7 of the California Constitution. Plaintiff maintain that the penalty scheme of Vehicle Code §§40250, et seq., on its face and as applied by Defendants, violates Article I, §7 of the California Constitution. Defendants claim that the penalty scheme and their actions do not violate the due process clause of Article I, §7 of the California Constitution and are constitutional. Plaintiff and the Class Members therefore seek declaratory relief to declare the penalty scheme of Vehicle Code §§40250, et seq., on its face and as applied by Defendants, as unconstitutional.

118.    By engaging in the herein-mentioned acts and omissions, Defendants interfered by threat, intimidation, and coercion, and attempted to interfere by threat, intimidation, and coercion, with the exercise and enjoyment by Plaintiff and each Class Members of their rights secured by the Constitution or laws of the United States, and of the rights secured by the Constitution or laws of the State of California, entitling them to damages under, inter alia, Civil Code §52.1(b) These coercive acts include, without limitation, the imposition of arbitrary, inadequate deadlines and grossly

disproportionate penalties, as well as the threatened or actual placement of liens on motorists' DMV vehicle registrations.

**COUNT V**
**VIOLATION OF CALIFORNIA STREETS AND**
**HIGHWAYS CODE §31490**
**(By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants)**

119.    Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

120.    California Streets and Highways Code §31490 provides that:

"(a)Except as otherwise provided in this section, a transportation agency may not sell or otherwise provide to any other person or entity personally identifiable information of any person who subscribes to an electronic toll or electronic transit fare collection system or who uses a toll bridge, toll lane, or toll highway that employs an electronic toll collection system."

121.    The Plaintiff and the Class Members are either "subscribers" or "users" of Defendants Toll Bridges pursuant to California Streets and Highways Code §31490(a).

122.    California Streets and Highways Code §31490(h) provides that:

This section, with respect to an electronic toll collection system, does not prohibit a transportation agency from sharing data with another transportation agency solely to comply with interoperability specifications and standards adopted pursuant to Section 37565 regarding electronic toll collection devices and technologies. A thirdparty vendor may not use personally identifiable information obtained under this subdivision for a purpose other than described in this subdivision.

123.    California Streets and Highways Code §31490(l) provides: "For purposes of this section, "transportation agency" means the Department of Transportation, the Bay Area Toll Authority, any entity operating a toll bridge, toll lane, or toll highway within the state, any entity administering an electronic transit fare collection system and any transit operator participating in that system, or any entity under contract with any of the above entities."

124.    California Streets and Highways Code §31490(o) provides that: "For purposes of this section, "personally identifiable information" means any information that identifies or describes a person including, but not limited to, travel pattern data, address, telephone number, email address, license plate number, photograph, bank account information or credit card number."

125.    California Streets and Highways Code §31490(p) provides that: For purposes of this section, "interoperability" means the sharing of data, including personally identifiable information, across multiple transportation agencies for the sole purpose of creating an integrated transit fare payment system, integrated toll payment system, or both.

126.    Defendants operate an "electronic toll collection system" within the meaning of California Streets and Highways Code §31490(m).

127.    Defendants BATA, GGB, and Xerox provided Plaintiffs' PII from October of 2015 to June of 2016 and Class Members' PII throughout the Class Period, within the meaning of California Streets and Highways Code §31490(o), to the following Unauthorized Parties: Law Enforcement Agencies, including the DMV, the FTB, the San Francisco Police Department and other city, state, county, and federal Law Enforcement Agencies located in the State of California; Banking Institutions, including, without limitation, Wells Fargo Bank, N.A., JP Morgan Chase Bank, Bank American, N.A.; Car Rental Agencies, including without limitation Ace Rent-A-Car, Advantage, Alamo, Avis, Budget, Dollar, Economy, Enterprise, Europcar, Rent-a-car, Firefly, Fox; out-of-state collection agencies, credit buereaus (including Experian, Transunion, and Equifax), and other unauthorized third persons and entities to be ascertained through discovery (Other Unauthorized Parties).

128.    *Ad nauseum*, the BATA provided to TCA, BRiC, 3M, Cofiroute, OCTA, LA Metro Express, South Bay Expressway, SANDAG, the PII of Plaintiff and the Class Members (i.e., their plate images) for non-interoperability purposes.

