1
2
3
4
5
6

**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile: (310) 300-0267
E-Mail:     blake@lawbl.com

Attorneys For Plaintiffs
SUMATRA KENDRICK, MICHELLE KELLY
AND ALL THOSE SIMILARLY SITUATED

7
8
9
10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

11
12
13
14
15
16
17
18
19
20
21
22
23

SUMATRA KENDRICK, an individual;
MICHELLE KELLY, an individual; and on
behalf of herself and those similarly situated,

            Plaintiffs,

        v.

BAY AREA TOLL AUTHORITY, a California
public corporation; GOLDEN GATE BRIDGE,
HIGHWAY AND TRANSPORTATION
DISTRICT, a California Public Corporation;
XEROX STATE AND LOCAL SOLUTIONS,
INC.; CONDUENT STATE AND LOCAL
SOLUTIONS, INC.; and DOES 1-10,

            Defendants.

Case No. 3:18-cv-00213-RS

**FIRST AMENDED CLASS ACTION
COMPLAINT**

Judge:  Hon. Richard Seeborg

**[Jury Trial Demanded]**

24
25
26
27
28

Plaintiffs Sumatra Kendrick and Michelle Kelly ("Plaintiffs"), on behalf of themselves, and all others similarly situated, and the general public, submit their first amended class action complaint against the above-captioned defendants (the "Complaint") as follows:

## NATURE OF THE CASE

1.     This class action seeks redress for defendants' violation of Plaintiffs' and class members' right to privacy and protection of personally identifiable information ("PII") including under *California Streets and Highways Code* § 31490.   The defendants transmitted the Class' PII in direct violation of § 31490 to the Department of Motor Vehicles, the Franchise Tax Board, and a host of other unauthorized third persons that entitles Plaintiff to damages and injunctive relief.

## THE PARTIES

2.     Plaintiff Sumatra Kendrick is an individual residing in the State of California. While driving through the Golden Gate Bridge on September of 2016 tolls that the Defendants operate, Sumatra Kendrick followed signage commands that indicated, "do not slow down, keep going." The signage did not adequately inform the driver of the pending toll crossing. Kendrick was not a Fastrak subscriber. Ms. Kendrick received no notice of toll violation from the Defendants, nor an opportunity to contest through any administrative hearing, the tolls she had allegedly incurred. Kendrick was also informed by certain of the Defendants that she was never sent a notice of toll evasion violation by the Defendants. The first Kendrick heard of any claims by the Defendants, was when she went to renew her registration with the California Department of Motor Vehicles ("DMV"). The DMV advised Kendrick of two purported toll violations totaling $170.00 that had been imposed as a lien against her driver's registration by tolling authorities. Ms. Kendrick paid the $170.00 to renew her registration.

3.     Plaintiff Michelle Kelly is an individual residing in the State of California. While driving through the Golden Gate Bridge tolls and the Carquinez Bridge that the Defendants operate or jointly operate with other Defendants, Michelle Kelly was assessed 155 toll violations by the defendants from October of 2015 to June of 2016, totaling approximately $9,000 in penalties.   The penalties that Defendants assessed against Kelly constitute a multiple of over 10x of the tolls assessed by the Defendants.   From October of 2015 to June of 2016, Kelly's PII – her license plate, was photographed, information was converted to a file, and her PII license plate number was provided

approximately twice a month by the Defendants to the DMV, rental car agencies, and other third party entities, including without limitation, the Franchise Tax Board as alleged later in this Complaint. When Kelly did not pay the tolls because she was financially unable to, the Defendants filed a separate request with the DMV to place a hold on Kelly's registration.

4.     Defendant, the Bay Area Toll Authority ("BATA"), is a government agency responsible for operating and managing toll collection on the Golden Gate Bridge (including the Fastrak Program), sending invoices, and assessing and processing toll evasion violations and penalties. BATA is an "issuing agent" within the meaning of California Vehicle Code §§ 40250, *et seq.* BATA, at all times alleged herein, conducted its principal business within the State of California, located in the City and County of San Francisco.

5.     Defendant the Golden Gate Bridge, Highway and Transportation District (the "District" or "GGB") is also a government agency responsible for operating and managing toll collection on the GCB (including the Fastrak Program), sending invoices, and assessing and processing toll evasion violation and penalties. The District was and is at all times herein, conducted business in California, with its located headquarters in the City and County of San Francisco. The District is an "issuing agency" within the meaning of California Vehicle Code §§ 40250, *et seq.*

6.     Defendant Xerox State and Local Solutions, Inc. ("Xerox") formerly ACS State and Local Solutions, Inc. is a private corporation headquartered in New York, and authorized to conduct business in California. On April 2, 2012, ACS State and Local Solutions, Inc. filed a certificate of amendment to its Articles of Incorporation, changing its name to Xerox State & Local Solutions, Inc. Since 2002, Xerox had operated and maintained the Fastrak Program. In January of 2013, BATA and the District contracted with Xerox pursuant to Government Code section 40252 to administer the Fast Trak program through June 30, 2019. Conduent State and Local Solutions, Inc. ("Conduent") has indicated it is a successor entity. Xerox/Conduent provide and administer the Fastrak and Pay-By-Plate programs and manage the assessment, notification, and collection of fines and penalties pertaining to toll invoices and toll evasion violations on the GCB. Accordingly, pursuant to Government Code Section 40253, Xerox and Conduent are each a "processing agency" within the meaning California Vehicle Code 40250 *et. seq.* Xerox has accordingly been delegated a public

function by BATA and the District. Xerox and Conduent are also thereby entwined with BATA and the District's government policies, and BATA and the District are entwined in the management and control of Xerox/Conduent. Finally, Xerox and Conduent are a knowing and willful participant in a joint action, along with the BATA and the District, in the various acts and omissions set forth in this injury, which caused injury to Plaintiffs and the Class Members.

7. Plaintiffs are ignorant of the true identities and capacities of fictitiously named defendants designated as Does 1-10, but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, each and every Doe defendant is in some manner responsible for the acts and conduct of the other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred by Plaintiffs. Each reference in this complaint to "defendant," "defendants," or a specifically named defendant, refers also to all of the named defendants and those unknown parties sued under fictitious names.

8. Plaintiffs are informed and believes and thereon alleges that, at all times relevant hereto, all of the defendants together were members of a single unincorporated association, with each member exercising control over the operations of the association. Plaintiffs are informed and believes and thereon alleges that, at all times relevant hereto, each of the defendants was the agent, associate, employee and or representative of each of the remaining defendants, and in doing the things hereinafter alleged, was acting within the authorized course and scope of this agency, association and employment with the full knowledge and consent of the remaining defendants. Plaintiffs are further informed and believes and thereon alleges that each and all of the acts herein alleged as to each defendant was authorized and directed by the remaining defendants, who ratified, adopted, condoned and approved said acts with full knowledge of the consequences thereof, and memorialized the authority of the agent in a writing subscribed by the principal.

9. Plaintiffs are informed and believes and thereon alleges that each of the defendants herein agreed among each other to commit the unlawful acts (or acts by unlawful means) described in this complaint. The desired effect of the conspiracy was to defraud and otherwise deprive Plaintiffs of her constitutionally protected rights to property, and of her rights under other laws as set forth

herein. Each of the defendants herein committed an act in furtherance of the agreement. Injury was caused to the Plaintiffs by the defendants as a consequence.

## JURISDICTION AND VENUE

10.     The Court has personal jurisdiction over Defendants because they are residents and/or doing business in California.

11.     The GGB Toll Plaza, at which Defendants have installed equipment to determine if vehicle owners have a Fastrak transponder or should be issued a toll invoice, is located in San Francisco. The FasTrak Customer Service office is located in San Francisco. Vehicle owners who wish to contest their toll invoices, toll evasion violations or associated penalties are instructed to do so at the FastTrak Customer Service office in San Francisco.

12.     The Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. §1367 does not apply to this class action based on the following three independent exceptions: (1) the State Actor exception, (2) the Local Controversy exception, and the (3) Home State exception. More than 75% of the putative class members are citizens of the State of California for the purposes of CAFA and the exceptions to CAFA. At least two of the Defendants are California entities for the purpose of CAFA and the exceptions to CAFA. Plaintiffs are each California residents and citizens for the purpose of CAFA, and the exceptions to CAFA.