129.    *Ad nauseum*, the GGB provided to TCA, BRiC, 3M, Cofiroute, OCTA, LA Metro Express, South Bay Expressway, SANDAG, the PII of Plaintiff and the Class Members (i.e., their plate images) for non-interoperability purposes.

130.     *Ad nauseum*, the Xerox provided to TCA, BRiC, 3M, Cofiroute, OCTA, LA Metro Express, South Bay Expressway, SANDAG, the PII of Plaintiff and the Class Members (i.e., their plate images) for non-interoperability purposes.

131.     Such PII of Plaintiff and Class Members included, without limitation, information that identified or described Plaintiffs and Class Members as Toll Road toll violators, data of their travel patterns on the Toll Roads, and images of license plates of vehicles they owned or were driving.

132.     California Streets and Highways Code §31490(i) is not a defense or excuse of liability pursuant to §31490(a) or (h) because §31490(i) refers to, incorporates, and implicates subsection (d) which contemplates purging that may take place under the California Streets and Highways Code, which has nothing to do with the "providing" of PII. In other words, the statute contemplates that collection may still occur even if the transportation agency has purged documents, but this is no defense to the Defendants' express violation of §31490(a) and (h).

133.     By providing the Unauthorized Parties with the PII of Plaintiff and the Class Members, Defendants' purpose was to track Plaintiffs' and Class Members' comings and goings, and to interfere with Plaintiff's and Class Members' rights to use their vehicles.

134.     Defendants did not receive a search warrant from any law enforcement agency under California Streets and Highways Code §31490 prior to making any of the above-referenced transmissions of PII.

135.     Defendants did not have authorization under the transponder agreements with commuters to make any of the above transmissions of PII.

136.     GGB, BATA, and XEROX completed separate forms with the DMV prior to transmitting PII for different purposes – albeit both were illegal. GGB, BATA, and XEROX would first file requests (in certain circumstances only) to provide plate images to the DMV to obtain information about commuters, even though the named Defendants already had the information of commuters based on their completed transponder agreements, the availability of public information and databases that indicate information for registration of car owners, private investigation, the right

to subpoena under California Streets and Highways Code, the right of publication, and other means to obtain information.

137.    Based on DMV procedures and practices, the DMV did not maintain a database of the images of Class Members and GGB, BATA, and XEROX would then provide plate images subsequently thereto to the DMV to place a hold on commuters' registration, which was an entirely independent request and function from providing plate images to obtain information about commuters. In other words, the Defendants did not need to make subsequent transmission of image files and PII to obtain the address of a commuter.

138.    Based on the fact that GGB, BATA, and XEROX provided PII of the Plaintiff and Class Members to the Unauthorized Persons in violation of California Streets and Highways Code §31490(a), pursuant to §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees, reasonable costs from GGB, BATA, and XEROX, and for Plaintiff and those Class Members who had their information provided three or more times, $4,000 for each individual violation, attorney's fees, and reasonable costs from GGB, BATA, and XEROX. California Streets and Highways Code §31490(p)(2).

### DEFENDANTS ARE LIABLE BECAUSE THE PURPOSE BY WHICH PII WAS PROVIDED TO UNAUTHORIZED PARTIES WAS NOT FOR "INTEROPERABILITY PURPOSES"

139.    When Plaintiff and each of the Class Members drove on the Toll Bridges, each of them was a "user" of the Toll Roads pursuant to §31490(a).

140.    Each of the named Defendants is independently a "transportation agency" pursuant to California Streets and Highways Code §31490(l).

141.    GGB, BATA, and XEROX are each independently, "entities" operating a toll bridge, toll lane or toll highway within the state of California based on their contractual and actual roles in the operations of the joint enterprise.

142.    Each of the Toll Bridges (as previously defined) is a "Toll Highway" and/or "Toll Lane" under §31490(n).

143.    Defendants provided to the Unauthorized Parties PII for purposes that were not, and could not have been, for "interoperability purposes" in that none of the transmittals were for the "sole purpose of creating an integrated transit fare payment system, integrated toll payment system, or both." In fact, none of Defendants' providing PII to Unauthorized Parties alleged hereinabove had anything to do with creating any system, much less an "integrated transit fare payment system, integrated toll payment system, or both," but were instead meant to place holds on commuters' vehicle registrations as an illicit collection device.