13.     Venue is proper in this Court in accordance with California Code of Civil Procedure 19 § 395(a), because Defendants reside in, contracted to perform obligation in, and/or do business in San Francisco County. Furthermore, the injuries, damages, and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from the State of California and the City and County of San Francisco.

## PRESENTMENT

14. Plaintiffs have complied with all administrative and substantive requirements for filing suit against public entities, including GGB and BATA, under Government Code §§910, *et seq*. Plaintiffs filed a claim with GGB and BATA prior to filing this lawsuit. Plaintiff presented their claims to GGB and BATA more than 45 days prior to filing this First Amended Class Action Complaint

15. Plaintiff Kelly filed a claim on her behalf, and on behalf of all others similarly situated, with the applicable government Defendants on or about May 25, 2017 by sending them a letter via registered and certified mail, return receipt requested. Defendants denied the claims pursuant to California Government Code §911.6.

16. Notwithstanding their presentment of claims out of an abundance of caution, Plaintiffs are under no obligation to submit a government claim in reference to any of their requests for injunctive relief.

**FACTUAL BACKGROUND**

17. Toll roads in the United States have been in use for more than 200 years, and payment of the toll historically could not be missed by travelers: you were required to physically stop your vehicle at a very obvious toll plaza and throw your money in a bucket or hand it to an agent. California was no different.

18. BATA was created by the California Legislature in 1997 to administer the autotolls on the San Francisco Bay Area's seven state-owned toll bridges – Antioch, Benicia-Martinez, Carquinez, Dumbarton, Richmond-San Rafael, San Francisco – Oakland, and San Mateo – Hayward, Bay Area Bridge, Golden Gate Bridge (collectively, the "Toll Bridges"). The Toll Bridges were built pursuant to state laws that, due to shortages in funding to build new highways and roads, permitted privately-owned companies, county government agencies, transportation districts, and other entities to sell non-recourse bonds to private investors to raise money to build and maintain Toll Bridges. The Toll Bridges are legally owned by the State of California but are operated and maintained by BATA pursuant to a franchise issued by the state.

19. The Toll Bridges and their operators relied on Vehicle Code ("Vehicle Code") §§40250, *et. seq.* which made toll violations civil in nature and their collection and administration subject to civil procedures, so that they could be handled by the private and local entities that operate the Toll Bridges. These statutes, however, lack key procedural and substantive constitutional protections and have been subject to widespread abuse by Defendants with regard to their administration of penalties for toll violations. The dissemination of PII illegally is meant to avoid the need to actually give

commuters due process by obtaining a judgment, and is instead an unfair profit center exacting a windfall through penalties coerced from unsuspecting drivers.

**HOW THE TOLL BRIDGES WORK**

20. California Vehicle Code §23301, is applicable to all vehicle crossings and Toll Bridges in California. Section 23301 provides that "each vehicle that enters into or upon a vehicular crossing immediately becomes liable for those tolls and other charges as may from time to time be prescribed by the California Transportation Commission."

21. Vehicle Code §40250(b) makes the registered owner of the vehicle involved in the violation jointly and severally liable with the driver of such vehicle.

22. The tolling agencies in California accept payment for tolls by either offering an electronic toll collection system (*e.g.*, FasTrak) and/or implementing a pay-by-license-plate method of payment, or both.

23. "FasTrak" is an electronic toll collection system, where people establish a FasTrak account with a tolling agency and then receive a transponder, which they then place on their vehicle. When traveling through the toll zone, the transponder is read by an overhead antenna on the road, and the posted toll amount is then automatically deducted from the customer's account. While people are allowed to use their FasTrak transponders throughout the state, they are encouraged to obtain a transponder from the agency that operates the road, lane, or bridge that they will use the most.

24. Vehicle Code §23302(e) defines a pay-by-plate payment as "an issuing agency's use of on-road vehicle license plate identification recognition technology to accept payment of tolls in accordance with policies adopted by the issuing agency."

25. Vehicle Code §23301.8 regulates pay-by-plate programs as follows:

> Where an issuing agency permits pay-by-plate toll payment as described in subdivision (e) of Section 23302, it shall communicate, as practicable, the pay-by-plate toll amount in the same manner as it communicates other toll payment methods. The issuing agency shall provide publicly available information on how pay-by-plate toll payment works, including the toll amount, process for payment, and period of time a vehicle has to resolve the

payment before an issuing agency may process the trip as a violation under Section 40255. Communication of this information may include the Department of Transportation's approved signage, posting of information on the issuing agency's Internet Web site, media advertising, public meeting or disclosure as required by the issuing agency's policies, or other methods of communication. Except where the issuing agency has an agreement with a vehicle owner that specifies in advance any administrative fees that will be imposed on the owner for pay-by-plate toll payment, administrative costs shall be incorporated into the pay-by-plate toll amount, and no additional administrative costs shall be added above the posted pay-by-plate toll amount.

26. Vehicle Code §23301.8 requires BATA to communicate to the public both the toll payment and how the pay-by-plate toll payment program works. Additionally, any additional administrative costs must be paid by the BATA and cannot be added to the pay-by-plate toll amount.

27. The BATA outsourced the Toll Bridges administrative functions to Defendant Xerox (the "Private Defendant" or "Xerox"). Defendant Xerox provided the Toll Bridges with customer service and toll compliance services.

**STATE ACTION**

28. The BATA and the District are "state actors" who have gone to great lengths to hold themselves out as such by:

    i.  Not disclosing their identity as private contractors in communications with the public, but instead acting as if they are, and representing themselves as, government agencies through the Toll Bridges website, its office, and all its customer service materials;

    ii.  Sending out "Notice of Toll Evasion" violations to Class Members appearing to be from the BATA;

iii. Threatening to place liens on Class Members' vehicle registrations in the Notice letters;

iv. Threatening to impose civil judgments and other collection efforts on Class Members if they do not pay the fines set forth in the Notice letters;

v. Entering into contracts with Xerox and willingly agreeing to become "processing agenc[ies]" as that term is used and defined in Vehicle Code §§ 40252 and 40253;

vi. Entering into contracts with Xerox and becoming willing participants in a joint venture with a state actor – *i.e.*, BATA; and

vii. Processing, reviewing, and collecting toll evasion violation penalties, resulting from their exercise of the coercive power of the State of California.

29. The BATA and DISTRICT Defendants' willing operation of the toll collections, and their processing of the Notices of Toll Evasion and Notices of Delinquent Toll Evasion along with Xerox, leaves them entwined with governmental policy.

30. The BATA and DISTRICT Defendants' willing participation in a joint venture with state actors as "processing agenc[ies]" under the Vehicle Code, Xerox is obligated to comply with Vehicle Code §40250, *et. seq.* and the California Constitution.

31. The BATA and DISTRICT were entwined with, and directly managed, Xerox's activities that are challenged in this Complaint.

32. Through these activities, collecting penalties authorized by state statute, and threatening vehicle registration holds by the DMV, the private entities are commanding the power of the state.

**XEROX OPERATES THE TOLL BRIDGES**

33. From October of 2010 to the present, Defendant Xerox and/or Conduent were responsible for providing the following functions to BATA and the DISTRICT and in fact operated the Toll Bridges for BATA and GGB:

(a) Customer service/call center operation (staff to hand enrollment, respond to calls, complaints, resolve violations, payment processing);

(b) Account maintenance (update accounts, research new accounts to resolve unpaid violations, suspend accounts, reinstate or revoke accounts, prepare and mail customer notices, investigate accounts);

(c) Inventory (transponders and supplies related to transponders);

(d) Mail room;

(e) Payment processing;

(f) Reports (aging, FasTrak revenue and activity reports, financial reporting);

(g) Special projects;

(h) Toll enforcement processing including actually conducting and/or overseeing any initial internal administrative review proceeding conducted concerning a toll violation by the BATA, actually conducting any administrative review (the second tier of the three tier review process) image review services, maintenance of electronic data exchange with the DMV, electronically produce file to mail, process violation inquiries, process affidavits of non-liability, place registration holds, resolve customer violation issues, perform judgment recovery services;

(i) SOP's configuration Control & Documentation (library catalog, training manuals, system software changes tracking, update software source code, test, maintain and schedule software changes as required, test configuration platform, develop and maintains disaster recovery plan, document security audits);

(j) System support (provide complete system administrative and support service for the operation of the customer service system, violation, imaging, reporting, webs services and other FasTrak related software system – including generating account statements, processing auto debiting, posting all tolls, penalties, and charges and credits, maintain compliance with interoperability transfer, archive account and image data, ensure the daily transfer of violations for the image processing systems and more);

(k) Program Management (provide overall program management for each item in the contract between the parties. ((a) through (k), are collectively referred to as the "Functions.")