144.    As defined in §31490(m), for purposes of this section: "[E]lectronic toll collection system" is a system where a transponder, camera-based vehicle identification system, or other electronic medium is used to deduct payment of a toll from a subscriber's account or to establish an obligation to pay a toll, and "electronic transit fare collection system" means a system for issuing an electronic transit pass that enables a transit passenger subscriber to use the transit systems of one or more participating transit operators without having to pay individual fares, where fares are instead deducted from the subscriber's account as loaded onto the electronic transit pass. The transmissions described above were not provided pursuant to a collection system of interoperability, but were instead disseminated to unlawfully implement impermissible collection devices, place holds through the DMV, interfere with property rights, and to track commuters' comings and goings. See Streets and Highways Code §27565.

145.    Thus, regardless of whether any of the Unauthorized Parties are themselves "transportation agencies," the named Defendants are liable for violations of California Streets and Highways Code §31490(a), (h), and (l) because their provisions of Plaintiffs' and Class Members' PII were not for "interoperability purposes."

146.    Based on the fact that GGB, BATA, and XEROX provided PII of the Plaintiffs and Class Members to the Unauthorized Persons in violation of California Streets and Highways Code §31490(a), pursuant to §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees, reasonable costs from GGB, BATA, and XEROX, and for Plaintiffs and those Class Members who had their information provided three or more times, $4,000

for each individual violation, attorney's fees, and reasonable costs from GGB, BATA, and XEROX. California Streets and Highways Code §31490(p)(2).

### DEFENDANTS ARE ALTERNATIVELY LIABLE BECAUSE THE UNAUTHORIZED PARTIES WERE NOT PERMITTED RECIPIENTS OF PLAINTIFFS' AND CLASS MEMBERS' PII REGARDLESS OF THE PURPOSE

147.    Plaintiff is informed and believes, and on that basis alleges, that neither GGB, BATA, and XEROX, was under contract with any of the Unauthorized Third Parties, within the meaning and purpose of California Streets and Highways Code §31490(l), at the time they provided Plaintiffs' and Class Members' PII to the Unauthorized Persons, with the exception of contracts by and between Xerox and BATA/GGB.

148.    Specifically, Plaintiff is informed and believes, and based thereon alleges that neither GGB, BATA, and XEROX executed any contract with the DMV at all.

149.    The DMV is not a "transportation agency." Specifically, the GGB and BATA were not "under contract" with the DMV for the purposes of California Streets and Highways Code §31490(l). The DMV has not been a signatory to any writing with BATA and GGB concerning BATA and/or GGB providing PII under the unlawful transmissions described above. The DMV has no continuing contractual obligation with any party such that it would be said to be "under contract."

150.    Xerox is not under contract with the DMV.

151.    The DMV is a law enforcement agency within the meaning of the California Streets and Highways Code and thus, cannot be a "transportation agency" thereunder.

152.    None of the Law Enforcement Agencies are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

153.    The FTB is not "under contract" with GGB, BATA, and XEROX under California Streets and Highways Code§31490(l).

154.    None of the Banking Institutions are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

155.    None of the Other Unauthorized Parties are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

156.    None of the Credit Bureaus are "under contract" with GGB, BATA, and XEROX.

157.    None of the Car Rental Agencies are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

158.    Thus, none of the Unauthorized Parties was a "transportation agency" within the meaning of California Streets and Highways Code §31490(l).

159.    Consequently, Defendants' provision of PII to the Unauthorized Parties was in violation of California Streets and Highways Code §31490 for this independent reason, irrespective of whether providing the PII was provided for interoperability purposes.

**DEFENDANTS ARE INDEPENDENTLY LIABLE BECAUSE THEY PROVIDED PII TO LAW ENFORCEMENT AGENCIES WITHOUT A SEARCH WARRANT**

160.    California Streets and Highways Code §31490(e)(1) provides: A transportation agency may make personally identifiable information of a person available to a law enforcement agency only pursuant to a search warrant. Absent a provision in the search warrant to the contrary, the law enforcement agency shall immediately, but in any event within no more than five days, notify the person that his or her records have been obtained and shall provide the person with a copy of the search warrant and the identity of the law enforcement agency or peace officer to whom the records were provided.

161.    Each of the DMV and San Francisco Police Department, and other Law Enforcement Agencies in the State of California California, is a law enforcement agency within the meaning of California Streets and Highways Code §31490(e)(1).