34. From October of 2010 to present date, Xerox participated with the District and BATA in determining the amount of the penalties assessed, collected, and charged against Plaintiff and the Class Members.

35. From October of 2010 to present date, Xerox actually provided PII of Plaintiffs and the Class Members to Other Unauthorized Parties.

**DEFENDANTS' ADMINISTRATIVE PROCESS IS FATALLY FLAWED AND UNCONSTITUTIONAL AND THUS, PLAINTIFFS ARE NOT REQUIRED TO EXHAUST ANY ADMINISTRATIVE PROCEDURES**

36. No administrative exhaustion is required because relief is unavailable and inadequate, among other reasons.

37. Under the guise of Vehicle Code §40250, BATA and the DISTRICT also assess millions of dollars in civil penalties against commuters that are excessive, without proper notice and without a fair hearing.

38. Under Vehicle Code §§40250, *et seq*., BATA and the DISTRICT may assess civil penalties for "toll evasion" violations for a variety of reasons, including inadvertent mistakes, such as if the commuter's card has expired, if the credit card was declined, or the transponder was not properly placed on the windshield.

39. Under Vehicle Code §40254(e), "[t]he processing agent shall use its best efforts to obtain accurate information concerning the identity and address of the registered owner for the purpose of forwarding a notice of toll evasion violation pursuant to subdivision (a)."

40. Despite the clear intent of the Legislature to use all means necessary to provide notice to commuters, the DISTRICT and the BATA fail and/or refuse to send any notices by e-mail or telephone after months of no contact with the commuter. Meanwhile, the commuter racks up thousands of dollars in civil penalties and unwittingly waives due process rights by failing to timely submit an affidavit to contest the violations. Plaintiffs are informed and believe the failure of DISTRICT and BATA to use

"best efforts" is, and has been, a willful and deliberate scheme to generate greater penalty assessments and judgments against commuters.

41. Under Vehicle Code §40254, the DISTRICT has between 21 to 90 days to serve notices of the toll violations. However, within this time, many commuters have already passed through the Toll Bridges and incurred enormous civil penalties without any notice of the toll violations. For example, even if notice is sent within one week after the violation, the commuter could potentially be assessed several thousands of dollars in one week. This 21 to 90 day notice window encourages BATA to delay sending notices in a conscious effort to increase penalties and generate a financial return.

42. The Toll Bridges' system of toll collection and enforcement lacks key procedural and substantive constitutional protections and violates consumer protection laws.

43. The abuse of BATA and GGB has been well chronicled in the news. John Goodwin of BATA has claimed he is only interested in tolls, but this belies his dogged attempt at collecting hundreds of millions, if not billions in penalties. *See e.g.* http://www.ktvu.com/news/4612222-story (2 INVESTIGATES).

44. Goodwin states in that same video: "in order to keep costs down, we rely so much on automated systems. Some times things like this will happen."

45. If Class Members cannot pay the outrageous tolls, BATA and GGB having shockingly recommended the individual file a bankruptcy.

46. BATA and GGB have even been fined by the Transit Authorities $330,000 for bad customers service, which just scratched the surface of what 7 On Your Side, uncovered. http://abc7news.com/technology/7-on-your-side-fastrak-customers-unfairly-hit-with-penalties/515536/ (February 12, 2015). As stated in the story "the fact that a private corporation, Xerox, can put a hold on the DMV –my registration – seems wrong." (*Id.*)

47. Fastrak has a deplorable 1.5 star ranking on YELP https://www.yelp.com/biz/fastrak-san-francisco-2, and 100% negative reviews on ripoffreport.com/ Better Business Bureau.

48. Yelp features hundreds of negative review from normal consumers outraged by the manner the Toll Bridges are operated. Specifically, many persons receive "notices of toll violations" even

though the license plate image captured does not even match with the number on file with the toll authorities.

49. The signage warning Class Members (as hereinafter defined) that they are travelling on the Toll Bridges is wholly inadequate and inconspicuous. Signage locations and language on the Toll Bridges do not provide adequate advance notice to Class Members of the Toll Bridges, nor any notice whatsoever of the amount of tolls to be assessed to Class Members for entering the Toll Bridges.

50. Once a Class Member enters the Toll Bridge, even inadvertently, a toll is electronically assessed, and there is no reasonable means by which a Class Member can mitigate or avoid the toll, exit the Toll Road, or contest the assessment. Specifically, the District and BATA prey on unsuspecting travelers who traverse the Golden Gate Bridge in their rental cars.

51. Further, when passing through the unmanned cashless areas, there is no indication by Defendants (or their agents) that a toll and/or penalty has been assessed against the Class Member, or that there has been an infraction.

52. Defendants' unmanned cashless systems are designed to eliminate their costs of manning Toll Bridges and shift the burden and penalty to the unwitting Class Members. Moreover, Defendants' systems are designed to reap an unjust windfall to Defendants and their private investors through collection of massive penalties.

53. Plaintiffs and the class members unaffiliated with rental car companies (and other third parties) were charged $6.00 per toll (between September 28, 2008 and April 6, 2014), $7.00 per toll (between April 7, 2014 to June 30, 2015), and $7.25 per toll (between July 1, 2015 to June 30, 2016). However, the Defendants also conspire with car rental companies to charge tolls at rates less than $1.00 below the above rates, but pass on amounts far in excess of the listed rates above to consumers – while Defendants and the car rental companies come to an arrangement on the profits. On March 1, 2017, the San Francisco City Attorney filed a Complaint For Injunctive Relief and civil penalties for violations of the Business and Professions Code Section 17200 and 17500 against Hertz Corporation and other based on their business practices in collecting funds far in excess of the actual cost of the

tolls paid to the Defendants on the Golden Gate Bridge. *People of the State of California v. The Hertz Corporation et. al*, CGC-17-557336 (Sup. Ct. San Francisco March 1, 2017).

54. In addition to paying a toll, once a class member passes through the toll booth, he or she is automatically assessed a $25 penalty in addition to the toll. The Defendants claim that they have the option of waiving that automatic "penalty" if a person signs up for Fastrak (and does not already belong to Fastrak using the toll roads across the state). For each subsequent violation, the penalty assessed is automatically $70. Additional fees are applied to class members, including $3.00, per registration hold with the DMV. Thus, for each violation, the "penalties" assessed against Plaintiffs' constitute a multiplier of over 10 times the amount of the toll ($73 penalty to a $7.00 toll). FAC, ¶ 3. In the aggregate, Plaintiffs were penalized by a multiple of 10.65x ($9,000 in penalties to $845 in tolls).

55. For many class members driving car rentals, they pay $7.25, plus $24.75 for Platepass, even though they are not in violation of the law by using Platepass. Thus, these class members pay a penalty multiple of 4x, even though they are in full compliance with the law.

56. Defendants' Golden Gate Bridge Toll Provides Inadequate Signage And Is An Unavoidable Trap From March 27, 2013 through today, the signage on the Golden Gate Bridge southbound commands, "keep moving," and "do not stop." The speed limit is 25 miles per hour. Citizens have no other reasonable means to the city, but to pass through the GGB toll, and many don't even know they have been photographed. It is simply too late once the bridge is upon a commuter. Multiple violations are racked up before the Defendants get around to sending the notice. By the time notice is mailed, it is too late to utilize the administrative process, as was the case for Kelly who did not receive the notice in time to contest the penalties.

## CLASS ACTION ALLEGATIONS

57. Plaintiffs bring this action on behalf of themselves, the general public, and all others similarly situated, pursuant to Federal Rule of Civil Procedure 23, including a damages class and an injunctive relief class.

58. (a) all consumers who between May 1, 2011 and the present, had their PII provided to any person who was not authorized to receive the PII pursuant to California Streets and Highways Code §31490; (b) all consumers who between May 1, 2011 and the present had their PII provide to a person who was not authorized to receive the PII in violation of the Fastrak application and/or privacy policy(collectively, the "Class Members").