162.    Plaintiffs is informed and believes, and on that basis alleges, that none of the Defendants obtained a search warrant and otherwise complied with California Streets and Highways Code §31490(e)(1) when providing Plaintiff and Class Members' PII to the DMV, the San Francisco Police Department, and other Law Enforcement Agencies.

163.    Consequently, Defendants' provision to the DMV, other Law Enforcement Agencies, and San Francisco Police Department of Plaintiffs' and Class Members' PII was in violation of California Streets and Highways Code §31490.

164.    Plaintiff is informed and believes, and thereon alleges, that Defendants have violated, and conspired to violate, California Streets and Highways Code §31490 by unlawfully transmitting Plaintiffs' and the Class Members' PII, within the meaning of California Streets and Highways Code §31490(o), to other agencies and individuals including, but not limited to, the Unauthorized Parties. Further, Defendants ratified, authorized, directed, and approved that the DMV place a hold on Plaintiffs' and Class Members' vehicles and that the DMV transfer Plaintiffs' and Class Members' PII to other Law Enforcement Agencies, and that the San Francisco Police Department do the same, thereby intentionally and illicitly circumventing the law.

165.    Specifically, on at least two occasions per week during the Class Period, Defendants have transmitted and continue to transmit to Unauthorized Parties a list of all users and subscribers, that contains PII of each user and subscriber, whose registration should be placed on hold.

## DEFENDANTS ARE INDEPENDENTLY AND ADDITIONALLY LIABLE BASED ON THEIR NON-COMPLIANT PRIVACY POLICIES IN VIOLATION OF CALIFORNIA STREETS AND HIGHWAYS CODE §31490(B) AND (P)

166.    California Streets and Highways Code §31490(b) provides that: (b) A transportation agency that employs an electronic toll collection system shall establish a privacy policy regarding the collection and use of personally identifiable information and provide to subscribers of that system a copy of the privacy policy in a manner that is conspicuous and meaningful, such as by providing a copy to the subscriber with the transponder or other device used as an electronic toll collection mechanism, or, if the system does not use a mechanism, with the application materials. A transportation agency shall conspicuously post its privacy policy on its Internet Web site. For purposes of this subdivision, "conspicuously post" has the same meaning as that term is defined in paragraphs (1) to (4), inclusive, of subdivision (b) of Section 22577 of the Business and Professions Code. The policy shall include, but need not be limited to, a description of the following:

(a)    The types of personally identifiable information that is collected by the agency.

(b)    The categories of third-party persons or entities with whom the agency may share personally identifiable information.

(c)     The process by which a transportation agency notifies subscribers of material changes to its privacy policy.

(d)     The effective date of the privacy policy.

(e)     The process by which a subscriber may review and request changes to any of his or her personally identifiable information.

167.    Each of the named Defendants are transportation agencies that employ an electronic toll collection system under Street & Highway Code Section 31490.

168.    The TCA's "Toll Roads Privacy Policy," set forth in a back-page footer of BATA's website at https://www.bayareafastrak.org/en/support/privacy.shtml, fails to comply with California Streets and Highways Code §31490(b)(1). The policy fails to completely and accurately identify the who BATA, GGB, and XEROX will be sharing personally identifiable information with as required by §31490(b)(1).

169.    The Defendants' privacy policy provides: "BATA may share PII with GGBHTD, ACTC, and VTA for the purpose of managing FasTrak® and other electronic toll collection operations (i.e. License Plate Accounts, One-Time Payment Accounts and Invoices). BATA may also share PII with other toll agencies within the State of California for the purpose of managing FasTrak® operations. If you participate in the SFO Parking Program to pay parking fees, BATA will share your FasTrak® toll tag number with SFO for the purpose of operating the SFO Parking Program. In addition, BATA may share PII with SFO as necessary to resolve customer disputes."

170.    Further, the Policy provides:  "[i]n addition, BATA hires third-party service providers for the purpose of operating the FasTrak® and other electronic toll collection programs referenced above, such as managing Accounts, collecting revenues due, and providing remote walk-in locations at which FasTrak®, License Plate Account, One-time Payment Account, and Invoices customers can pay tolls in cash. The CSC Contractor, Xerox, which may need to share PII with subcontractors to enable credit card processing and mailing services, is one such service provider. These contractors are provided only with the PII they need to deliver the services. BATA requires the service providers to maintain the confidentiality of the information and to use it only as necessary to carry out their

1  duties under the FasTrak® and other electronic toll collection programs mentioned in this Privacy
2  Policy."