59. This action is properly brought as a class action for the following reasons:

(a)     The proposed class is so numerous that the joinder of all Class Members is impracticable. While Plaintiff do not know the exact number and identity of all Class Members, Plaintiff are informed and believe that there are hundreds of thousands (if not millions) of Class Members. The precise number of Class Members can be ascertained through discovery, which will include Defendants' business records;

(b)     The disposition of Plaintiff' and the Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)     The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

(d)     There are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

(1)     Whether Defendants transmitted or sold personally identifiable information as a practice, policy, or pattern including, but not limited to, as part and parcel of their collection activity;

(2)     Whether Defendants violated California's Unfair Competition Law, Business & Professions Code §§17200, *et seq*. ("UCL");

(3)     Whether Defendants violated California's Consumer Legal Remedies Act, Civil Code §§1750, *et seq*. ("CLRA");

(4)     Whether Defendants have received funds from Plaintiff and Class Members that they unjustly received;

(5)     Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

(6)     Whether Plaintiff and Class Members are entitled to an award of punitive damages, attorneys' fees, and expenses against Defendants; and

(7)     Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to equitable relief, and if so, the nature of such relief.

(e)     Plaintiffs' claims are typical of the claims of the Class Members. Plaintiffs and all Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)     Plaintiffs will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed Class Members, and Plaintiffs have retained attorneys experienced in consumer class actions and complex litigation as counsel;

(g)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(1)     Given the size of Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(2)     This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, and economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

(3)     Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct; and

FIRST AMENDED CLASS ACTION COMPLAINT

(4)    Plaintiff know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

60. Plaintiff seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

61. Defendants have, or have access to, address information for Class Members which may be used for the purpose of providing notice of the pendency of this class action.

## COUNTS

### COUNT I
### VIOLATION OF CALIFORNIA STREETS AND
### HIGHWAYS CODE §31490
**(By Plaintiffs, Individually and on Behalf of All Class Members, Against All Defendants)**

62. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

63. California Streets and Highways Code §31490 provides that: (a) Except as otherwise provided in this section, a transportation agency may not sell or otherwise provide to any other person or entity personally identifiable information of any person who subscribes to an electronic toll or electronic transit fare collection system or who uses a toll bridge, toll lane, or toll highway that employs an electronic toll collection system.

64. The Plaintiffs and the Class Members are either "subscribers" or "users" of Defendants Toll Bridges pursuant to California Streets and Highways Code §31490(a).

65. California Streets and Highways Code §31490(h) provides that: This section, with respect to an electronic toll collection system, does not prohibit a transportation agency from sharing data with another transportation agency solely to comply with interoperability specifications and standards adopted pursuant to Section 37565 regarding electronic toll collection devices and technologies. A thirdparty vendor may not use personally identifiable information obtained under this subdivision for a purpose other than described in this subdivision.

66. California Streets and Highways Code §31490(l) provides: For purposes of this section,

"transportation agency" means the Department of Transportation, the Bay Area Toll Authority, any entity operating a toll bridge, toll lane, or toll highway within the state, any entity administering an electronic transit fare collection system and any transit operator participating in that system, or any entity under contract with any of the above entities.

67. California Streets and Highways Code §31490(o) provides that: For purposes of this section, "personally identifiable information" means any information that identifies or describes a person including, but not limited to, travel pattern data, address, telephone number, email address, license plate number, photograph, bank account information or credit card number.

68. California Streets and Highways Code §31490(p) provides that: For purposes of this section, "interoperability" means the sharing of data, including personally identifiable information, across multiple transportation agencies for the sole purpose of creating an integrated transit fare payment system, integrated toll payment system, or both.

69. Defendants operate an "electronic toll collection system" within the meaning of California Streets and Highways Code §31490(m).

70. Defendants BATA, GGB, Xerox, and Conduent provided Plaintiffs' and Class Members' PII, within the meaning of California Streets and Highways Code §31490(o), to the following Unauthorized Parties: Law Enforcement Agencies, including the DMV, the FTB, the San Francisco Police Department and other city, state, county, and federal Law Enforcement Agencies located in the State of California; Banking Institutions, including, without limitation, Wells Fargo Bank, N.A., JP Morgan Chase Bank, Bank American, N.A.; Car Rental Agencies, including without limitation Ace Rent-A-Car, Advantage, Alamo, Avis, Budget, Dollar, Economy, Enterprise, Europcar, Rent-a-car, Firefly, Fox; out-of-state collection agencies, credit bureaus (including Experian, Transunion, and Equifax) and other unauthorized third persons, marketing company, and promotional opportunities and entities to be ascertained through discovery (Other Unauthorized Parties).

71. BATA, GGB, Xerox, and Conduent operate, add enhancements to, control, and make modifications to a Computer Database called Vector.

72. BATA, GGB, Xerox, and Conduent knowingly enter programs, portal transmissions, portal connections, FTP transfers, and otherwise knowingly provide PII to all the parties in paragraph 70.

73. Specifically, BATA, GGB, Xerox, and Conduent send the following categories of PII to Orange County Transportation Authority, the Transportation Corridor Agencies, SANDAG, RCTC, LACMTA ("Other Agencies"): Transponder hex ID numbers, unique numeric identifier for accounts, license plate state and numbers of vehicles associated with account for active BATA/GGB accounts, start and end date vehicle associated with account for active BATA/GGB accounts, date and time of trip, plaza and lane numeric identifiers, and toll amount ("Agency PII"). Agency PII is sent to the Other Agencies within 14 days of each instance that a Class Member or Plaintiffs drives on one of the Toll Bridges. In e-mails produced by BATA in response to the FOIA requests Plaintiffs served, it was learned that the agencies mentioned that sending too much locational PII in these cases were a "breach" of PII.

74. Each category of the Agency PII constitutes PII under *S&H Code Section 31490(o)*.

75. BATA, GGB, Xerox and Conduent provide the Agency PII for "non-interoperability" purposes in that all of the Agency PII need not be sent, nor was the Agency PII sent to "create an integrated transit fare payment system" or "an integrated toll payment system." Instead, the Agency PII was sent to track drivers' locations, to make reports about the driving public and their locations, and for the purpose of establishing unreasonable toll amounts, and for the purpose of assessing excessive fines.

76. BATA, GGB, Xerox and Conduent provide PII of Class Members and Plaintiffs to the California Department of Motor Vehicle. Specifically, BATA, GGB, Xerox and Conduent provide the following PII of Plaintiffs and Class Members to the California DMV to place unlawful lookups, and holds on drivers' registration: License plate number, date of toll transaction (only California),

unique BATA identification number, violation number, total amount due, first four characters of owners last name "DMV PII."[1]

77. Each category of the DMV PII constitutes PII under *S&H Code Section 31490(o)*.

78. DMV PII is provided to the DMV within 14 days of each instance that Class Members or the Plaintiffs drives on one of the Toll Bridges in the instance of a "lookup," and within 90 days after a hold is placed as a knowing business process.

79. BATA, GGB, Xerox and Conduent provide the DMV PII for "non-interoperability" purposes in that all of the DMV PII need not be sent, nor was the DMV PII sent to "create an integrated transit fare payment system" or an "integrated toll payment system." Instead, the DMV PII was improper travel pattern data, to track drivers' locations, to surveil travel routes, to track consumption habits, traffic, to interfere with property, to improperly place a lien on a vehicle based on an excessive fine, to improperly assess a penalty even when driver information of many Class Members, is in the Vector computer database. BATA, GGB, Xerox, and Conduent also improperly use the Vector system to scrape PII of Plaintiffs and Class Members from the DMV database, including lender information, and other records from drivers. What BATA, GGB, Xerox and Conduent have in their computer system for ordinary citizens, and even State Officials and Judges, is a reprehensible abuse of the Public trust and an invasion of privacy.

80. BATA, GGB, Xerox, and Conduent provide by and through themselves and their vendors (agents) to one of the following: LexisNexis, Experian, Transunion, the following categories of PII of Plaintiffs and Class Members: name of owner or renter of vehicle, address of owner or renter of vehicle, and Social Security Number ("Credit Inquiry PII").

81. BATA, GGB, Xerox, and Conduent by and through themselves or their agents, make a credit inquiry on the credit of Plaintiffs and Class Members.

---

[1] Plaintiffs' Original Complaint incorrectly stated a "plate image" was provided to the DMV and other parties. This was based on a technological misunderstanding. As BATA and Conduent full well-know, their technology converts the plate image to data.