3  171.  The Policy violates §31490(b)(1) because BATA, GGB and Xerox actually provide
4  PII to a host of other unauthorized persons:  Car Rental Agencies, Law Enforcement Agencies
5  without a search warrant (including the DMV), the Credit Bureaus, Banking Institutions, the FTB
6  and the Other Unauthorized Persons.

7  172.  Further, BATA, GGB and XEROX have violated California Streets and Highways
8  Code §31490(b) because even though BATA, GGB and XEROX "shall" establish a privacy policy
9  regarding the "collection and use" of PII, BATA, GGB and XEROX failed to do so. Specifically, the
10 privacy policy fails to state that PII (the license plate images of Class Members and other PII of
11 Class Members), as previously alleged, is provided by BATA, GGB and XEROX to a multitude of
12 persons and entities to place holds on Class Members' registration, to collect debts, to monitor
13 movements, and for other purposes.  The privacy policy does not reference that BATA, GGB and
14 XEROX will use the PII to place holds on Plaintiff and Class Members' vehicles.

15 173.  Based on the fact that BATA, GGB and XEROX failed to comply with §31490(b) in
16 regards to the requirements of the privacy policy (which each party had authority and control over
17 drafting, implementing, and publishing) before BATA, GGB and XEROX provided Class Members'
18 PII to any third person, the BATA, GGB and XEROX have "otherwise provided information in
19 violation of this section" pursuant to California Streets and Highways Code §31490(p). Thus,
20 Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees,
21 reasonable costs from BATA, GGB and XEROX, and for Plaintiff and those Class Members who
22 had their information provided three or more times, $4,000 for each individual violation, attorney's
23 fees, and reasonable costs from BATA, GGB and XEROX.

24 174.  Besides these entities, PII will not be disclosed to any other third party without
25 express customer consent, except as required to comply with laws or legal processes served on
26 BATA.

27
28

**COUNT VI**
**VIOLATION OF ARTICLE I, §1 OF THE CALIFORNIA CONSTITUTION (RIGHT TO PRIVACY)**
**(By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants)**

CASE NO. 16-cv-06837-RS
FIRST AMENDED CLASS ACTION COMPLAINT

37

175. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

176. Article I, §1 of the California Constitution ensures individuals' inalienable rights to privacy.

177. Plaintiff and Class Members had a reasonable expectation of privacy. For one, California Streets and Highways Code §31490 was enacted to ensure it. Moreover, the Toll Roads Privacy Policy manifests an intent to maintain Toll Roads users' privacy or, at a bare minimum, does not reduce from the reasonable expectation of privacy of vehicle owners and operators who do not expect driving down a street to expose their PII to unbridled dissemination.

178. Plaintiff and Class Members had a reasonable expectation of privacy that, when a vehicle is merely driven down the road, its owner's PII (including travel pattern data) will not be captured for broad dissemination to third parties, including but not limited to Unauthorized Parties, for the purposes of obtaining DMV registration liens and ex parte judgments against them.

179. The privacy rights of Plaintiff and Class Members, in and to their PII, are serious, underscored by statute, the active participation in relevant Legislative proceedings by the American Civil Liberties Union, the Privacy Rights Clearinghouse, the Consumer Federation of California, CALPIRG and the enactment of laws to reflect such concerns about the collection and dissemination of this data. By their conduct described above, these established, serious privacy rights were seriously invaded by the Defendants.

180. By the aforementioned acts and omissions, Defendants have violated the privacy rights of Plaintiff and other Class Members. As a consequence, Plaintiff and the Class Members have suffered, and seek hereby from Defendants, their actual damages. Plaintiff and Class Members additionally seek attorneys' fees, and costs, as may be allowed.

**COUNT VII**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CIVIL CODE §§1750, ET SEQ.**
**(Against Xerox & DOES 1-100)**

181. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

182.     Defendant Xerox is a "person" as defined by Civil Code §1761(c). Plaintiff and the Class Members are consumers within the meaning of Civil Code §1761(d).

183.     The CLRA applies to Defendant Xerox's conduct because it extends to transactions that are intended to result in the sale or lease of goods or services to consumers, or do result in such sales or leases. The use of the Toll Bridges constitutes such sale or lease of goods or services.