82. BATA, GGB, Xerox, and Conduent by and through themselves or their agents, transmit reports of the Plaintiffs and Class Members, without Plaintiffs and Class Members' consent, in violation of the Fair Credit Reporting Act (15 U.S.C. § 1681(b)).

83. Credit Inquiry PII is provided to the credit bureaus within 180 days of each instance that Class Members or the Plaintiffs drives on one of the Toll Bridges.

84. BATA, GGB, Xerox and Conduent provide the Credit Inquiry PII for "non-interoperability" purposes in that all of the Credit Inquiry PII was not provided to "create an integrated transit fare payment system" or an "integrated toll payment system." Instead, the Credit Inquiry PII was improperly sent for marketing, advertising, location tracking, data sales, credit inquiries/credit modeling, pricing on tolls, and in violations of the FCRA and Rosenthal.

85. BATA, GGB, Xerox, and Conduent provide by and through themselves and their vendors (agents) to one of the following: out of state entities and persons including the Arizona DMV and out of State collection companies, the following categories of PII of some Class Members: name of owner or renter of vehicle, address of owner or renter of vehicle, license plate number, and Social Security Number ("Out of State PII").

86. Out of State PII is provided to the credit bureaus within 180 days of each instance that Class Members drives on one of the Toll Bridges.

87. BATA, GGB, Xerox and Conduent provide the Out of State PII for "non-interoperability" purposes in that all of the Out of State PII was not provided to "create an integrated transit fare payment system" or an "integrated toll payment system." Instead, the Out of State PII was improperly sent for location tracking, data sales, credit inquiries/credit modeling, pricing on tolls, in violation of Street & Highway Code Sections 27565 and Section 31490.

88. BATA, GGB, Xerox, and Conduent provide by and through themselves and their vendors (agents) to to the Franchise Tax Board, the following categories of PII of Class Members: Social Security Number, last four letters of last name, total amount owed ("FTB PII").

89. FTB PII is provided to the Califonria FTB within 180 days of each instance that Class Members drives on one of the Toll Bridges.

90. BATA, GGB, Xerox and Conduent provide the FTB for "non-interoperability" purposes in that all of the FTB PII was not provided to "create an integrated transit fare payment system" or an "integrated toll payment system." Instead, the FTB PII was improperly sent to interfere with property, to coerce the payment of excessive fines, and for other improper purposes pursuant to Section 31490.

91. The parties that BATA, GGB, Xerox and Conduent provided PII to were not already in possession of the PII, because each creation of PII is a unique and specific event.

92. California Streets and Highways Code §31490(i) is not a defense or excuse of liability pursuant to §31490(a) or (h) because §31490(i) refers to, incorporates, and implicates subsection (d) which contemplates a different functionality of §31490.

93. By providing the Unauthorized Parties with the PII of Plaintiff and the Class Members, Defendants' purpose was to track Plaintiffs' and Class Members' comings and goings, and to interfere with Plaintiff's and Class Members' rights to use their vehicles.

94. Defendants did not receive a search warrant from any law enforcement agency under California Streets and Highways Code §31490 prior to making any of the above-referenced transmissions of PII.

95. Defendants did not have authorization under the transponder agreements with commuters to make any of the above transmissions of PII.

96. GGB, BATA, XEROX and CONDUENT have not completed forms with the DMV to properly send PII. GGB, BATA, XEROX, and CONDUENT would first file requests (in certain circumstances only) to provide plate numbers to the DMV to obtain information about commuters, even though the named Defendants already had the information of commuters in their Vector system based on their completed transponder agreements, the availability of public information and databases that indicate information for registration of car owners, private investigation, the right to subpoena under California Streets and Highways Code, the right of publication, and other means to obtain information.

97. Based on DMV procedures and practices, the DMV did not maintain a database of the plate numbers of Plaintiffs and Class Members GGB, BATA, and XEROX would then provide plate

numbers and other PII, subsequently thereto to the DMV to place a hold on commuters' registration, which was an entirely independent request and function from providing plate numbers to obtain information about commuters. In other words, the Defendants did not need to make subsequent transmission of plate numbers to obtain the address of a commuter.

98. Based on the fact that GGB, BATA, XEROX, and CONDUENT provided PII of the Plaintiffs and Class Members to the Unauthorized Persons in violation of California Streets and Highways Code §31490(a), and based on the knowing transmission of the PII to the above third persons pursuant to §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees, reasonable costs from GGB, BATA, and XEROX, and for Plaintiff and those Class Members who had their information provided three or more times, $4,000 for each individual violation, attorney's fees, and reasonable costs from GGB, BATA, XEROX, and CONDUENT. California Streets and Highways Code §31490(p)(2).

**DEFENDANTS ARE LIABLE BECAUSE THE PURPOSE BY WHICH PII WAS PROVIDED TO UNAUTHORIZED PARTIES WAS NOT FOR "INTEROPERABILITY PURPOSES"**

99. When Plaintiff and each of the Class Members drove on the Toll Bridges, each of them was a "user" of the Toll Roads pursuant to §31490(a).

100. Each of the named Defendants is independently a "transportation agency" pursuant to California Streets and Highways Code §31490(l).

101. GGB, BATA, XEROX, and CONDUENT are each independently, "entities" operating a toll bridge, toll lane or toll highway within the state of California based on their contractual and actual roles in the operations of the joint enterprise.

102. Each of the Toll Bridges (as previously defined) is a "Toll Highway" and/or "Toll Lane" under §31490(n).

103. Defendants provided to the Unauthorized Parties PII for purposes that were not, and could not have been, for "interoperability purposes" in that none of the transmittals were for the "sole

purpose of creating an integrated transit fare payment system, integrated toll payment system, or both." In fact, none of Defendants' providing PII to Unauthorized Parties alleged hereinabove had anything to do with creating any system, much less an "integrated transit fare payment system, integrated toll payment system, or both," but were instead meant to place holds on commuters' vehicle registrations as an illicit collection device.

104.    As defined in §31490(m), for purposes of this section: "[E]lectronic toll collection system" is a system where a transponder, camera-based vehicle identification system, or other electronic medium is used to deduct payment of a toll from a subscriber's account or to establish an obligation to pay a toll, and "electronic transit fare collection system" means a system for issuing an electronic transit pass that enables a transit passenger subscriber to use the transit systems of one or more participating transit operators without having to pay individual fares, where fares are instead deducted from the subscriber's account as loaded onto the electronic transit pass. The transmissions described above were not provided pursuant to a collection system of interoperability, but were instead disseminated to unlawfully implement impermissible collection devices, place holds through the DMV, interfere with property rights, and to track commuters' comings and goings. See Streets and Highways Code §27565.

105.    Thus, regardless of whether any of the Unauthorized Parties are themselves "transportation agencies," the named Defendants are liable for violations of California Streets and Highways Code §31490(a), (h), and (l) because their provisions of Plaintiffs' and Class Members' PII were not for "interoperability purposes."

106.    Based on the fact that GGB, BATA, and XEROX provided PII of the Plaintiffs and Class Members to the Unauthorized Persons in violation of California Streets and Highways Code §31490(a), pursuant to §31490(p)(1), Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees, reasonable costs from GGB, BATA, and XEROX, and for Plaintiffs and those Class Members who had their information provided three or more times, $4,000 for each individual violation, attorney's fees, and reasonable costs from GGB, BATA, and XEROX. California Streets and Highways Code §31490(p)(2).

**DEFENDANTS ARE ALTERNATIVELY LIABLE BECAUSE THE
UNAUTHORIZED PARTIES WERE NOT PERMITTED RECIPIENTS OF PLAINTIFFS'
AND CLASS MEMBERS' PII REGARDLESS OF THE PURPOSE**

91. Plaintiffs are informed and believes, and on that basis alleges, that neither GGB, BATA, and XEROX, was under contract with any of the Unauthorized Third Parties, within the meaning and purpose of California Streets and Highways Code §31490(l), at the time they provided Plaintiffs' and Class Members' PII to the Unauthorized Persons, with the exception of contracts by and between Xerox and BATA/GGB.

92. Specifically, Plaintiffs are informed and believes, and based thereon alleges that neither GGB, BATA, and XEROX executed any contract with the DMV at all.