184.     Defendant Xerox had a duty to truthfully disclose how they truly intended to operate Toll Bridges and their related charges and payments, use and disclose personally identifiable information of Plaintiff and the Class Members, and disclose the omitted facts regarding such use and disclosure. Defendant Xerox had exclusive knowledge of material facts not known to Plaintiff and the Class Members. Specifically, Defendant Xerox operate Toll Bridges and related charges and payments in a manner that defrauds the Plaintiff and the Class Members, unjustly enriches Defendants, and uses and discloses personally identifiable information of Plaintiff and the Class Members contrary to law and for improper purposes.  Defendant Xerox, however, actively concealed material facts and did not provide Plaintiff or the Class Members proper notice of their actual intentions for use and disclosure of Plaintiff' or Class Members' personally identifiable information.

185.     The facts, which Defendant Xerox misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiff and the Class Members' decisions about whether to use the Toll Bridges (when such use was known) and pay bills rendered by or for Defendant Xerox. Defendant Xerox are liable under the CLRA for these material misrepresentations and omissions.

186.     In violation of Civil Code §1770(a)(16), Defendant Xerox represented that the subject of a Toll Bridges transaction was supplied in accordance with a previous representation when it was not. Defendant Xerox have failed to disclose material facts to Plaintiff and the Class Members by billing them for services that were not in fact provided, by billing them at rates higher than were disclosed or allowed by law, and/or through billing errors.

187.     Additionally, by their conduct described in this Complaint, Defendant Xerox have violated Civil Code §1770(a)(5), (7), (9), (13), (14), (17), and (19).

188.     Defendant Xerox had a duty to disclose the omitted facts because it had exclusive knowledge of material facts not known to Plaintiff and the Class Members (that they were billing for

services that they did not in fact provide and/or that they were billing at rates higher than disclosed or permitted by law), because they actively concealed material facts, and because they did not provide Plaintiff and the Class Members proper notice of the Toll Bridges, toll charges, penalties, the processes by which charges and penalties could be assessed and contested, and because they otherwise suppressed true material facts.

189. Under Civil Code §1780, Plaintiff and the Class Members seek appropriate equitable relief, including an order enjoining Defendant Xerox from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages, and any other relief the Court deems proper.

190. Additionally, any of the Plaintiff or Class Members that are senior citizens or disabled persons, as defined in Civil Code §§1780(b)(1) and 1781(f) and (g), may seek and be awarded up to an additional $5,000 for physical, emotional, or economic damage.

## COUNT VIII
## VIOLATION OF THE UNFAIR COMPETITION LAW,
## BUS. & PROF. CODE §§17200, ET SEQ.
### (Against Xerox & DOES 1-100)

191. Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

192. Defendant Xerox has engaged in a pattern and practice of acts of unfair competition in violation of the California's UCL, including the practices alleged herein.

193. By violating the Plaintiff and other Class Members' federal and state constitutional due process rights and prohibitions against excessive fines, and engaging in the collection activity recited above, Defendant Xerox have committed and continue to commit and engage in "unlawful, unfair or fraudulent business acts or practices" as defined in Bus. & Prof. Code §§17200, et seq.

194. Business & Professions Code §17200 provides:

(a) As used in this chapter, unfair competition shall mean and include any unlawful or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

195.     Business & Professions Code §17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such unfair competition, and Bus. & Prof. Code §17203 provides that a court may grant injunctive and equitable relief to such persons.

196.     The unlawful conduct of Defendant Xerox, alleged herein, are acts of unfair competition under Bus. & Prof. Code §§17200, et seq., for which Defendant Xerox is liable and for which this Court should issue equitable and injunctive relief, including restitution, pursuant to Bus. & Prof. Code §17203.

197.     Through its conduct, Defendant Xerox has engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendant Xerox's use of such unfair business practices constitute unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

198.     Defendant Xerox's conduct as alleged herein is unlawful, unfair, and fraudulent.

199.     Defendant Xerox's conduct as alleged herein is "unlawful" in that, among other things, it violates the duties they owe to Plaintiff and the Class Members.

200.     Defendant Xerox's conduct as alleged herein is also "unfair" because, among other things, it was designed to deprive Plaintiff and the Class Members of their constitutionally protected rights and their property for less than adequate consideration and to unjustly punish and penalize Plaintiff and the Class.