93. The DMV is not a "transportation agency." Specifically, the GGB and BATA were not "under contract" with the DMV for the purposes of California Streets and Highways Code §31490(l). The DMV has not been a signatory to any writing with BATA and GGB concerning BATA and/or GGB providing PII under the unlawful transmissions described above. The DMV has no continuing contractual obligation with any party such that it would be said to be "under contract."

94. Xerox is not under contract with the DMV.

95. The DMV is a law enforcement agency within the meaning of the California Streets and Highways Code and thus, cannot be a "transportation agency" thereunder.

96. None of the Law Enforcement Agencies are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

97. The FTB is not "under contract" with GGB, BATA, and XEROX under California Streets and Highways Code§31490(l).

98. None of the Banking Institutions are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

99. None of the Other Unauthorized Parties are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

100. None of the Credit Bureaus are "under contract" with GGB, BATA, and XEROX.

101. None of the Car Rental Agencies are "under contract" with GGB, BATA, and XEROX pursuant to California Streets and Highways Code §31490(l).

102. Thus, none of the Unauthorized Parties was a "transportation agency" within the meaning of California Streets and Highways Code §31490(l).

103. Consequently, Defendants' provision of PII to the Unauthorized Parties was in violation of California Streets and Highways Code §31490 for this independent reason, irrespective of whether providing the PII was provided for interoperability purposes.

## DEFENDANTS ARE INDEPENDENTLY LIABLE BECAUSE THEY PROVIDED PII TO LAW ENFORCEMENT AGENCIES WITHOUT A SEARCH WARRANT

104. California Streets and Highways Code §31490(e)(1) provides: A transportation agency may make personally identifiable information of a person available to a law enforcement agency only pursuant to a search warrant. Absent a provision in the search warrant to the contrary, the law enforcement agency shall immediately, but in any event within no more than five days, notify the person that his or her records have been obtained and shall provide the person with a copy of the search warrant and the identity of the law enforcement agency or peace officer to whom the records were provided.

105. Each of the DMV and San Francisco Police Department, and other Law Enforcement Agencies in the State of California, is a law enforcement agency within the meaning of California Streets and Highways Code §31490(e)(1).

106. Plaintiffs are informed and believe, and on that basis allege, that none of the Defendants obtained a search warrant and otherwise complied with California Streets and Highways Code §31490(e)(1) when providing Plaintiffs' and Class Members' PII to the DMV, the San Francisco Police Department, and other Law Enforcement Agencies.

107. Consequently, Defendants' provision to the DMV, other Law Enforcement Agencies, and San Francisco Police Department of Plaintiffs' and Class Members' PII was in violation of California Streets and Highways Code §31490.

108. Plaintiffs are informed and believe, and thereon allege, that Defendants have violated, and conspired to violate, California Streets and Highways Code §31490 by unlawfully transmitting Plaintiffs' and the Class Members' PII, within the meaning of California Streets and Highways Code §31490(o), to other agencies and individuals including, but not limited to, the Unauthorized Parties. Further, Defendants ratified, authorized, directed, and approved that the DMV place a hold on Plaintiffs' and Class Members' vehicles and that the DMV transfer Plaintiffs' and Class Members' PII to other Law Enforcement Agencies, and that the San Francisco Police Department do the same, thereby intentionally and illicitly circumventing the law.

109. Specifically, on at least two occasions per week, Defendants have transmitted and continue to transmit to Unauthorized Parties a list of all users and subscribers, that contains PII of each user and subscriber, whose registration should be placed on hold.

## DEFENDANTS ARE INDEPENDENTLY AND ADDITIONALLY LIABLE BASED ON THEIR NON-COMPLIANT PRIVACY POLICIES IN VIOLATION OF CALIFORNIA STREETS AND HIGHWAYS CODE §31490(B) AND (P)

110. California Streets and Highways Code §31490(b) provides that: (b) A transportation agency that employs an electronic toll collection system shall establish a privacy policy regarding the collection and use of personally identifiable information and provide to subscribers of that system a copy of the privacy policy in a manner that is conspicuous and meaningful, such as by providing a copy to the subscriber with the transponder or other device used as an electronic toll collection mechanism, or, if the system does not use a mechanism, with the application materials. A transportation agency shall conspicuously post its privacy policy on its Internet Web site. For purposes of this subdivision, "conspicuously post" has the same meaning as that term is defined in paragraphs (1) to (4), inclusive, of subdivision (b) of Section 22577 of the Business and Professions Code. The policy shall include, but need not be limited to, a description of the following:

(1) The types of personally identifiable information that is collected by the agency.

(2) The categories of third-party persons or entities with whom the agency may share personally identifiable information.

FIRST AMENDED CLASS ACTION COMPLAINT

(3) The process by which a transportation agency notifies subscribers of material changes to its

privacy policy.

(4) The effective date of the privacy policy.

(5) The process by which a subscriber may review and request changes to any of his or her

personally identifiable information.

111.    Each of the named Defendants are transportation agencies that employ an electronic

toll collection system under Street & Highway Code Section 31490.

112.    The BATA's "Toll Roads Privacy Policy," set forth in a back-page footer of BATA's

website at https://www.bayareafastrak.org/en/support/privacy.shtml, fails to comply with California

Streets and Highways Code §31490(b)(1). The policy fails to completely and accurately identify

who BATA, GGB, and XEROX will be sharing personally identifiable information with as required

by §31490(b)(1).  Notably, some of the Defendants modified their policies on January of 2018 (after

this litigation was filed) to comply with 31490.  The Policy still fails to comply by not disclosing the

various third parties of Plaintiffs and the Class Members PII is provided to, nor have the Defendants

disclosed the categories of PII that was sent.. Nonetheless, Plaintiffs will seek a catalyst claim for

attorney's fees as an additional remedy, as it is apparent the privacy policy was changed after this

case was filed, based on Plaintiffs' filing of this action.

113.    The Defendants' privacy policy provides: "BATA may share PII with GGBHTD,

ACTC, and VTA for the purpose of managing FasTrak® and other electronic toll collection

operations (i.e. License Plate Accounts, One-Time Payment Accounts and Invoices). BATA may

also share PII with other toll agencies within the State of California for the purpose of managing

FasTrak® operations. If you participate in the SFO Parking Program to pay parking fees, BATA will

share your FasTrak® toll tag number with SFO for the purpose of operating the SFO Parking

Program. In addition, BATA may share PII with SFO as necessary to resolve customer disputes."

114.    Further, the Policy provides: "[i]n addition, BATA hires third-party service providers

for the purpose of operating the FasTrak® and other electronic toll collection programs referenced

above, such as managing Accounts, collecting revenues due, and providing remote walk-in locations

at which FasTrak®, License Plate Account, One-time Payment Account, and Invoices customers can

pay tolls in cash. The CSC Contractor, Xerox, which may need to share PII with subcontractors to enable credit card processing and mailing services, is one such service provider. These contractors are provided only with the PII they need to deliver the services. BATA requires the service providers to maintain the confidentiality of the information and to use it only as necessary to carry out their duties under the FasTrak® and other electronic toll collection programs mentioned in this Privacy Policy."

115.    The Policy violates §31490(b)(1) because BATA, GGB and Xerox actually provide PII to a host of other unauthorized persons: Car Rental Agencies, Law Enforcement Agencies without a search warrant (including the DMV), the Credit Bureaus, Banking Institutions, the FTB and the Other Unauthorized Persons.

116.    Further, BATA, GGB and XEROX have violated California Streets and Highways Code §31490(b) because even though BATA, GGB and XEROX "shall" establish a privacy policy regarding the "collection and use" of PII, BATA, GGB and XEROX failed to do so. Specifically, the privacy policy fails to state that PII (the license plate numbers of Class Members and other PII of Class Members), as previously alleged, is provided by BATA, GGB and XEROX to a multitude of persons and entities to place holds on Class Members' registration, to collect debts, to monitor movements, and for other purposes. The privacy policy does not reference that BATA, GGB and XEROX will use the PII to place holds on Plaintiff and Class Members' vehicles.