201.     Defendant Xerox's scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead. Defendant Xerox had actual knowledge of the egregious penalties being charged by BATA, GGB and XERXO, the means by which its sought to conceal and apply them, the coercive judgments and liens they were placing on Plaintiff and Class Members' assets, and the illicit and reckless plans they possessed and concealed from Plaintiff and the Class Members to obtain and misuse their personal and private information. Defendant Xerox has continued to take steps to perpetuate these deceitful practices against the Plaintiff and the Class Members and other members of the public at large.

202. Unless enjoined, Defendant Xerox will continue to harm the Plaintiff, the other Class Members, and the general public. Plaintiff and the Class Members have suffered injuries in fact and lost money as a result of Defendants' conduct, as more specifically alleged above.

203. As a result of Defendant Xerox's unfair business practices, it has reaped unfair benefits and illegal profits at the expense of the Plaintiff and the Class Members. Defendant Xerox should be made to disgorge its ill-gotten gains and restore such monies to Plaintiff and the Class Members. Defendant Xerox's unfair business practices furthermore entitle Plaintiff and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendant Xerox cease its complained-of practices and account for, disgorge, and restore to Plaintiff and the Class Members the compensation unlawfully obtained from them.

**COUNT IX**
**VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CALIFORNIA CIVIL CODE §§1788, ET SEQ.**
**(By Plaintiff, Individually and On Behalf of All Class Members, Against All Defendants)**

204. Plaintiff and the Class Members hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

205. Defendants are respective "debt collectors" within the meaning of California Civil Code §1788.2. The tolls, penalties and other debts asserted by the Defendants constitute "consumer debts" pursuant to said section.

206. Defendants have violated, and are violating, the Rosenthal Fair Debt Collection Practices Act, California Civil Code §1788, et seq., in that they are making (i) false representations of the true nature of the business or services being rendered by the debt collector (Civil Code §1788.13(i)); and (ii) false representations that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation (Civil Code §1788.13(e)). 280. Additionally, California Civil Code §1788.17 requires every debt collector to comply with the provisions of §§1692b to 1692j, inclusive, and that the same shall be subject to the remedies in §1692k, of Title 15 of the United States Code. To wit:

     (a)     Section 1692d prohibits a debt collector from engaging in any conduct the natural consequences of which is to harass, oppress or abuse any person in connection with the collection of a debt.

     (b)     Section 1692e(8) prohibits a debt collector from communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

     (c)     Section 1692e(10) prohibits a debt collector from the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

     (d)     Section 1692e(11) prohibits a debt collector from failing to disclose (a) in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and (b) in subsequent communications that the communication is from a debt collector.

     (e)     Section 1692g requires additional written notices be provided by debt collectors and provides circumstances under which a debt collector must cease collection of debts when disputed.

207.     Defendants have violated, and continue to violate, the foregoing provisions of the Rosenthal Fair Debt Collection Practices Act by using false representations and deceptive means to collect a debt – that is, sending PI to a host of unauthorized third persons to interfere with Class Members' use of their property and to impose holds and liens against Class Members' vehicles. As a consequence, the Plaintiffs and Class Members herein are entitled to appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation (including but not limited to pursuant to California Civil Code §§1788.17 and 1788.30(c)), restitution of property, actual damages, statutory damages, punitive damages (as may otherwise be permitted by law) and any other relief the court deems proper.

**COUNT IX**
**NEGLIGENCE**
**(By Plaintiff, Individually and On Behalf of All Class Members, Against All Defendants)**

208.    Plaintiff hereby refers to and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

209.    Defendants owed a duty to Plaintiff and the Class Members to exercise due care in their own actions so as not to create an unreasonable risk of injury to them.

210.    Defendants also owe Plaintiff and Class Members duties that arose from inter alia: (1) the contracts and associated documents between them and the BATA/DISTRICT Defendants pursuant to which Xerox accepted responsibility for the operation of the all-electronic tolling system of the Toll Bridges, including all associated duties to send toll invoices and notices of toll evasions and to process, collect, and review disputes of such invoices and notices; (2) their role as a Processing Agency, as defined in Vehicle Code §§40252-40253; (3) the provisions of Civil Code §52.1 precluding them from using threats or coercion (such as fines, loss of property, or loss of use of vehicles) to interfere with the exercise and enjoyment of Plaintiff' and Class Members' statutory and constitutional rights; and (4) the duty of ordinary persons not to collect or attempt collection of funds to which they are not legally entitled, through coercive or unfair process.