117.    Based on the fact that BATA, GGB and XEROX failed to comply with §31490(b) in regards to the requirements of the privacy policy (which each party had authority and control over drafting, implementing, and publishing) before BATA, GGB and XEROX provided Class Members' PII to any third person, the BATA, GGB and XEROX have "otherwise provided information in violation of this section" pursuant to California Streets and Highways Code §31490(p). Thus, Plaintiffs and Class Members are entitled to $2,500 for each individual violation, attorney's fees, reasonable costs from BATA, GGB and XEROX, and for Plaintiff and those Class Members who had their information provided three or more times, $4,000 for each individual violation, attorney's fees, and reasonable costs from BATA, GGB and XEROX.

118.    In addition, BATA's policy makes false statements of material fact (by representation and by omission) which are independently and additionally violative of California Streets and Highways Code §31490, as it is rife with false statements which Defendants knew were false when made, and knew Plaintiffs and Class Members would justifiably rely on them to their detriment, which they did, as follows: "We have seen a spike since we went to all-electronic tolling," said Andrew Fremier of the Bay Area Toll Authority. He acknowledges violations shot up after the Golden Gate Bridge eliminated toll takers in 2013. A 7 On Your Side investigation revealed a staggering increase. In 2014, nearly a quarter million drivers had to pay penalties for toll evasion on the bridge. That's five times more violations than in 2012 when drivers could still pay a toll taker. http://abc7news.com/technology/7-on-your-side-fastrak-customers-unfairly-hit-with-penalties/515536/

119.    Besides these entities, PII will not be disclosed to any other third party without express customer consent, except as required to comply with laws or legal processes served on BATA. In fact, the  privacy policy does not identify anything about the "personally identifiable information" that is collected.  As alleged above, the BATA actually captures the plate  image of Class Member vehicles that pass through the Toll Roads, and then converts this to a license plate number data. Specifically, in contravention to the manner in which BATA collects and disseminates PII, BATA falsely discloses as follows: Further, the BATA has violated California Streets and Highways Code §31490(b) because even though the BATA "shall" establish a privacy policy regarding the "collection and use" of PII, the BATA failed to do so. Specifically, BATA's privacy policy fails to state that PII (the license plate numbers of Class Members and other PII of Class Members), as previously alleged, is provided by the BATA to a multitude of persons and entities to place holds on Class Members' registration, to collect debts, to monitor movements, and for other purposes.

**SECOND COUNT**
**VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CALIFORNIA CIVIL CODE §§1788, ET SEQ.**

(By Plaintiffs, Individually and On Behalf of All Class Members, Against All Defendants, and DOES 1-10)

120.    Plaintiffs and the Class Members hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs.

121.    Defendants are respective "debt collectors" within the meaning of California Civil Code §1788.2. The tolls, penalties and other debts asserted by the Defendants constitute "consumer debts" pursuant to said section.

122.    Defendants have violated, and are violating, the Rosenthal Fair Debt Collection Practices Act, California Civil Code §1788, *et seq.*, in that they are making (i) false representations of the true nature of the business or services being rendered by the debt collector (Civil Code §1788.13(i)); and (ii) false representations that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation (Civil Code §1788.13(e)). 280. Additionally, California Civil Code §1788.17 requires every debt collector to comply with the provisions of §§1692b to 1692j, inclusive, and that the same shall be subject to the remedies in §1692k, of Title 15 of the United States Code. To wit:

(a) Section 1692d prohibits a debt collector from engaging in any conduct the natural consequences of which is to harass, oppress or abuse any person in connection with the collection of a debt.

(b) Section 1692e(8) prohibits a debt collector from communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(c) Section 1692e(10) prohibits a debt collector from the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(d) Section 1692e(11) prohibits a debt collector from failing to disclose (a) in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that

any information obtained will be used for that purpose, and (b) in subsequent communications that the communication is from a debt collector.

(e) Section 1692g requires additional written notices be provided by debt collectors and provides circumstances under which a debt collector must cease collection of debts when disputed.

123.    Defendants have violated, and continue to violate, the foregoing provisions of the Rosenthal Fair Debt Collection Practices Act by using false representations and deceptive means to collect a debt – that is, sending PI to a host of unauthorized third persons to interfere with Class Members' use of their property and to impose holds and liens against Class Members' vehicles.   In addition, PII of Plaintiffs is being improperly sent to various person in violation of the FCRA as a debt collection practice, as well as in other circumstances to the California DMV.  Plaintiff Kendrick did not discover PII was being illegally sent to the above unauthorized third parties, until April of 2017.  Plaintiff Kelly originally thought that license plate numbers were sent to the DMV when she first commenced her action, but she now knows and discovered in April of 2017, that her PII was sent to a host of unauthorized persons for unauthorized purposes including to make credit inquiries, and she now has discovered more specifics concerning this.   As a consequence, the Plaintiffs and Class Members herein are entitled to appropriate equitable relief, including an order enjoining Defendants from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation (including but not limited to pursuant to California Civil Code §§1788.17 and 1788.30(c)), restitution of property, actual damages, statutory damages, punitive damages (as may otherwise be permitted by law) and any other relief the court deems proper.

**THIRD COUNT**
**VIOLATION OF THE UNFAIR COMPETITION LAW,**
**BUS. & PROF. CODE §§17200, ET SEQ.**
**(Against Xerox, Conduent, & DOES 1-10 )**

124. Plaintiff hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

125. Defendant Xerox/Conduent have engaged in a pattern and practice of acts of unfair competition in violation of the California's UCL, including the practices alleged herein.

126. By violating the Plaintiff and other Class Members' state constitutional due process rights and prohibitions against excessive fines, and engaging in the collection activity recited above, Defendant Xerox have committed and continue to commit and engage in "unlawful, unfair or fraudulent business acts or practices" as defined in Bus. & Prof. Code §§17200, *et seq*.

127. Business & Professions Code §17200 provides: As used in this chapter, unfair competition shall mean and include any unlawful or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

128. Business & Professions Code §17204 provides that an action for violation of California's unfair competition law may be brought by persons who have suffered injury in fact and have lost money or property as a result of such unfair competition, and Bus. & Prof. Code §17203 provides that a court may grant injunctive and equitable relief to such persons.

129. The unlawful conduct of Defendant Xerox, alleged herein, are acts of unfair competition under Bus. & Prof. Code §§17200, *et seq*., for which Defendant Xerox is liable and for which this Court should issue equitable and injunctive relief, including restitution, pursuant to Bus. & Prof. Code §17203.

130. Through its conduct, Defendant Xerox has engaged in unfair business practices in California by employing and utilizing the practices complained of herein. Defendant Xerox's use of such unfair business practices constitute unfair competition that has provided and continues to provide Defendants with an unfair advantage over their competitors.

131. Defendant Xerox's conduct as alleged herein is unlawful, unfair, and fraudulent.

132. Defendant Xerox's conduct as alleged herein is "unlawful" in that, among other things, it violates he duties they owe to Plaintiff and the Class Members.

133. Defendant Xerox's conduct as alleged herein is also "unfair" because, among other things, i was designed to deprive Plaintiff and the Class Members of their constitutionally protected rights and their property for less than adequate consideration and to unjustly punish and penalize Plaintiff and the Class.

134. Defendant Xerox's scheme, as alleged herein, is also "fraudulent," in that it is knowingly calculated and likely to mislead. Defendant Xerox had actual knowledge of the egregious penalties being charged by BATA, GGB and XERXO, the means by which its sought to conceal and apply them, the coercive judgments and liens they were placing on Plaintiff and Class Members' assets, and the illicit and reckless plans they possessed and concealed from Plaintiff and the Class Members to obtain and misuse their personal and private information. Defendant Xerox has continued to take steps to perpetuate these deceitful practices against the Plaintiff and the Class Members and other members of the public at large.

135. Unless enjoined, Defendant Xerox will continue to harm the Plaintiff, the other Class Members and the general public. Plaintiff and the Class Members have suffered injuries in fact and lost money as a result of Defendants' conduct, as more specifically alleged above.

136. As a result of Defendant Xerox's unfair business practices, it has reaped unfair benefits and illegal profits at the expense of the Plaintiff and the Class Members. Defendant Xerox should be made to disgorge its ill-gotten gains and restore such monies to Plaintiff and the Class Members. Defendant Xerox's unfair business practices furthermore entitle Plaintiff and the Class Members herein to obtain preliminary and permanent injunctive relief, including, but not limited to, orders that Defendant Xerox cease its complained-of practices and account for, disgorge, and restore to Plaintiff and the Class Members the compensation unlawfully obtained from them. Pursuant to the California Constitution only, and not the United States Constitution, Plaintiffs seek for themselves, and on behalf of the Class disgorgement of any excessive fines assessed, and declaratory relief and injunctive relief that Xerox and BATA be prohibited from assessing excessive fines pursuant to the California Constitution.