211.    Defendants owed a duty to Plaintiff and Class Members because: (1) they were processing toll violations and notices of violations that were intended to affect Plaintiff and Class Members; (2) it was easily foreseeable that if such invoices and notices were processed incorrectly or unfairly, Plaintiff and the Class Members would suffer harm including the loss of their automobiles; (3) there is a high degree of certainty that Plaintiff and Class Members suffered harm alleged, because fines and DMV holds were imposed on them; (4) Defendants' conduct is closely connected to, and indeed proximately caused, the injuries; (5) a high degree of moral blame attaches to Defendants' conduct because it acted arbitrarily, capriciously, unfairly, and in violation of public policy as described in the Complaint; and (6) there is need to prevent future harm to Plaintiff and the Class Members.

212.     Defendants breached these duties of care by negligently failing to train their employees; adequately staff themselves; or develop, maintain, and enforce policies, systems, procedures and guidelines, including, without limitation, as follows:

(a)     To provide meaningful toll evasion citation review and to effectively resolve complaints;

(b)     To use "best efforts" to "obtain" accurate information concerning the identity and address of the registered owner for the sending of toll invoices and notice of toll evasion violations;

(c)     To provide vehicle owners with notice of toll violations within 21 days of the violation, the facts associated with the violation, and all required disclosures, including the process for contesting the violation and appealing an adverse decision;

(d)     To provide vehicle owners with notice of delinquency toll evasion violations, including all required disclosures, and the process for contesting the violation and appealing an adverse decision;

(e)     To provide fair, neutral, and adequate administrative review of toll evasion violations and delinquency toll evasion violations in which vehicle owners are permitted to submit evidence; and

(f)     To correct or update their system and databases in a reasonable fashion.

213.     Defendants owed a duty when rolling out a cashless toll system to give adequate notice to consumers of violations. This is particularly true since many persons who use these Toll Bridges are out-of-state tourists on vacation.

214.     Defendants have engaged in a pattern and practice of acts of unfair competition in violation of the California's UCL, including the practices alleged herein.

215.     Defendants issued penalties and tolls against Plaintiff and the Class Members that were in excess of the intended penalty structure, pursuant to a cashless system designed by Defendants, and based on negligence and errors in design of the toll road system.

216.     As a foreseeable and proximate result of Defendants' negligent acts, Plaintiff and the Class Members were injured, including by being forced to pay exorbitant fees, fines, and penalties;

suffering injury to their property and the use and enjoyment of such property; and losing their freedom to move about.

217.   This injury was directly and substantially caused by Defendants' negligence, as alleged above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, and each Class Member, pray for judgment against Defendants as follows:

A.   That this action and the proposed class be certified and maintained as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as a representative of the Class, and appointing the attorneys and law firms representing Plaintiff as counsel for the Class;

B.   For actual damages, restitution, and all other appropriate legal and equitable relief;

C.   For declaratory relief;

D.   For pre-judgment and post-judgment interest;

E.   For civil penalties, as requested herein;

F.   For punitive and exemplary damages, as requested herein;

G.   For attorneys' fees and costs pursuant, inter alia, to 42 U.S.C. §1988, Code of Civil Procedure §1021.5, Civil Code §§1788.17 and 1788.30(c), Streets and Highways Code §31490, and 15 U.S.C. §1681n(a);

H.   For appropriate injunctive relief;

I.   For statutory damages in the amount of no less than $2,500 or $4,000 (as applicable) per provision of each of Plaintiffs' and Class Members' PII to each of the Unauthorized Parties, for privacy policy violations as to the Class, and more as allowed, pursuant to California Streets and Highways Code §31490; and

J.   For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class Members hereby demand a trial by jury on all causes of action so triable.

Dated:   February 3, 2017

Respectfully submitted,

LINDEMANN LAW FIRM, APC


By: /s/ Blake J. Lindemann
Blake J. Lindemann (SBN 255747)
Po Satia Waghalter (SBN 236612)
433 Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile:  (310) 300-0267
E-mail:      blake@lawbl.com

-and-

LAW OFFICES OF DAREN SCHLECTER


By:  /s/ Daren M. Schlecter
Daren M. Schlecter


Attorneys For Plaintiff
MICHELLE KELLY AND THE INTERIM
CLASS