**FOURTH COUNT**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CIVIL CODE §§1750, *ET SEQ.***
**(Against Xerox, Conduent, and DOES 1-10)**

137. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

138. Defendant Xerox is a "person" as defined by Civil Code §1761(c). Plaintiffs and the Class Members are consumers within the meaning of Civil Code §1761(d).

139. The CRA applies to Defendant Xerox's conduct because it extends to transactions that are intended to result in the sale or lease of goods or services to consumers, ordo result in such sales or leases. The use of the Toll Bridges constitutes such sale or lease of goods or services.

140. Defendant Xerox had a duty to truthfully disclose how they truly intended to operate Toll Bridges and their related charges and payments, use and disclose personally identifiable information of Plaintiff and the Class Members, and disclose the omitted facts regarding such use and disclosure. Defendant Xerox had exclusive knowledge of material facts not known to Plaintiff and the Class Members. Specifically, Defendant Xerox operate Toll Bridges and related charges and payments in a manner that defrauds the Plaintiff and the Class Members, unjustly enriches Defendants, and uses and discloses personally identifiable information of Plaintiff and the Class Members contrary to law and for improper purposes. Defendant Xerox, however, actively concealed material facts and did not provide Plaintiff or the Class Members proper notice of their actual intentions for use and disclosure of Plaintiff' or Class Members' personally identifiable information.

141. The facts, which Defendant Xerox misrepresented and concealed as alleged in the preceding paragraphs, were material to Plaintiff' and the Class Members' decisions about whether to use the Toll Bridges (when such use was known) and pay bills rendered by or for Defendant Xerox. Defendant Xerox are liable under the CLRA for these material misrepresentations and omissions.

142. In violation of Civil Code §1770(a)(16), Defendant Xerox represented that the subject of a Toll Bridges transaction was supplied in accordance with a previous representation when it was not. Defendant Xerox have failed to disclose material facts to Plaintiff and the Class Members by billing

FIRST AMENDED CLASS ACTION COMPLAINT

them for services that were not in fact provided, by billing them at rates higher than were disclosed or allowed by law, and/or through billing errors.

143. Additionally, by their conduct described in this Complaint, Defendant Xerox have violated Civil Code §1770(a)(5), (7), (9), (13), (14), (17), and (19).

144. Defendant Xerox had a duty to disclose the omitted facts because it had exclusive knowledge of material facts not known to Plaintiff and the Class Members (that they were billing for services that they did not in fact provide and/or that they were billing at rates higher than disclosed or permitted by law), because they actively concealed material facts, and because they did not provide Plaintiff and the Class Members proper notice of the Toll Bridges, toll charges, penalties, the processes by which charges and penalties could be assessed and contested, and because they otherwise suppressed true material facts.

145. Under Civil Code §1780, Plaintiff and the Class Members seek appropriate equitable relief, including an order enjoining Defendant Xerox from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation, restitution of property, actual damages, punitive damages, and any other relief the Court deems proper.

146. Additionally, any of the Plaintiff or Class Members that are senior citizens or disabled persons, as defined in Civil Code §§1780(b)(1) and 1781(f) and (g), may seek and be awarded up to an additional $5,000 for physical, emotional, or economic damage.

**FIFTH COUNT**
**BREACH OF CONTRACTS**

**(Against All Defendants, and DOES 1-10)**

147. Plaintiffs hereby refer to and incorporate by reference each and every allegation contained in the preceding paragraphs of this Complaint.

148. The Fastrak license agreement between Kelly and those subscribers similarly situated, provides that "Personally identifiable information provided by you and any data developed as a byproduct of your use of the electronic toll collection program will not be made available to third

parties except as described in our Privacy Policy." Kelly entered into the Fastrak agreement with Defendants to drive on the Toll Bridges.

149. Defendants have breached the Fastrak agreement by making PII of Kelly and those similarly situated to the Unauthorized Identified Parties, and the Unauthorized Unidentified Parties, all of whom were not identified in the privacy policy as being recipients of PII.

150. Plaintiffs are entitled to damages in an amount according to proof, injunctive relief, and all other remedies based on Defendants having provided PII to third parties that were not identified in the Privacy Policy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, and each Class Member, pray for judgment against Defendants as follows:

A.    That this action and the proposed class be certified and maintained as a class action, appointing Plaintiffs as representatives of the Class, and appointing the attorneys and law firms representing Plaintiffs as counsel for the Class;

B.    For actual damages, restitution, and all other appropriate legal and equitable relief;

C.    For declaratory relief;

D.    For pre-judgment and post-judgment interest;

E.    For civil penalties, as requested herein;

F.    For punitive and exemplary damages, as requested herein;

G.    For attorneys' fees and costs pursuant, *inter alia*, to 42 U.S.C. §1988, Code of Civil Procedure §1021.5, Civil Code §§1788.17 and 1788.30(c), Streets and Highways Code §31490, and 15 U.S.C. §1681n(a);

H.    For appropriate injunctive relief;

I.    For statutory damages in the amount of no less than $2,500 or $4,000 (as applicable) per provision of each of Plaintiffs' and Class Members' PII to each of the Unauthorized Parties, for privacy policy violations as to the Class, and more as allowed, pursuant to California Streets and Highways Code §31490; and

FIRST AMENDED CLASS ACTION COMPLAINT

J.  For disgorgement of excessive fines assessed under the California Constitution.

K.  For a determination that the fines assessed were excessive under the California Constitution.

L.  For an injunction that the Defendants may not assess excessive fines after the date of the Judgment.

M.  A catalyst claim for attorney's fees based on the Defendants having changed their privacy policy after the filing of this action.

N.  For such other and further relief as this Court may deem just and proper.

Dated:  March 9, 2018                              Respectfully submitted,

                                                   **LINDEMANN LAW FIRM, APC**

                                                   /s/ Blake J. Lindemann
                                                   BLAKE J. LINDEMANN (255747)
                                                   433 N. Camden Drive, 4th Floor
                                                   Beverly Hills, CA 90210
                                                   Telephone: (310) 279-5269
                                                   Facsimile:  (310) 300-0267
                                                   E-Mail:      blake@lawbl.com

                                                   HELEN ZELDES
                                                   COAST LAW GROUP, LLP
                                                   1140 South Coast Highway 101
                                                   Encinitas, CA 92024
                                                   Telephone: (760) 942-8505
                                                   Facsimile: (760) 942-8515
                                                   E-Mail:      helen@coastlaw.com

                                                   MICHAEL J. FLANNERY
                                                   CUNEO GILBERT & LADUCA, LLP
                                                   7733 Forsyth Blvd., Suite 1675
                                                   Clayton, MO 63105
                                                   Telephone: (202) 587-5063
                                                   Fax:         (202) 789-1813
                                                   E-Mail:      mflannery@cuneolaw.com

                                                   DAREN M. SCHLECTER
                                                   LAW OFFICE OF DAREN M. SCHLECTER,
                                                   APC

1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone: (310) 553-5747
E-Mail:     daren@schlecterlaw.com

Attorneys For Plaintiffs
SUMATRA KENDRICK, MICHELLE KELLY
AND THOSE SIMILARLY SITUATED

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs and the Class Members hereby demand a trial by jury on all causes of action so triable.

Dated:   March 9, 2018                    Respectfully submitted,

**LINDEMANN LAW FIRM, APC**

/s/ Blake J. Lindemann
BLAKE J. LINDEMANN (255747)
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: (310) 279-5269
Facsimile:  (310) 300-0267
E-Mail:     blake@lawbl.com

HELEN ZELDES
COAST LAW GROUP, LLP
1140 South Coast Highway 101
Encinitas, CA 92024
Telephone: (760) 942-8505
Facsimile: (760) 942-8515
E-Mail:    helen@coastlaw.com

MICHAEL J. FLANNERY
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Blvd., Suite 1675
Clayton, MO 63105
Telephone: (202) 587-5063
Fax:         (202) 789-1813
E-Mail:     mflannery@cuneolaw.com

Attorneys For Plaintiffs
SUMATRA KENDRICK, MICHELLE KELLY
AND THOSE SIMILARLY SITUATED